## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN CURD and REBEL CURD, Derivatively on Behalf of SEI INTERNATIONAL EQUITY FUND, SEI HIGH YIELD BOND FUND, SEI TAX-MANAGED LARGE CAP FUND, SEI TAX-MANAGED SMALL/MID CAP FUND, and SEI INTERMEDIATE-TERM MUNICIPAL FUND, <br><br> Plaintiffs, <br><br> v. <br><br> SEI INVESTMENTS MANAGEMENT CORPORATION, <br><br> Defendant. | Case No. 2:13-cv-07219-AB <br><br><br> ORAL ARGUMENT REQUESTED |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
## MOTION TO DISMISS THE COMPLAINT

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................1

II.    STATEMENT OF THE FACTS ...............................................................................4

     A.    Regulation of Mutual Fund Advisory Fees...................................................4

     B.    Defendant SIMC Charged Excessive Fees Relative to Services Provided.............5

     C.    The Board of Trustees of the SEI Funds.....................................................8

III.   ARGUMENT .............................................................................................................9

     A.    Standard on a Motion to Dismiss.................................................................9

     B.    Standard on Section 36(b) Claims .............................................................10

     C.    Plaintiffs Have Properly Pled a Section 36(b) Claim Under the *Gartenberg* Factors......................................................................................................11

           1.    Nature and Quality of Services ....................................................11

                  a.    Plaintiffs' Sub-Adviser Allegations Alone Demonstrate that SIMC Charged Excessive Fees.....................................11

                  b.    Defendant Attacks Plaintiffs' Sub-Adviser Allegations with Improper Fact-Driven Arguments................................14

           2.    Economies of Scale......................................................................17

           3.    Board's Lack of Conscientiousness.............................................19

           4.    Other Factors................................................................................20

     D.    Plaintiffs' Section 36(b) Claims Are Timely.............................................21

IV.   CONCLUSION........................................................................................................21

# TABLE OF AUTHORITIES

## CASES

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..........................................................................................9

*Briggs v. Ohio Elections Comm'n*,
   61 F.3d 487 (6th Cir. 1995) .............................................................................9

*Courie v. Alcoa Wheel & Forged Prods.*,
   577 F.3d 625 (6th Cir. 2009) ...........................................................................9

*Curran v. Principal Mgmt. Corp.*,
   No. 4:09-cv-00433, 2010 WL 2889752 (S.D. Iowa June 8, 2010)............................*passim*

*Davis H. Elliot Co. v. Caribbean Utils. Co.*,
   513 F.2d 1176 (6th Cir. 1975) .........................................................................9

*Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*,
   694 F.2d 923 (2d Cir. 1982)............................................................................3

*Hishon v. King & Spalding*,
   467 U.S. 69 (1984)...........................................................................................9

*Howell by Howell v. Waterford Pub. Sch.*,
   731 F. Supp. 1314 (E.D. Mich. 1990)...............................................................9

*In re Franklin Mut. Funds Fee Litig.*,
   478 F. Supp. 2d 677 (D.N.J. 2007) ..................................................................20

*In re Goldman Sachs Mut. Fund Fee Litig.*,
   No. 04 CIV 2567 (NRB), 2006 WL 126772 (S.D.N.Y. Jan. 17, 2006)..............................20

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
   528 F. Supp. 2d 332 (S.D.N.Y. 2007)...............................................................17

*In re Scudder Mut. Funds Fee Litig.*,
   No. 04 Civ. 1921(DAB), 2007 WL 2325862 (S.D.N.Y. Aug. 14, 2007) .........................20

*Intri Plex Techs., Inc. v. Crest Grp.*,
   499 F.3d 1048 (9th Cir. 2007) .........................................................................16

*Joe Powell & Assocs., Inc. v. Int'l Tel. & Tel. Corp.*,
   22 B.R. 588 (E.D. Tenn. 1982).........................................................................10

*Jones v. Harris Assocs. L.P.*,
   559 U.S. 335 (2010)...........................................................................4, 8, 10, 14

*Kasilag v. Hartford Inv. Fin. Servs., LLC*,
No. 11-1083, 2012 WL 6568409 (D.N.J. Dec. 17, 2012)...........................................*passim*

*Madison v. Purdy*,
410 F.2d 99 (5th Cir. 1969) ...................................................................................... 9

*Migdal v. Rowe Price-Fleming Int'l, Inc.*,
248 F.3d 321 (4th Cir. 2001) ................................................................................. 17

*Nuchols v. Berrong*,
141 F. App'x 451 (6th Cir. 2005) ........................................................................... 10

*Ritz Camera & Image, LLC v. SanDisk Corp.*,
772 F. Supp. 2d 1100 (N.D. Cal. 2011) *aff'd*, 700 F.3d 503 (Fed. Cir.
2012) ................................................................................................................. 15, 19

*Scheuer v. Rhodes*,
416 U.S. 232 (1974).................................................................................................. 9

*Sivolella v. AXA Equitable Life Ins. Co.*,
No. 11-4194 (PGS), 2012 WL 4464040 (D.N.J. Sept. 25, 2012).................................. 2, 14

*Skilstaf Inc. v. CVS Caremark Corp.*,
669 F.3d 1005 (9th Cir. 2012) ............................................................................... 15

*Sylmark Holdings Ltd. v. Silicone Zone Int'l Ltd.*,
783 N.Y.S.2d 758 (N.Y. Sup. Ct. 2004) ................................................................. 17

*U.S. v. Corinthian Colleges*,
655 F.3d 984 (9th Cir. 2011) ........................................................................... 15, 19

*Westlake v. Lucas*,
537 F.2d 857 (6th Cir. 1976) ................................................................................... 9

## STATUTES, RULES & OTHER AUTHORITIES

5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
§1356 (West 1969)..................................................................................................... 9

15 U.S.C. §80a-35(b) .................................................................................................. 1

Rule 12(b)(6) of the Federal Rules of Civil Procedure.................................................... 9

§ 36(b) of the Investment Company Act of 1940 ............................................... 1, 4, 10

## I.        INTRODUCTION

As detailed in the Verified Complaint (Document No. 1) (the "Complaint"), defendant SEI Investments Management Corporation ("SIMC" or "Defendant") was hired as the investment adviser charged with managing the investments of the SEI family of mutual funds[1] and then delegated nearly all of its investment management responsibilities to its army of sub-advisers. By doing so and retaining substantial portions of the proceeds for itself, SIMC violated section 36(b) of the Investment Company Act of 1940 ("ICA"), as amended by 15 U.S.C. §80a-35(b) ("Section 36(b)").

Defendant has filed a Motion to Dismiss the Complaint (the "Motion to Dismiss") (Document No. 10) claiming that plaintiffs Steven Curd and Rebel Curd ("Plaintiffs") have not alleged sufficient facts to show that SIMC has charged SEI Funds' shareholders disproportionately large fees relative to the services rendered for the past year.  But in every single analogous case where a plaintiff shareholder has raised similar sub-adviser allegations (i.e., that the investment adviser subcontracted most of the investment management services and improperly retained a substantial portion of the advisory fees for itself) in support of a Section 36(b) claim, the court has found them to be well pled and denied motions to dismiss.  *See, e.g.*, *Kasilag v. Hartford Inv. Fin. Servs., LLC*, No. 11-1083 (RMB/KMW), 2012 WL 6568409, at *3 (D.N.J. Dec. 17, 2012) (denying motion to dismiss where the plaintiff alleged that defendant adviser had paid "sub-advisors to perform 'substantially all' of the investment management services that it provides to the Funds at a fraction of the fee it charges for such services"); *Sivolella v. AXA Equitable Life Ins. Co.*, No. 11-4194 (PGS), 2012 WL 4464040, at *1 (D.N.J.

---

[1] "SEI Funds" refers to SEI High Yield Bond Fund ("High Yield Bond"), SEI International Equity Fund ("International Equity Fund"), SEI Intermediate-Term Municipal Fund ("Intermediate-Term Municipal"), SEI Tax-Managed Large Cap Fund ("Tax-Managed Large Cap"), and SEI Tax-Managed Small/Mid Cap Fund ("Tax-Managed Small/Mid Cap").

Sept. 25, 2012) (denying motion to dismiss complaint alleging similar allegations); *Curran v. Principal Mgmt. Corp.*, No. 4:09-cv-00433, 2010 WL 2889752, at *12 (S.D. Iowa June 8, 2010) (same).[2]

Ignoring the above line of directly on point cases, Defendant resorts to a number of inappropriate fact-based arguments in an unsuccessful attempt to undermine Plaintiffs' allegations.  First, Defendant argues that the Court should defer to it on the reasonableness of its fees because the SEI Funds' Board of Trustees (the "Board") negotiating the fees on behalf of the SEI Funds was purportedly independent and conducted a thorough process.  This is a fact-intensive inquiry improperly raised at the motion to dismiss stage.  Indeed, Defendant impermissibly relies on a number of documents outside the four corners of the Complaint in an attempt to show that the Board was putatively independent and that its process was robust.  On a motion to dismiss, however, the Court is limited to considering the factual allegations in the Complaint and any documents referenced in the Complaint (which here includes only the advisory and sub-advisory agreements entered into by SIMC), and therefore must ignore the multitude of self-serving brochures, prospectuses, proxy statements and other U.S. Securities and Exchange Commission ("SEC") filings Defendant parades before the Court as part of an attempt to rebut Plaintiffs' allegations.

Second, Defendant distorts the language of the advisory and sub-advisory agreements SIMC entered into with the Board and its sub-advisers, respectively, and impermissibly cites to outside documents to argue that it performed a host of administrative and supervisory functions which justify its substantial fees.  Regardless of the extent of these vaguely defined responsibilities, courts have made clear that it is not appropriate to engage in this type of fact-

---

[2] Here, as throughout, all emphasis is added and citations and footnotes are omitted unless otherwise noted.

driven inquiry regarding the quality and quantity of services performed by the investment adviser at the pleading stage.  *See Kasilag*, 2012 WL 6568409, at *9 (rejecting a similar argument).  All Plaintiffs were required to plead, which they've done here, is that SIMC was primarily hired to manage the investments of the SEI Funds and that nearly all of these primary services were passed on to sub-advisers, as reflected by a comparison of each adviser's responsibilities under their respective agreements.  Complaint, ¶¶20-31.[3]

Third, Defendant argues that Plaintiffs have not alleged facts in support of some of the *Gartenberg* factors, which is the framework used by courts to analyze whether the investment adviser's fees are excessive.[4]  This argument is misguided as Plaintiffs are not required to plead and prove each factor.  Rather, Plaintiffs can state a Section 36(b) claim by "alleging any combination of facts that plausibly support an inference that a particular fee, given [the totality of] circumstances, is disproportionately large to the services rendered in exchange for that fee." *Curran*, 2010 WL 2889752, at *9.  While Plaintiffs have met this lenient pleading standard based solely on the above sub-adviser allegations, Plaintiffs have also alleged additional facts that further bolster their claim that SIMC overcharged the SEI Funds' shareholders.

Most notably, Plaintiffs have pled that SIMC has taken advantage of economies of scale in the mutual fund industry to dramatically increase its profits without providing any additional services and failing to pass these benefits on to shareholders.  As the asset values of the SEI Funds have skyrocketed since 1996, SIMC's fixed percentage fees have increased at commensurately high levels while its costs have increased only incrementally.  To ensure the cost savings from such economies of scales are passed on (at least in part) to the shareholder,

---

[3] All paragraph references ("¶__" or "¶__") are to Plaintiffs' Complaint filed December 11, 2013 (Document No. 1).

[4] *See Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923 (2d Cir. 1982).

advisory fee schedules typically include breakpoints that offer discounts on fees as the net asset value of a mutual fund hits certain levels.  The failure of the Board to renegotiate any of its advisory fee agreements with SIMC to include breakpoints or similar protections further shows that the fees received by SIMC are out of proportion to the services performed.

Taken together, Plaintiffs' factual allegations properly state a Section 36(b) claim under the liberal federal pleading standard and Defendant's Motion to Dismiss must be denied.[5]

## II.    STATEMENT OF THE FACTS

### A.    Regulation of Mutual Fund Advisory Fees

The relationship between a mutual fund and its adviser is regulated by the ICA.  This relationship is fraught with potential conflicts of interest given that typically the investment adviser has created the fund, selected the fund directors, managed the fund's investments, and provided other services.  *Jones v. Harris Assocs. L.P.*, 559 U.S. 335, 338 (2010).  This creates potential conflicts of interest between a mutual fund and its adviser that precludes them from negotiating their advisory agreement at arms-length.  *Id.*

Because of its concerns about the potential for abuse inherent in the structure of investment companies, Congress created certain protections for mutual fund shareholders under the ICA.  *Jones*, 559 U.S. at 339.  Among them, Section 36(b) of the ICA imposed upon advisers a fiduciary duty not to overcharge the fund shareholders for any services it provides and provides shareholders with a private right of action to enforce this duty.  *See* Section 36(b); *Jones*, 559 U.S. at 339-40.  In addition, the board of directors is required to "review and approve the contracts of the investment adviser" annually.  *See* Section 36(b); *Jones*, 559 U.S. at 339-40.

---

[5] While Plaintiffs believe they have alleged sufficient facts to state their breach of fiduciary claims, should the Court find otherwise, Plaintiffs request the right to amend the Complaint to cure any pleading deficiencies the Court may identify.

**B.     Defendant SIMC Charged Excessive Fees Relative to Services Provided**

Defendant SIMC is the investment adviser to the SEI family of mutual funds, which includes High Yield Bond, International Equity, Intermediate-Term Municipal, Tax-Managed Large Cap, and Tax Managed Small/Mid Cap of the SEI Funds.  Complaint, ¶¶1, 9-13.  It entered into most of its advisory agreements with the Board of SEI Funds between 1996 and 2003.  Complaint, ¶30.  Pursuant to its advisory agreements, SIMC receives advisory fees—which are calculated as a fixed percentage of the current net asset value of the SEI Funds—for the investment management responsibilities it is assigned to perform for each mutual fund.  Complaint, ¶20.  As an example, in 2012, SIMC received an advisory fee of .505% of the net asset value of International Equity, resulting in a fee paid to SIMC of $8.7959 million for "advising" that mutual fund.  Complaint, ¶¶25, 30.  In all, SIMC received approximately $27 million in advisory fees from the SEI Funds in 2012.  Complaint, ¶¶2, 25-26, 32.

In return for receiving these substantial fees, SIMC is charged with performing investment management responsibilities (i.e., making decisions as to which assets to buy, retain, and sell) for each of the SEI Funds, which comprise the most important and costly of the services to be provided under the advisory agreements.  Complaint, ¶20.  Rather than perform these duties itself though, SIMC largely subcontracts them out to sub-advisers to perform, leaving the investment adviser only with the limited and less costly responsibilities of selecting and providing some level of supervision over the sub-advisers, which SIMC performs in conjunction with the boards of the SEI Funds.  Complaint, ¶21.  SIMC has further minimized its advisory responsibilities by ***requiring its sub-advisers to assume all liability for the investment decisions they make***.  The chart below shows a comparison of the responsibilities that SIMC performs under its advisory agreement with those it delegates to its sub-advisers:

| SEI Investments | Sub-Advisers |
|---|---|
| "[M]anage the investment and reinvestment of the assets…." | "[M]anage all of the securities and other assets of each Fund entrusted to it … including the purchase, retention and disposition of the Assets, in accordance with the Fund's investment objectives … determine from time to time what Assets will be purchased, retained or sold by a Fund, and what portion of the Assets will be invested or held uninvested in cash." |
| "[H]ire … and thereafter supervise the investment activities of one or more sub-advisers deemed necessary to carry out the investment program of any Portfolios of the Trust, and to continuously review, supervise and (where appropriate) administer the investment program of the Portfolios, to determine in its discretion (where appropriate) the securities to be purchased or sold…." | - |
| "[P]rovide the Administrator and the Trust with records concerning the Adviser's activities which the Trust is required to maintain, and to render regular reports to the Administrator and to the Trust's officers and Trustees concerning the Adviser's discharge of the foregoing responsibilities." | "[M]aintain all books and records with respect to transactions involving the Assets … shall timely furnish to the Adviser all information relating to the Sub-Adviser's services under this Agreement needed by the Adviser to keep the other books and records of a Fund … provide to the Adviser or the Board of Trustees such periodic and special reports, balance sheets or financial information, and such other information with regard to its affairs as the Adviser or Board of Trustees may reasonably request.… any other information relating to the Assets that is required to be filed by the Adviser or the Trust with the SEC or sent to shareholders under the 1940 Act (including the rules adopted thereunder) or any exemptive or other relief that the Adviser or the Trust obtains from the SEC." |
| - | "[P]rovide the Fund with information and advice regarding Assets to assist the Fund in determining the appropriate valuation of such Assets." |

*The Investment Advisory and Sub-Advisory agreements of the different trusts and funds are substantially similar.   The comparison above is based on the SEI Institutional International Trust restated as of December 17, 2002.   The Sub-Advisory Agreement cited above is the agreement between SIMC and del Rey Global Investors, LLC entered into on March 31, 2011.  Complaint, ¶¶20-21.

Despite delegating nearly all of the investment management responsibilities to its sub-advisers, SIMC retains a sizable portion of the fees (on average 37%) it receives from the SEI Funds, which amounted to total fees retained of over $10 million in 2012 alone.  Complaint, ¶25.

Since entering into these "fixed fee percentage" advisory agreements several years ago, SIMC has seen the amount of its fees grow exponentially (as much as 3-4 times for certain SEI Funds) as a result of corresponding increases in the net asset value of the SEI Funds over this period of time.  Complaint, ¶30.  Yet at the same time, its costs have grown at lesser rates because of the well-established economies of scale enjoyed by the mutual fund industry. Complaint, ¶¶28-29.  Specifically, it is well established by both the SEC and the Governmental Accounting Office that the amount of work and costs required to operate a mutual fund does not increase proportionately with the assets under management.  Complaint, ¶29.  A portfolio manager can invest $100 million as easily as $1 billion with only incremental increases in expenses.  Complaint, ¶28.  For this reason, it is typical for mutual funds to have breakpoints in the advisory fee schedules whereby as the net assets reach certain levels, the adviser's fee percentage decreases in order to account for these economies of scale.  *Id.*  Despite the dramatic increases in SIMC's advisory fees and the reduction in its costs since 1996, the Board, however, has failed to renegotiate any of the advisory fee agreements with SIMC to include breakpoints or any other structure to bring SIMC's fees in line with its costs.  Complaint, ¶¶35-42.

That SIMC has not earned the generous fees it receives is further shown by the fact that several of the SEI Funds have underperformed in recent years, including:

- Intermediate-Term Municipal's Class A shares underperformed their primary benchmark, the Barclays Capital 3-15 Year Municipal Blend Index, in the one-year period, the five-year period, and the ten-year period (Complaint, ¶41);

- International Equity's Class A shares underperformed their primary benchmark, the MSCI EAFE Index, in the five-year period and the ten-year period (Complaint, ¶41);

- Tax-Managed Large Cap Fund's Class A shares underperformed their primary benchmark, the Russell 1000 Index, in the one-year period, the three-year period, the five-year period, and the ten-year period (Complaint, ¶41);

- Tax-Managed Small/Mid Cap's Class A shares underperformed their primary benchmark, Russell 2500 Index, in the one-year period, the three-year period, the five-year period, and the ten-year period (Complaint, ¶41); and

- High Yield Bond's Class A shares underperformed their primary benchmark, the BofA Merrill Lynch U.S. High Yield Master II, Constrained Index, in the one-year period, the five-year period, and the ten-year period (Complaint, ¶41).

## C.   The Board of Trustees of the SEI Funds

Under the ICA, the board of trustees of each mutual fund is required to carefully review and renegotiate, if necessary, the terms of each advisory fee agreement on an annual basis. *Jones*, 559 U.S. at 340.  But the Board's ability to conscientiously carry out its fiduciary duties is compromised by the conflicts of interest stemming from its relationship to SIMC and the sheer number of SEI Funds these part-time directors are responsible for overseeing.  Complaint, ¶¶35-39.  As recognized by Congress in enacting the ICA, there is an inherent conflict of interest between the boards of directors and the investment adviser as a result of the influence wielded by investment advisers over the funds they create and the boards of directors they appoint.  *Jones*, 559 U.S. at 338-39; Complaint, ¶¶15-17, 36, 39.  In addition, the Board is burdened by having responsibility for managing over 189 different SEI Funds at the same time.  Complaint, ¶¶36, 38.

As a result, the Board has merely rubberstamped the existing fee structures each year rather than negotiate reasonable fees, as they were required to do under the ICA.  Complaint, ¶¶35-42.

## III.   ARGUMENT

### A.   Standard on a Motion to Dismiss

The court's function in ruling on a motion to dismiss brought based on Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b) (b)") grounds is to "test[ ] the legal sufficiency of [the] complaint, not the facts that support it."  *Howell by Howell v. Waterford Pub. Sch.*, 731 F. Supp. 1314, 1316 (E.D. Mich. 1990) (citing 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §1356, at 590 (West 1969)).  In so doing, the court must construe the complaint in the light most favorable to the plaintiff while also accepting all the factual allegations contained therein as true.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976) (A motion to dismiss under Rule 12(b)(6) must be denied "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"); *Briggs v. Ohio Elections Comm'n*, 61 F.3d 487, 493 (6th Cir. 1995); *Davis H. Elliot Co. v. Caribbean Utils. Co*., 513 F.2d 1176, 1182 (6th Cir. 1975) (In reviewing a dismissal on the pleadings, "well pleaded facts are taken as true, and the complaint is construed liberally in favor of the party opposing the motion.").  So long as such factual allegations support any plausible claim for relief, the Court must deny the Motion to Dismiss for failure to state a claim.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 580-81 (2007); *Courie v. Alcoa Wheel & Forged Prods*., 577 F.3d 625, 629-30 (6th Cir. 2009) (noting that motions to dismiss are designed solely to "screen out cases" which are "'implausible'" to warrant relief); *Madison v. Purdy*, 410 F.2d 99, 100 (5th Cir. 1969) ("[A] complaint should not be dismissed unless there is no possibility that the plaintiff can recover under the allegations of [the] complaint.").  Because of this lenient pleading

standard, "motions to dismiss [under Rule 12(b)(6)] are ordinarily disfavored, rarely granted and [ ] any doubt is resolved in favor of nondismissal." *Joe Powell & Assocs., Inc. v. Int'l Tel. & Tel. Corp.*, 22 B.R. 588, 592-93 (E.D. Tenn. 1982); *Nuchols v. Berrong,* 141 F. App'x 451, 453 (6th Cir. 2005).

Here, Defendant argues that Plaintiffs have failed to adequately plead facts showing that Defendant, as advisor to the SEI Funds, charged the SEI Funds excessive fees in violation of Section 36(b) of the ICA. Defendant is wrong. As shown below, Plaintiffs have properly stated their Section 36(b) claim against Defendant.

### B.  Standard on Section 36(b) Claims

Pursuant to Section 36(b) of the ICA, where the investment adviser receives a fee "that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arms-length bargaining," investments advisers are liable for breaching their fiduciary duties. *Jones*, 559 U.S. at 346.

As affirmed by the Supreme Court in *Jones*, courts analyze whether the adviser has charged such an excessive fee under the factors set forth in the *Gartenberg* decision (the "*Gartenberg* Factors"): (1) the nature and quality of services rendered; (2) the profitability of the fund to the investment adviser; (3) fall-out benefits; (4) economies of scale; (5) comparative fee structures; and (6) the independence of the unaffiliated directors and the care and conscientiousness with which they performed their duties. *Jones*, 559 U.S. at 344 & n.5.

While Defendant implies in its brief that Plaintiffs are required to plead facts in support of each of these factors to sustain a Section 36(b) claim, that is not the case. *See Curran*, 2010 WL 2889752, at *9 ("Plaintiffs need not make a conclusive showing of each of the Gartenberg factors…."). Rather, to state a Section 36(b) claim, the plaintiff must merely allege "any combination of facts that plausibly support an inference that a particular fee, given all of the

- 10 -

surrounding facts and circumstances, is disproportionately large relative to the services rendered." *Id.*

**C.    Plaintiffs Have Properly Pled a Section 36(b) Claim Under the *Gartenberg* Factors**

    **1.    Nature and Quality of Services**

        **a.    Plaintiffs' Sub-Adviser Allegations Alone Demonstrate that SIMC Charged Excessive Fees**

Plaintiffs have properly pled that Defendant charged disproportionately large fees for its services based solely on their detailed allegations that SIMC assigned the bulk of its responsibilities under its advisory agreements with the SEI Funds to sub-advisers and retained substantial portions of the fees for itself.  Complaint, ¶¶20-27.  As alleged in the Complaint and shown in the chart above, there is substantial overlapping of the services assigned to SIMC and its sub-advisers, and in particular the most important and cost and labor-intensive duty—making investment decisions for the SEI Funds.  *See supra* section II.B. (table); Complaint, ¶¶20-24, 27; *Kasilage*, 2012 WL 6568409, at *8.  The SEI Funds hired SIMC primarily for the purpose of providing such investment management services, which were then delegated almost entirely to SIMC's sub-advisers.  Complaint, ¶¶20-24.  Defendant even admits in its brief that SIMC delegated its investment management duties to its sub-advisers.  Motion at 32 (conceding that SIMC has delegated to the sub-advisers the decisions as to what securities "should be purchased or sold").[6]

As alleged in the Complaint and noted in the other court decisions, these are the most important and time and cost-intensive responsibilities of a mutual fund adviser.  Complaint ¶¶20-24.  In addition, SIMC delegated its record keeping responsibilities to its advisers.  *Id.*  This left

---

[6] The "Motion" refers to Defendant's Memorandum of Law in Support of Defendant's Motion to Dismiss the Complaint filed on February 24, 2014 (Document No. 10-1).

SIMC with merely having to select the sub-advisers and provide some degree of ambiguous and undefined supervision over them.  *Id.*  As alleged in the Complaint and noted by other courts, these supervisory responsibilities are minimal and less important and are shared with the Board anyway, and therefore do not justify SIMC taking the significant cut of the advisory fees it receives.  *See Kasilag*, 2012 WL 6568409, at *7-9 (referencing that the investment management services "constitute the most expensive and important services required under the IMA"); *see* Complaint, ¶¶20-24.  Despite retaining sub-advisers to perform most of its assigned duties, SIMC still retains a major portion of the fees—over 37%.  Complaint, ¶¶25-27.

In every case in which a mutual fund shareholder based its Section 36(b) claims on similar sub-adviser allegations, the court found such facts to be more than sufficient to avoid dismissal on the pleadings.  In fact, ***Defendant does not and cannot cite to a single case in which claims like those alleged have been dismissed at the pleading stage***.  *See* Motion at 29-35.

For example, in *Kasilag*, the court denied a motion to dismiss where the shareholder plaintiff had brought a Section 36(b) primarily based on similar allegations that the advisor had contracted most of its investment management services to a sub-adviser (leaving, the adviser, like SIMC, to perform only general supervisory responsibilities) and then retained a major portion of the fee. *See Kasilag*, 2012 6568409, at *3.  While Defendant attempts to distinguish this case from *Kasilag* by arguing that the adviser in that case had a fee split with the sub-adviser that was more lopsided in its favor, in fact, the percentage of the advisory fee retained by the adviser in that case (42%) is comparable to the portion kept by SIMC pursuant to its advisory agreements (37%).  *See* Declaration of Stephen J. Oddo in Support of Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint ("Oddo Decl."), Exhibit A, Excerpts of Second Amended Complaint, ¶46, *Kasilag v. Hartford Inv. Fin. Servs., LLC*, No. 1:11-cv-

01083-RMB-KMW (D.N.J. Nov. 14, 2011). In addition, Defendant argues that the *Kasilag* case was stronger than this case because it contained more compelling allegations regarding the other factors. *See* Motion at 40 n.23. However, the court in *Kasilag* made clear that the sub-adviser allegations alone were sufficient to state a plausible claim under Section 36(b) and the other facts merely provided additional support. Specifically, the court held that plaintiff's allegations that the adviser "pays sub-advisors to perform 'substantially all' of the investment management services that it provides to the Funds at a fraction of the fee it charges for such services ... [raise] a plausible inference that [the adviser's] fees are excessive under [Section] 36(b)." *See Kasilag*, 2012 WL 6568409, at \*3. Finally, the Complaint in this action includes many of the same charts and tables detailing the comparison of services and differences between fees received by the adviser and sub-advisers that the court in *Kasilag* found persuasive in denying the motion to dismiss. *See Kasilag*, 2012 WL 6568409, at \*3 (praising plaintiff for supporting its allegations with "multiple tables," which allowed it to plead with greater specificity); *see* Oddo Decl., Exhibit A, ¶¶46, 50; Complaint, ¶¶21, 25-26 (including many of the same tables and charts as in *Kasilag* second amended complaint); *see also supra* section II.B. (table).

The court in *Curran* also denied a motion to dismiss a Section 36(b) claim largely based on substantially similar allegations that the adviser had charged the mutual funds substantially more than it had paid out to the sub-advisers who had provided the bulk of investment management services while the adviser had merely selected and supervised them. Specifically, the court held that plaintiffs' allegations that "PMC charges more than the subadvisors, who allegedly provided the bulk of investment advice" and "that the charges do not reflect the benefits derived from economies of scale … all support a reasonable inference that defendant collected excessive fees for its investment advising services." *Curran*, 2010 WL 2889752, at \*9. While the court also gave some credit to the plaintiff's allegation that the investment adviser had

charged its institutional clients less than the fund shareholders, this was a secondary factor underlying its decision.  As the Supreme Court held in *Jones*, a comparison between the fees an investment adviser charges its mutual fund shareholders and its institutional clients is not entitled to much weight in determining whether the fees charged to the fund shareholders were excessive under Section 36(b).  *See Jones*, 559 U.S. at 350 (stating that courts should be "wary" of comparing fees charged to an adviser's fund shareholders versus its institutional clients).

In a third analogous case, the court also denied a motion to dismiss where the plaintiff, like Plaintiffs here, brought Section 36(b) claims based on allegations that the adviser had entered into contracts with sub-advisers who performed nearly all of the investment management services for the funds, but had retained a good portion of the fees.  *Sivolella*, 2012 WL 4464040, at *5-6.

### b. Defendant Attacks Plaintiffs' Sub-Adviser Allegations with Improper Fact-Driven Arguments

Bereft of authority, Defendant resorts to a number of fact-based arguments.  First, Defendant argues that it provides comprehensive supervisory and administrative responsibilities which it performs with minimal assistance from the Board.  *See* Motion at 30-33.  For starters, such arguments impermissibly invite the Court to engage in a premature factual examination of the precise scope and cost of services provided by SIMC to the Funds and the division of them with the Board, which is beyond the scope of this Motion to Dismiss.  *See Kasilag*, 2012 WL 6568409, at *3 (rejecting a similar argument that the investment adviser provided "extensive administrative and investment management services" as an improper merits argument on a motion to dismiss).

Further reflecting that Defendant is asking the Court to conduct an improper factual inquiry, it cites to a number of self-serving documents outside the four corners of the Complaint,

such as SEC filings, brochures, and prospectuses, to show how much work it supposedly performed and how it divided its labor with the Board. *See, e.g.*, Motion at 11, 12 (citing to and attaching a Form ADV Mutual Fund Implementation Wrap Brochure), 13 (citing to and attaching a number of the SEI Funds' annual reports). Such documents may not be considered on a motion to dismiss because they are neither attached to nor referenced in the Complaint. *See U.S. v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011) (permitting outside documents to be considered on a motion to dismiss only if either physically attached to or referenced in the complaint). In fact, the only documents referenced in the Complaint and therefore the only ones that may be considered in this Motion to Dismiss, are SIMC's advisory and sub-advisory agreements, which show that it subcontracted out the bulk of its investment management duties to sub-advisers. *See supra* section II.B.; Complaint, ¶¶20-27.

In its brief, Defendant also contends erroneously that any public records, such as SEC filings, may be considered on a motion to dismiss. *See* Motion at 7 n.2. This is far too broad an assertion because as a procedural matter, a party seeking for a public record to be put before the court must request that it be judicially noticed, which Defendant has not done here. *Skilstaf Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012) (permitting public records that satisfy the requirements to be judicially noticed to be considered on a motion to dismiss). Even if properly subject to judicial notice though, the SEC filings and other public records offered by Defendant may be considered by courts for the sole purpose of showing they exist, not for the facts asserted therein, as Defendant has attempted to do here. *See Ritz Camera & Image, LLC v. SanDisk Corp.*, 772 F. Supp. 2d 1100, 1109 (N.D. Cal. 2011) *aff'd,* 700 F.3d 503 (Fed. Cir. 2012) (holding that a court may take judicial notice merely of the existence of SEC filings, but not for the truth of facts asserted therein); *Intri Plex Techs., Inc. v. Crest Grp.*, 499 F.3d 1048, 1052 (9th

Cir. 2007) (permitting courts to consider matters of public record only to the extent they contain undisputed facts).

Similar fact-driven arguments were raised by the defendants in *Curran* and *Kasilag* and were roundly rejected for these very reasons. *See, e.g.*, *Curran*, 2010 WL 2889752, a *9 (finding that defendant's arguments attacking the plaintiff's allegations improperly "ask the Court to engage in a factual inquiry" on a motion to dismiss); *Kasilag*, 2012 WL 6568409, at *3 (rejecting defendants' argument that "it provides the Funds with extensive administrative and investment management services that are not delegated to the sub-advisers" as a merits argument that is more appropriate for summary judgment).

Second, Defendant argues that, despite having delegated investment management decisions for the SEI Funds to its sub-advisers, SIMC continued to be responsible for these decisions based on language in the advisory and sub-advisory agreements stating that the "retention of a sub-adviser … shall not relieve [it] of its responsibilities." Motion at 32. This vague language does not show that Defendant actually made any investment management decisions for the SEI Funds and appeared to have little, if any, force or effect given that SIMC passed off all liability exposure related to such decisions to the sub-advisers. Complaint, ¶23.

Third, Defendant quibbles with Plaintiffs' failure to allege the exact amount of manpower and expenses used by SIMC to provide its supervisory responsibilities (*see* Motion at 31),[7] but

---

[7] As part of this argument, Defendant also claims that Plaintiffs have not challenged the quality of its services. Motion at 34. Not true. In fact, in the Complaint, Plaintiffs provide specific evidence showing that several of the SEI Funds "managed" by SIMC underperformed their primary benchmarks in recent years. Complaint, ¶41. Defendant contends this evidence is insufficient to sustain a Section 36(b) claim, but Plaintiffs do not claim otherwise. Plaintiffs' Section 36(b) claim is based primarily on other allegations, and the fact that the SEI Funds have underperformed merely provides additional support. *Cf. Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 327-28 (4th Cir. 2001) (dismissing Section 36(b) case where the plaintiff did not make any allegations about the services offered by the investment adviser); *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 528 F. Supp. 2d 332, 336 (S.D.N.Y. 2007) (dismissing

- 16 -

this level of specificity is not required at the pleading stage, particularly in a case like this where such internal corporate information is only available through discovery. *See Curran*, 2010 WL 2889752, at *8 (holding that the plaintiffs had adequately pled their Section 36(b) claims despite alleging generally, on information and belief, that the services provided by the investment adviser were "a very small percentage of the expenses" incurred under the advisory agreement); *see, e.g.*, *Sylmark Holdings Ltd. v. Silicone Zone Int'l Ltd.*, 783 N.Y.S.2d 758, 774 (N.Y. Sup. Ct. 2004) (recognizing that corporate defendants alone possessed information necessary to determine the extent of their improper conduct). Again, to survive a motion to dismiss, Plaintiffs need only allege a plausible claim entitling it to relief, not fill in every conceivable fact about the services provided by SIMC, as Defendant apparently believes Plaintiffs must do. *Curran*, 2010 WL 2889752, at *9.

Finally, Defendant argues that the fact that SIMC took less than half the advisory fees conclusively shows that the fees charged were not excessive. But courts do not impose a specific numeric threshold for fees to be deemed to be excessive. In fact, the *Kasilag* court denied a motion to dismiss Section 36(b) claims based on similar allegations where the adviser also received less than half the total fees (only 42% in that case) for likewise performing mostly supervisory duties. *See* Oddo Decl., Exhibit A, ¶46 (table).

### 2.    Economies of Scale

While the crux of Plaintiffs' Section 36(b) claim is its sub-adviser allegations, they have also alleged a number of other facts that bolster Plaintiffs' claim that the fees received by SIMC were excessive. Among others, Plaintiffs have alleged facts showing that SIMC has not passed on the benefits achieved from economies of scale to the SEI Funds investors. Complaint, ¶¶28-

Section 36(b) claim based primarily on economies of scale and fund underperformance allegations).

31.  Specifically, it is well-established in the mutual fund industry that as a mutual fund's assets grow in size, its costs do not rise commensurately.  Complaint, ¶¶28-29.  For this reason, many advisory fee schedules have breakpoints (i.e., discounted fee ratios at specified asset levels) that result in lower advisory costs (as a percentage of fund value) as the amount of assets increase.  Complaint, ¶¶28-31.  Here, by contrast, SIMC's advisory fees include no such breakpoints, meaning that as the SEI Funds' assets have dramatically increased over the last seventeen years, the fees SIMC has received have risen at the same exponential rates while its costs have leveled off.  Complaint, ¶30.

Defendant counters that Plaintiffs have not alleged SIMC's specific cost structure, but again such specificity is not required (nor is it even available to Plaintiffs) to show this factor is present.  *See, e.g.*, Oddo Decl., Exhibit B, Amended Complaint, ¶¶60-69, *Curran v. Principal Mgmt. Corp.*, No. 09-cv-00433-RP-CFB (S.D. Iowa Jan. 15, 2010) (similarly relying on allegations about economies of scale of mutual fund industry generally rather than the mutual funds at issue); *see also Curran*, 2010 WL 2889752, at *8 (noting that the complaint contains "many generalized statements about the mutual fund industry, but still crediting plaintiff's economies of scales argument supporting his [Section] 36(b) claim").  In fact, Plaintiffs' economies of scale argument are even stronger in this case than the one credited by the court in *Curran*.  While in *Curran*, the investment advisory fee agreement included breakpoints (albeit inadequate ones), here, SIMC's fee schedules do not include any breakpoints at all despite the dramatic increases in the net asset values of the SEI Funds (and as a result, SIMC's fees) over their histories.  Complaint, ¶¶28-31; *Curran*, 2010 WL 2889752, at *8 (referencing the breakpoints in the fee schedules).

### 3. Board's Lack of Conscientiousness

Plaintiffs have also alleged facts showing the Board's lack of conscientiousness, specifically that the Board was unable to adequately review and approve the advisory fee agreements given the vast number of SEI Funds it is charged with overseeing and the conflicts of interest between it and SIMC. Complaint, ¶¶35-42. Defendant not only takes issue with the sufficiency of these allegations, but brazenly argues that under *Jones* the Board's agreement to the SIMC fees is entitled to deference since the Board was allegedly independent and its review process was robust. Motion at 24-29. Defendant is entitled to no such deference on this Motion to Dismiss because there are no facts in the record showing this to be true (in fact, as shown above, the Complaint contains only facts showing the contrary). Complaint, ¶¶35-42. Rather, Defendant once again relies on numerous self-serving outside documents to demonstrate that the Board was independent and engaged in a thorough process, but none (with the exception of the advisory and sub-advisory agreements) are mentioned in the Complaint, and therefore they must be excluded for purposes of this motion. *See, e.g.*, Motion at 15-20, 28 (citing to a number of outside self-serving documents, including annual reports, proxy statements, and other SEC filings, that were not referenced in the Complaint). In fact Defendant cites to and attaches to its Motion to Dismiss nineteen documents, none of which may be considered by the Court on this motion (except for the fee agreements). *See Ritz Camera*, 772 F. Supp. 2d at 1109 (holding that a court may take judicial notice merely of the existence of SEC filings, but not for the truth of facts asserted therein); *Corinthian Colleges*, 655 F.3d at 999 (permitting outside documents to be considered on a motion to dismiss only if either physically attached to or referenced in the

complaint); *Curran*, 2010 WL 2889752, at *9 (refusing to consider documents offered by defendants showing the board was independent and acted conscientious).[8]

### 4.  Other Factors

Defendant also contends that Plaintiffs have failed to present any factual allegations on the other *Gartenberg* Factors and that this somehow dooms Plaintiffs' Section 36(b) claims.  Not at all.  Again, Plaintiffs need not allege facts in support of each factor to plead and prove that Defendant charged grossly excessive fees.  While Plaintiffs, like the plaintiffs in *Kasilag* and *Curran*, have adequately pled their Section 36(b) claims based primarily on sub-adviser allegations, they have included other factual allegations to bolster their case.  Based on the totality of these allegations, Plaintiffs have alleged a plausible claim for relief, as reflected by the above line of cases.   Not able to rebut this authority, Defendant cites to a number of inapposite cases, none of which involved the sub-adviser allegations that form the core of this Complaint. *See, e.g.*, *In re Goldman Sachs Mut. Fund Fee Litig.*, No. 04 CIV 2567 (NRB), 2006 WL 126772, at *1 (S.D.N.Y. Jan. 17, 2006) (granting motion to dismiss Section 36(b) claim where the plaintiff did not include a single allegation about the advisory fees); *In re Scudder Mut. Funds Fee Litig.*, No. 04 Civ. 1921(DAB), 2007 WL 2325862, at *1 (S.D.N.Y. Aug. 14, 2007) (granting motion to dismiss Section 36(b) claim based on entirely different allegations than ones alleged in the Complaint); *In re Franklin Mut. Funds Fee Litig.*, 478 F. Supp. 2d 677, 678 (D.N.J. 2007) (same).

---

[8] It would be particularly inappropriate and unfair for the Court to credit Defendant's self-serving assertions about the independence and process of the Board given that Plaintiffs have had no opportunity to take discovery and probe into the Board's independence and processes.

### D.    Plaintiffs' Section 36(b) Claims Are Timely

In their Complaint, Plaintiffs make allegations about SIMC's fees for 2012 (rather than 2013) because those were the only publicly available figures at the time they filed their Complaint on December 11, 2013.  Since the filing of the Complaint, in a January 31, 2013 SEC filing, the SEI Funds have publicly disclosed the amount of fees paid to SIMC for 2013, which reflects that SIMC received comparable fee levels as the previous year, and therefore does not affect the basis for Plaintiffs' Section 36(b) claims in the least.  Accordingly, this is not a ground for dismissal and Plaintiffs are prepared to amend their complaint to add the new numbers.

## IV.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully ask the Court to deny Defendant's Motion to Dismiss in its entirety.

Dated: April 28, 2014                                       Respectfully submitted,

ROBBINS ARROYO LLP
BRIAN J. ROBBINS
STEPHEN J. ODDO (*pro hac vice*)
EDWARD B. GERARD (*pro hac vice*)
JUSTIN D. RIEGER (*pro hac vice*)

s/ Stephen J. Oddo
STEPHEN J. ODDO
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
brobbins@robbinsarroyo.com
soddo@robbinsarroyo.com
egerard@robbinsarroyo.com
jrieger@robbinsarroyo.com

RYAN & MANISKAS, LLP
RICHARD A. MANISKAS
995 Old Eagle School Road, Suite 311
Wayne, PA 19087
Telephone: (484) 588-5516
Facsimile: (484) 450-2582
rmaniskas@rmclasslaw.com

Attorneys for Plaintiffs

- 21 -

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the foregoing document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: April 28, 2014                              s/ Stephen J. Oddo
                                                    STEPHEN J. ODDO

947919