**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| STEVEN CURD and REBEL CURD, Derivatively on Behalf of SEI INTERNATIONAL EQUITY FUND, SEI HIGH YIELD BOND FUND, SEI TAX-MANAGED LARGE CAP FUND, SEI TAX-MANAGED SMALL/MID CAP FUND, and SEI INTERMEDIATE-TERM MUNICIPAL FUND,<br><br>     Plaintiffs,<br><br> v.<br><br>SEI INVESTMENTS MANAGEMENT CORPORATION, and SEI INVESTMENTS GLOBAL FUNDS SERVICES,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 2:13-cv-07219-AB<br><br> ORAL ARGUMENT REQUESTED |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

**TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................1

II.    STATEMENT OF THE FACTS ..........................................................................5

      A.      Regulation of Mutual Fund Advisory Fees...............................................5

      B.      Defendant SIMC Charged Excessive Fees Relative to Services Provided..............6

      C.      Defendant SIGFS Charged Excessive Fees for the Administrative Services Provided ........................................................................................7

      D.      Despite Existence of Economies of Scale and Significant Increase in Fees, Defendants' Fee Rates Remain Unchanged .............................................7

      E.      SIMC and SIGFS Collect Duplicate Fees on Certain Fund Assets ........................9

      F.      The Board of Trustees of the SEI Funds.................................................9

III.   ARGUMENT .......................................................................................................10

      A.      A Motion to Dismiss a Section 36(b) Claim Must Be Denied if Plaintiffs Plead Sufficient Facts to Raise a Plausible Claim ..................................10

      B.      Plaintiffs Have Properly Pled a Section 36(b) Claim for Excessive Fees for Advisory Services ..........................................................................14

            1.      Plaintiffs Have Properly Pled Their Section 36(b) Claims Based on Allegations that SIMC Delegated the Investment Management Services to Sub-advisers and Retained a Substantial Portion of the Advisory Fees for Itself ........................................................15

                  a.      Plaintiffs' Sub-Adviser Allegations Alone Demonstrate that SIMC Charged Excessive Fees ......................................15

            2.      Defendant Ignores the Line of Analogous Decisions and Attacks Plaintiffs' Sub-adviser Allegations with Improper Fact-driven Arguments....................................................................20

            3.      Plaintiffs Have Pled Sufficient Facts to Support an Inference that Defendant SIMC Enjoyed Economies of Scale and Did Not Share the Benefits of the Economies of Scale with the SEI Funds....................23

                  a.      Plaintiffs Have Pled Facts Demonstrating that Significant Economies of Scale Exist as to the SEI Funds ..............23

   b. Plaintiff Adequately Alleged that Defendant SIMC Did Not Share the Benefits of Economies of Scale with the SEI Funds .................................................................................26

  4. Plaintiffs Have Pled Sufficient Facts Demonstrating that Defendant SIMC's Profits are Excessive and Their Fees are Disproportionately High Compared to Other Mutual Funds ....................29

  5. Plaintiffs Have Pled Sufficient Facts Demonstrating that Defendant SIMC's Fees are Excessive In Comparison to Fees Charged by Comparable Mutual Funds .........................................................31

  6. Plaintiffs Alleged Facts Demonstrating that Defendant SIMC Charges the Funds Duplicative, and Therefore Excessive, Fees ..............32

  7. Plaintiffs Have Pled Facts Establishing Fall-Out Benefits Enjoyed by Defendant SIMC ...................................................................35

  8. Plaintiffs Alleged Facts Questioning the Care and Conscientiousness of the Board ..............................................................36

IV. PLAINTIFFS HAVE PROPERLY PLED A SECTION 36(B) CLAIM FOR EXCESSIVE FEES FOR ADMINISTRATIVE SERVICES ............................................38

 A. Plaintiffs Have Pled Sufficient Facts to Raise a Non-Speculative Inference that Defendant SIGFS Charged an Excessive Fee Given the Nature and Quality of Administrative Services Provided to the Fund .....................................38

 B. Plaintiffs Have Pled Sufficient Facts to Raise a Non-Speculative Inference that Defendant SIGFS Enjoyed Economies of Scale and Did Not Share the Benefits of Economies of Scale with the SEI Funds ..............................................39

 C. Plaintiffs Have Pled Sufficient Facts Demonstrating that Defendant SIGFS' Profitability Is Excessive ...........................................................40

 D. Plaintiffs Have Pled Sufficient Facts Demonstrating that Defendant SIGFS' Fees are Excessive In Light of Other Factors ..........................................41

V. PLAINTIFFS' COMPLAINT ADEQUATELY ALLEGES FACTS REGARDING FEES CHARGED WITHIN THE PROPER PERIOD .....................................................41

VI. CONCLUSION ................................................................................................43

## TABLE OF AUTHORITIES

**CASES**

*Acampora v. Birkland,*
    220 F. Supp. 527 (D. Colo. 1963).......................................................................37

*Am. Chems. & Equip., Inc. 401(K) Ret. Plan v. Principal Mgmt. Corp.,*
    No. 4:14-cv-00044-JAJ, 2014 WL 5426908 (S.D. Iowa Sept. 10, 2014)..................*passim*

*Amron v. Morgan Stanley Inv. Advisors, Inc.,*
    464 F.3d 338 (2d Cir. 2006)...........................................................11, 19, 25, 37

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...................................................................................10, 11

*Batra v. Investors Research Corp.,*
    144 F.R.D. 97 (W.D. Mo. 1992)....................................................................35

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)...................................................................................10, 11

*Boyce v. AIM Management Group, Inc.,*
    2007 WL 7117575 (S.D. Tex., Sept 17, 2007) ..........................................41, 42

*Curran v. Principal Mgmt. Corp.,*
    No. 4:09-cv-00433, 2010 WL 2889752 (S.D. Iowa June 8, 2010)...........................*passim*

*Dumond v. Mass. Fin. Servs.,*
    No. Civ.A. 04-11458-GAO, 2006 WL 149038 (D. Mass. Jan. 19, 2006) ..................24, 37

*Forsythe v. Sun Life Fin., Inc.,*
    417 F. Supp. 100 (D. Mass. 2006) ...............................................................11, 34

*Gallus v. Am. Express Fin. Corp.,*
    370 F. Supp. 2d 862 (D. Minn. 2005)...........................................................35

*Gartenberg v. Merrill Lynch Asset Mgmt., Inc.,*
    694 F. 2d (2d Cir. 1982)...........................................................................12, 35, 36

*Green v. Nuveen Adv. Corp.,*
    186 F.R.D. 486 (N.D. Ill. 1999)...................................................................19, 42

*Hoffman v. UBS-AG,*
    591 F. Supp. 2d 522 (S.D.N.Y. 2008).........................................................18, 25, 31

*Hunt v. Invesco Funds Group,*
    2006 WL 1581846 (S.D. Tex. June 5, 2006)................................................42

*In re American Mutual Funds Fee Litigation*,
  No. CV 04-5593 GAC, 2009 WL 5215755 (C.D. Cal. Dec. 28, 2009)............................ 12

*In re Dreyfus Mut. Funds Fee Litigation*,
  428 F. Supp. 2d 342 (W.D. Pa. 2005) ................................................................................ 41

*In re Franklin Mut. Funds Fee Litig.*,
  478 F. Supp. 2d 677 (D. N.J. 2007) .............................................................................. 29, 41

*In re Goldman Sachs Mut. Funds Fee Litig.*,
  No. 04 Civ. 2567(NRB), 2006 WL 1267723 (S.D.N.Y. Jan. 17, 2006)............... 11, 28, 29

*In re Goldman Sachs Mut. Funds*,
  No. 04 CIV. 2567 (NRB), 2006 WL 126772 (S.D.N.Y. Jan. 17, 2006).................... 19, 28

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
  528 F. Supp. 2d 332 (S.D.N.Y. 2007).............................................................................. 22

*In re Scudder Mut. Funds Fee Litig.*,
  No. 04 CIV. 1921 (DAB), 2007 WL 2325862 (S.D.N.Y. Aug. 14, 2007)................. 18, 28

*Intri Plex Techs., Inc. v. Crest Grp.*,
  499 F.3d 1048 (9th Cir. 2007) ........................................................................................ 21

*Jones v. Harris Assocs. L.P.*,
  2005 WL 831301 (N.D. Ill. April 7, 2005)........................................................... 20, 27, 34

*Jones v. Harris Assocs. L.P.*,
  559 U.S. 335 (2010).................................................................................................*passim*

*Kasilag v. Hartford Inv. Fin. Servs., LLC*,
  No. 1:11-cv-01083-RMB-KMW (D.N.J. Nov. 14, 2011) ................................................ 19

*Kasilag v. Hartford Inv. Fin. Servs., LLC*,
  No. 11-1083, 2012 WL 6568409 (D.N.J. Dec. 17, 2012)..........................................*passim*

*Kost v. Kozakiewicz*,
  1 F.3d 176 (3d Cir. 1993) .............................................................................................. 11

*meVC Draper Fisher Jurvetson Fund I, Inc., v. Milliennium Partners, L.P.*,
  260 F. Supp. 2d 616 (S.D.N.Y. 2003).............................................................................. 34

*Migdal v. Rowe Price-Fleming Int'l, Inc.*,
  248 F.3d 321 (4th Cir. 2001) ..................................................................................... 22, 38

*Migdal v. Rowe Price-Fleming Int'l, Inc.*,
  No. AMD 98-2162, 2000 WL 350400 (D. Md. Mar. 20, 2000) aff'd, 248
  F.3d 321 (4th Cir. 2001) ................................................................................................ 19

*Millenco L.P. v. MEVC Advisors, Inc.*,
    No. CIV. 02-142-JJF, 2002 WL 31051604 (D. Del. Aug. 21, 2002) .................. 12, 18, 34

*Reso ex rel. Artisan INt'l Fund v. Artisan Partners Ltd. P'ship*,
    No. 11-CV-873-JPS, 2011 WL 5826034 (E.D. Wis. Nov. 18, 2011)........................*passim*

*Ritz Camera & Image, LLC v. SanDisk Corp.*,
    772 F. Supp. 2d 1100 (N.D. Cal. 2011) *aff'd*, 700 F.3d 503 (Fed. Cir.
    2012) ........................................................................................................... 21

*Sins v. Janus Capital Mgmt., LLC*,
    No. 04-cv-01647-WDM-MEH, 2006 WL 3746130 (D. Colo. Dec. 15,
    2006) .........................................................................................................*passim*

*Sivolella v. AXA Equitable Life Ins. Co.*,
    No. 11-4194 (PGS), 2012 WL 4464040 (D.N.J. Sept. 25, 2012) .................................. 2, 18

*Skilstaf Inc. v. CVS Caremark Corp.*,
    669 F.3d 1005 (9th Cir. 2012) ........................................................................ 21

*Strigliabotti v. Franklin Res. Inc.*,
    No. C 04-00883 SI, 2005 WL 645529 (N.D. Cal. Mar. 7, 2005) .......................... 13, 25, 28

*Swierkiewicz v. Sorema N.A.*,
    534 US 506 (2002) ....................................................................................... 11

*Sylmark Holdings Ltd. v. Silicone Zone Int'l Ltd.*,
    783 N.Y.S.2d 758 (N.Y. Sup. Ct. 2004) ........................................................... 22

*United States v. Corinthian Colleges*,
    655 F.3d 984 (9th Cir. 2011) ........................................................................... 5

*Wicks v. Putnam Inv. Mgmt, LLC*.,
    2005 WL 705360 (D. Mass. Mar. 28, 2005).................................................... 28

*Wisniewski v. Johns-Manville Corp.*,
    759 F.2d 271 (3d Cir. 1985).......................................................................... 11

*Zehrer v. Harbor Capital Advisors, Inc.*,
    No. 1:14-cv-00789, 2014 WL 6478054 (N.D. Ill. Nov. 18, 2014)..........................*passim*

*Zucker v. Federated S'holder Servs. Co.*,
    2007 WL 709305 (W.D. Pa. Mar. 5, 2007) ...................................................... 34

## STATUTES, RULES & OTHER AUTHORITIES

(17 C.F.R. 270.12d1-1).................................................................................... 35

(17 C.F.R. §270.12b-1 (2004)) ................................................................... 19, 28

5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216
    (3d ed. 2004) ...................................................................................................... 10

15 U.S.C. §80a-35(b) ........................................................................................................ 1

15 U.S.C. §80a-35(b)(3) .................................................................................................. 41

Rule 8(a) of the Federal Rules of Civil Procedure......................................................... 11

Rule 12(b)(6) of the Federal Rules of Civil Procedure.................................................. 10

§ 36(b) of the Investment Company Act of 1940 ................................................... *passim*

John P. Freeman, et al., *Mutual Fund Advisory Fees: New Evidence and a Fair*
    *Fiduciary Test*, 61 Okla. L. Rev. 83, 117-118 (2008) ....................................... 29

Rule 8(a)(2) ...................................................................................................................... 11

Rule 12(d)(1)............................................................................................................. 34, 35

## I.      INTRODUCTION

As detailed in the Verified Amended Complaint (Document No. 51) (the "Complaint"), defendant SEI Investments Management Corporation ("SIMC") was hired as the investment adviser charged with managing the investments of the SEI family of mutual funds[1] and then delegated nearly all of its investment management responsibilities to its army of sub-advisers. By doing so and retaining substantial portions of the proceeds for itself, SIMC charges excessive fees that violate section 36(b) of the Investment Company Act of 1940 ("ICA"), as amended by 15 U.S.C. §80a-35(b) ("Section 36(b)").

While their subadviser-based allegations, by themselves, are sufficiently pled, plaintiffs Steven Curd and Rebel Curd ("Plaintiffs") have set forth in the Amended Complaint a number of additional well-pled factual allegations to bolster their 36(b) claim against SIMC, including that: (i) SIMC retains a disproportionate amount of the investment management fee despite passing off nearly all of its investment management duties to sub-advisers (Complaint, ¶¶35-36); (ii) SIMC fails to share the significant economies of scale realized with the SEI Funds (Complaint, ¶¶45-47); (iii) SIMC receives exorbitant profits for providing minimal services (Complaint, ¶55); (iv) SIMC's fees are excessive when compared to similar mutual funds' costs (Complaint, ¶64); (v) SIMC accrues financial fall-out benefits because of its relationship with the mutual fund (Complaint at 21); (vi) SIMC charges duplicative, and therefore excessive, fees for management of cash and investment in affiliated funds (Complaint, ¶¶77-78); and (vii) the Board of Trustees (the "Board") has failed to act conscientiously and independently in reviewing and approving the fee agreements with SIMC (Complaint, ¶68).  In particular, since their initial Complaint was

---

[1]  "SEI Funds" refers to SEI High Yield Bond Fund, SEI International Equity Fund, SEI Intermediate-Term Municipal Fund, SEI Tax-Managed Large Cap Fund, and SEI Tax-Managed Small/Mid Cap Fund.

dismissed, Plaintiffs have added significant factual support for their sub-adviser-based, economies of scale, profitability, and Board process allegations and introduced completely new allegations involving SIMC's fall out benefits, charging of duplicative fees, and comparisons to fees within the mutual industry.   Taken together, Plaintiffs' detailed and multifaceted allegations regarding SIMC's exorbitant fees clearly satisfy the relativity low pleading standard of stating a plausible claim for relief under Section 36(b).

In response,  Defendants have filed a Motion to Dismiss the Complaint (the "Motion to Dismiss") (Document No. 54) claiming that Plaintiffs have not alleged sufficient facts to show that SIMC and SIGFS charged SEI Funds' shareholders disproportionately large fees relative to the services rendered for the past year.   Yet Defendant does not and cannot cite to a single analogous case in which a court has dismissed at the pleading stage a Section 36(b) action based on similar sub-adviser allegations (i.e., that the investment adviser subcontracted most of the investment management services and improperly retained a substantial portion of the advisory fees for itself) in support of a Section 36(b) claim.   Rather, in every single analogous case (six in all), including two recent decisions involving strikingly similar facts, the courts have found such allegations to be well pled under the minimal pleading standard and denied motions to dismiss.   *See, e.g.*, *Zehrer v. Harbor Capital Advisors, Inc.*, No. 1:14-cv-00789, 2014 WL 6478054, at *4-5 (N.D. Ill. Nov. 18, 2014); *Kasilag v. Hartford Inv. Fin. Servs., LLC*, No. 11-1083 (RMB/KMW), 2012 WL 6568409, at *3 (D.N.J. Dec. 17, 2012) (denying motion to dismiss where the plaintiff alleged that defendant adviser had paid "sub-advisors to perform 'substantially all' of the investment management services that it provides to the Funds at a fraction of the fee it charges for such services"); *Sivolella v. AXA Equitable Life Ins. Co.*, No. 11-4194 (PGS), 2012 WL 4464040, at *1 (D.N.J. Sept. 25, 2012) (denying motion to dismiss complaint alleging

similar allegations); *Curran v. Principal Mgmt. Corp.*, No. 4:09-cv-00433, 2010 WL 2889752, at *12 (S.D. Iowa June 8, 2010) (same).[2]

Faced with this overwhelming fortress of countervailing authority, Defendants attempt to transform the standards of proof set forth in *Gartenberg* and *Jones* into heightened pleading requirements.  Specifically, Defendants misread these decisions as requiring Plaintiffs to allege facts that: (i) challenge the robustness of the Board's decision-making process; and (ii) satisfy each of the Gartenberg factors, which is the framework generally used by courts to analyze whether the investment adviser's fees are excessive.  These arguments are misguided as neither requirement exists at the pleading stage.  Rather, Plaintiffs can state a Section 36(b) claim merely by "alleging any combination of facts that plausibly support an inference that a particular fee, given [the totality of] circumstances, is disproportionately large to the services rendered in exchange for that fee." *Curran*, 2010 WL 2889752, at *9.

Defendants also resort to a number of inappropriate fact-based arguments in an unsuccessful attempt to undermine Plaintiffs' allegations.  They argue that the Court should defer to it on the reasonableness of its fees because the SEI Funds' Board, which negotiated the fees on behalf of the SEI Funds, was purportedly independent and conducted a thorough process.  The Board's independence and the thoroughness of its process, however, are fact-intensive inquiries improperly raised at the motion to dismiss stage.  Therefore, the Court should ignore the multitude of attorney-prepared, self-serving brochures, prospectuses, proxy statements and other U.S. Securities and Exchange Commission ("SEC") filings Defendants have placed improperly before the Court as part of an attempt to rebut Plaintiffs' allegations.

---

[2] Here, as throughout, all emphasis is added and citations and footnotes are omitted unless otherwise noted.

In addition, Defendants distort the language of the advisory and sub-advisory agreements SIMC entered into with the Board and its sub-advisers, respectively, and impermissibly cite to outside documents to give the appearance that its largely supervisory services were more comprehensive than that and justified substantial fees.  Regardless of the extent of these vaguely defined responsibilities, courts have made clear that it is not appropriate to engage in this type of fact-driven inquiry regarding the quality and quantity of services performed by the investment adviser at the pleading stage.  *See Zehrer v. Harbor Capital Advisors, Inc.*, No. 1:14-cv-00789, (N.D. Ill. Nov. 18, 2014); *Kasilag*, 2012 WL 6568409, at *9 (rejecting a similar argument).  As reflected by the recent Harbor and American Chemicals decisions, all Plaintiffs were required to plead, which they've done here, is that SIMC was primarily hired to manage the investments of the SEI Funds and that nearly all of these primary services were passed on to sub-advisers, as reflected by a comparison of each adviser's responsibilities under their respective agreements. Harbor; American Chemical; Complaint, ¶¶20-31.[3]

In their Complaint, Plaintiffs have also brought a 36(b) claim against defendant SEI Investments Global Funds Services ("SIGFS") (collectively with SIMC, "Defendants"), the SEI Funds' administrator for charging an excessive fee that violates Section 36(b) of the ICA.   In light of the simple back office nature of its services, its failure to pass on the significant economies of scale of its services to the SEI Funds, fee comparisons with other fund administrators, and its practice of charging duplicative fees, defendant SIGFS, the SEI Funds' administrator, has adequately pled their 36(b) claim against SIGFS.  To rebut these allegations, Defendants similarly rely on fact-based arguments supported by self-serving outside documents,

---

[3] All paragraph references ("¶__" or "¶__") are to Plaintiffs' Verified Amended Complaint filed October 2, 2014 (Document No. 51).

but again the Court's duty on this motion to dismiss is to consider the sufficiency of Plaintiffs' allegations, not weigh the parties' competing allegations.

In sum, taken together, Plaintiffs' factual allegations against defendants SIMC and SIGFS properly state Section 36(b) claims under the liberal federal pleading standard and Defendants' Motion to Dismiss must be denied.[4]

## II.   STATEMENT OF THE FACTS

### A.   Regulation of Mutual Fund Advisory Fees

As early as 1935, Congress recognized that the regular capitalistic market forces "do not work in the mutual fund industry in the same manner as they do in other sectors of the American economy" because of the special relationship between a mutual fund and its investment adviser. Complaint, ¶19.  This relationship is fraught with potential conflicts of interest given that typically the investment adviser has created the fund, selected the fund directors, managed the fund's investments, and provided other services. *Jones v. Harris Assocs. L.P.*, 559 U.S. 335, 338 (2010).  This creates potential conflicts of interest between a mutual fund and its adviser that precludes them from negotiating their advisory agreement at arm's-length. *Id.*

Because of its concerns about the potential for abuse inherent in the structure of investment companies, Congress enacted the ICA, which regulates the relationship between a mutual fund and its adviser, and creates certain protections for mutual fund shareholders. *Id.* at 339; Complaint, ¶¶20-26.  Among them, Section 36(b) of the ICA imposes upon advisers, and its affiliates, a fiduciary duty not to overcharge the fund shareholders for any services it provides and provides shareholders with a private right of action to enforce this duty. *See* Section 36(b);

---

[4] While Plaintiffs believe they have alleged sufficient facts to state their breach of fiduciary claims, should the Court find otherwise, Plaintiffs request the right to amend the Complaint to cure any pleading deficiencies the Court may identify.

*Jones*, 559 U.S. at 339-40; Complaint, ¶24-25.  In addition, the board of directors are required to "'review and approve the contracts of the investment adviser'" annually.  *See Jones*, 559 U.S. at 339-40; Section 36(b).

### B. Defendant SIMC Charged Excessive Fees Relative to Services Provided

Defendant SIMC is the investment adviser to the SEI family of mutual funds, which includes the SEI Funds.  Complaint, ¶17.  Under its advisory agreement with SEI Funds, SIMC was hired primarily to perform investment management services (i.e., to select an investment strategy, to research which assets are undervalued or are likely to appreciate, and to implement an investment plan by deciding what assets or securities to buy, retain, and sell for the fund).  Complaint, ¶¶17, 35.  In return for agreeing to provide these main services, defendant SIMC receives substantial fees—$30 million in fiscal year 2013 for the named SEI Funds alone, which constitute only five of the one hundred funds in the SEI fund complex.  Complaint, ¶40.

Defendant SIMC, however, does not actually perform these investment management duties itself.  Instead, defendant SIMC hires multiple sub-advisers and delegates the investment decision-making responsibilities to them.  Complaint, ¶¶36-39.  The services provided by the sub-advisers, which include evaluating and implementing the investment strategies of the funds, are the most expensive and important investment management activities for a fund.  Complaint, ¶44.  Having wholly subcontracted the investment decision-making to others, defendant SIMC's only remaining responsibilities under its advisory agreement are to perform minor, low cost administrative tasks and supervise and monitor the sub-advisers, duties which it shares with the Board.  Complaint, ¶¶36-39.  Defendant SIMC's supervisory work is further simplified because for at least one of the SEI Funds, defendant SIMC has hired one of its own affiliates as a sub-adviser.  Complaint, ¶43.

Despite subcontracting the investment management responsibilities to its sub-advisers, defendant SIMC retains nearly half of the advisory fees it receives from the SEI Funds, which amounted to $12 million retained in fiscal year 2013 for the SEI Funds alone.  Complaint, ¶¶40-42.

### C.     Defendant SIGFS Charged Excessive Fees for the Administrative Services Provided

Defendant SIGFS, an affiliate of defendant SIMC, is the SEI Funds' administrator. Complaint, ¶¶90-95.  Pursuant to its Amended and Restated Administration and Transfer Agency Agreement ("Administration Agreement"), defendant SIGFS is assigned to furnish largely low cost, low complexity, back office-type administrative services such as regulatory reporting, office space, and equipment to the SEI Funds.  Complaint, ¶90.  As the fund administrator, SIGFS performs only a portion of the administrative services required by the SEI Funds, which also pay third party providers for a host of administrative services, including separate fees for printing fees, custodian fees, registration fees and many others.  Complaint, ¶91.  Nevertheless, defendant SIGFS charges the SEI Funds an administrative fee, of as much as forty-five basis points, resulting in administrative fees of over $27 million in fiscal year 2013 for just the SEI Funds. Complaint, ¶¶92, 94-95.

### D.     Despite Existence of Economies of Scale and Significant Increase in Fees, Defendants' Fee Rates Remain Unchanged

Pursuant to their fixed fee percentage agreements with the SEI Funds, SIMC and SIGFS received fees amounting to fixed percentages of the assets under management ("AUM") of the SEI Funds.  Although some of the SEI Funds were started as early as the mid-1990's, the fixed rates in these fee agreements have never changed.  Complaint, ¶51.  Over this period of time, the AUM of the SEI Funds has skyrocketed, one by more than 300%, resulting in correspondingly

significant increases in the fees received by SIGFS and SIMC as a result of their fixed fee rates. *Id*.

While SIGFS's and SIMC's total fees have grown exponentially, their costs have increased at much slower rates. *Id*. This is due to the fact that most of the costs associated with running a mutual fund are fixed costs—costs for calculating the fund's net asset value ("NAV") or hiring employees to conduct financial research are fixed costs that do not increase at the same rate as increases in AUM. Complaint, ¶¶45-50. Indeed, both the SEC and the U.S. Government Accountability Office have conducted comprehensive studies demonstrating that the amount of work and costs required to operate a mutual fund does not increase proportionately with the assets under management. Complaint, ¶48. As for the SEI Funds in particular, the Board studied the SEI Funds' cost structure and concluded that economies of scale exist for the funds. Complaint, ¶50. For this reason, Defendants' costs have remained fairly stable, in contrast to their expansive revenue growth. Complaint, ¶51.

When economies of scale are found to exist, investment advisers typically share the benefits of them with their fund shareholders in one of two ways: (i) the adviser institutes breakpoints in the advisory fee schedules whereby as the net assets reach certain levels, the adviser's fee percentage decreases in order to account for these economies of scale; or (ii) the funds waive an increasing amount of fees each year as AUM grow. Complaint, ¶¶50-55. The Board acknowledged these as two industry-accepted methods, but declined to negotiate either benefit for the SEI Funds. Complaint, ¶¶45-50. Specifically, defendant SIMC's fee agreement does not include any fee breakpoints, regardless of how much AUM grows. *Id*. Defendant SIMC has also declined to waive fees for one of the SEI Funds, and waived only negligible amounts (less than $1 million a year) for the others. *Id*.

Similarly, there are no breakpoints for the administration fee, and the total fee waivers for all of the SEI Funds for the past three years was only $4,000.  *Id*.  Despite the dramatic increases in Defendants' advisory and administration fees and the reduction in its relative costs, the Board has failed to renegotiate any of the fee agreements with Defendants SIMC and SIGFS to include additional breakpoints to bring their fees in line with its costs.  *Id*.

### E.   SIMC and SIGFS Collect Duplicate Fees on Certain Fund Assets

Defendant SIMC allocates most of the assets of the SEI Funds to sub-advisers, who invest those assets based on the investment strategies of each fund.  Complaint, ¶77.  But for a certain percentage of the SEI Funds' assets, an average of 7%, defendant SIMC re-invests these proceeds into affiliated cash management funds.  Complaint, ¶¶78-87.  The SEI Funds pay two layers of fees to Defendants for these reinvested funds, one to them in their capacities as adviser and administration to the SEI Funds, and one to them in their capacities as adviser and administration to the Affiliated Funds.  Complaint, ¶¶80,110.  The Board and Defendants have failed to reduce Defendants' fees, despite the fact that SEI Funds are paying duplicative fees (in a total amount of $5.3 million for only one layer of services.  Complaint, ¶84, 109.

### F.   The Board of Trustees of the SEI Funds

Under the ICA, the board of trustees of each mutual fund is required to carefully review and either approve or, if necessary, renegotiate the terms of each advisory fee agreement on an annual basis.  *Jones*, 559 U.S. at 340.  The directors of the SEI Funds, who work only part-time in these positions, have the responsibility for managing one hundred mutual funds in the SEI Funds complex at the same time, meaning they have minimal time and resources to devote to

even reviewing, much less renegotiating, the advisory agreements for each fund.  Complaint, ¶¶69-76; MTD at 11.[5]

Even if they had the time and resources to do so, the Board lacks the motivation to renegotiate these agreements to ensure the fee structures are fair and proportionate because of the incestuous relationship between the Board and the financial advisers.  Complaint, ¶¶69-76.  As recognized by Congress in enacting the ICA, there is an inherent conflict of interest between the boards of directors and the investment adviser as a result of the influence wielded by investment advisers over the funds they create and the boards of directors they appoint.  *Jones*, 559 U.S. at 338-39; Complaint, ¶¶20-26.  This conflicted relationship is demonstrated here by the Board's failure to negotiate for lower fees or breakpoints despite the SEI Funds' growth, their underperformance, the Defendants' subcontracting of its primary services, and the excessive and duplicative fees charged on cash assets.  Complaint, ¶¶86-88.

## III.   ARGUMENT

### A.   A Motion to Dismiss a Section 36(b) Claim Must Be Denied if Plaintiffs Plead Sufficient Facts to Raise a Plausible Claim

A court must deny a motion to dismiss based on Rule 12(b)(6) of the Federal Rules of Civil Procedure so long as plaintiffs plead sufficient factual allegations "to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)).  A complaint that demonstrates anything "more than a sheer possibility" that plaintiff is entitled to relief will survive a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, (2009).  The court must accept all factual allegations contained in the complaint as true, and construe them in

---

[5] "MTD" refers to the Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint (Document No. 54-1) filed November 24, 2014.

the light most favorable to the plaintiffs.  *See Ashcroft v. Iqbal*, 556 U.S. at 678; *Wisniewski v. Johns-Manville Corp.*, 759 F.2d 271, 273 (3d Cir. 1985) (The standard for a motion to dismiss is "'whether taking the allegations of the complaint as true,… and viewing them liberally giving plaintiffs the benefit of all inferences which fairly may be drawn therefrom,…" it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief."'") (alterations in original); *Kost v. Kozakiewicz*, 1 F.3d 176, 183, (3d Cir. 1993) ("We therefore accept all factual allegations in the complaint as true and give the pleader the benefit of all reasonable inferences that can be fairly drawn therefrom."); *Bell Atl. Corp.*, 550 U.S. at 556 ("a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and 'that a recovery is very remote and unlikely'").

The minimal pleading standard under Rule 8(a) of the Federal Rules of Civil Procedure ("Rule 8") applies to claims brought under Section 36(b), which requires including only a "short and plain statement of the claim."  *See* Rule 8(a)(2); *Amron v. Morgan Stanley Inv. Advisors, Inc.*, 464 F.3d 338, 343 (2d Cir. 2006) (citing *Swierkiewicz v. Sorema N.A.*, 534 US 506, 512 (2002)); *Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 100, 114 (D. Mass. 2006) ("there is no heightened pleading standard for claims under [Section] 36(b), the plaintiffs [ ] need only comply with the usual notice pleading requirements of [Rule] 8").

Under Section 36(b), the question at the pleading stage is whether Plaintiffs have "allege[d] facts which would satisfy the basic standard articulated in *Gartenberg*, 'that the fees are [so] disproportionately large, that they bear no reasonable relationship to the services rendered or that they could not have been the product of arm's length bargaining.'"  *In re Goldman Sachs Mut. Funds Fee Litig.*, No. 04 Civ. 2567(NRB), 2006 WL 1267723, at *9 (S.D.N.Y. Jan. 17, 2006).

While Defendants attempt to transmute the *Gartenberg* standard into a heightened pleading requirement, federal courts have established that the above "relatively low standard of plausibly" governs a Section 36(b) claim—that Plaintiffs may "state a [Section] 36(b) claim by alleging any combination of facts that plausibly support an inference that a particular fee, given all of the surrounding facts and circumstances, is disproportionately large to the services rendered in exchange for that fee." *Reso ex rel. Artisan INt'l Fund v. Artisan Partners Ltd. P'ship*, No. 11-CV-873-JPS, 2011 WL 5826034, at *5 (E.D. Wis. Nov. 18, 2011); *Curran*, 2010 WL 2889752 at *9. Indeed, the cases Defendants cite for this proposition all involved standards of review at summary judgment or trial.[6] While Defendants treat the *Gartenberg* factors as a pleading requirement, these factors, while relevant, are "non-exclusive," meaning Plaintiffs are not required to plead facts with respect to each of them. *Kasilag*, 2012 WL 6568409, at *2; *Curran*, 210 WL 2889752, at *9; *Reso*, 2011 WL 5826034, at *5.

Defendants also argue that the Supreme Court's decision in *Jones* requires this Court to engage in a threshold analysis in this motion to dismiss—in which it first considers Plaintiffs' allegations regarding independence and thoroughness of the independent trustees and if it finds them lacking in support of this factor, it is to give "considerable weight" to Defendants' fee

---

[6] Defendants cite to *In re American Mutual Funds Fee Litigation,* for the proposition that the *Gartenberg* standard "establishes a 'very high hurdle to overcome'" but to the extent this is true, it refers to the standard of proof as opposed to the pleading standard. *See* No. CV 04-5593 GAC (RNBx), 2009 WL 5215755, at *3 (C.D. Cal. Dec. 28, 2009); (applying the *Gartenberg* standard and factors at trial); MTD at 20; *Jones*, 559 U.S. at 353 (examining the proper standard for Section 36(b) cases in an appeal of a motion for summary judgment); *see also Jones*, 559 U.S. at 354 (Thomas J., concurring) (recognizing that the *Gartenberg* approach should be used "principally in deciding which cases may proceed past summary judgment"); *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F. 2d, 933 (2d Cir. 1982) (analyzing a Section 36(b) case at the motion for summary judgment stage); *Millenco L.P. v. MEVC Advisors, Inc.*, No. CIV. 02-142-JJF, 2002 WL 31051604, at *3 n.3 (D. Del. Aug. 21, 2002) (refusing to apply the *Gartenberg* factors on a motion to dismiss because "the *Gartenberg* decision does not set a pleading standard, but rather is helpful only after the complete evidentiary record has been established").

agreements.  MTD at 19-26.  This constitutes a blatant misreading of *Jones*, as the court makes clear that such deference may be afforded to the Board only upon an evidentiary showing that its decision-making process was robust and independent, and thus is only appropriate on a motion for summary judgment or at trial.  *Jones*, 559 U.S. at 351-352.  By contrast, here at the pleading stage, without any factual record regarding the Board's decision making process, Defendants are not entitled to any such deference here.  *Id.*  (setting the standard of proof in 36(b) claims).

Indeed, while Plaintiffs allege facts regarding the conscientiousness of the Board as part of their Section 36(b) claims, as explained above, they are not required to do so for pleading purposes and this factor is not given any more weight than the others on a motion to dismiss. *See, e.g.*, *Strigliabotti v. Franklin Res. Inc.*, No. C 04-00883 SI, 2005 WL 645529, at *3-4 (N.D. Cal. Mar. 7, 2005) (emphasizing that the relationship between services and fees are the two essential parts of a Section 36(b) claim and denying a motion to dismiss without any reference to facts regarding the board of trustees).   In fact, Courts have recognized the difficulty of alleging facts calling into question the independence and robustness of the Board process at the pleading stage and will broadly construe any such factual allegations in the plaintiff's favor.  *See Reso*, 2011 WL 5826034, 2011 WL 5826034, at *6-7 (acknowledging that this factor is "difficult to satisfy without discovery" and denying a motion to dismiss, in part, because the plaintiff's allegations raised an inference, "which the Court [was] obligated to make [that] at stage" that the directors did not act independently or conscientiously).

As shown below, Plaintiffs have pled sufficient facts that, taken together, raise the plausible inference that Defendants charged excessive fees compared to the services rendered.

**B.   Plaintiffs Have Properly Pled a Section 36(b) Claim for Excessive Fees for Advisory Services**

Plaintiffs have pled sufficient facts to raise a non-speculative inference that defendant SIMC charged an excessive fee based on the following factors: (i) SIMC retains a disproportionate amount of the investment management fee despite passing off nearly all of its primary investment management duties to sub-advisers (Complaint, ¶¶35-36); (ii) SIMC fails to share the significant economies of scale realized with the SEI Funds (Complaint, ¶¶45-47); (iii) SIMC receives huge profits for providing minimal services (Complaint, ¶55); (iv) SIMC's fees are significantly higher than similar mutual funds' costs (Complaint, ¶64); (v) SIMC accrues financial fall-out benefits because of its relationship with the mutual fund (Complaint at 21); (vi) SIMC charges duplicative fees for management of cash and investment in affiliated funds (Complaint, ¶¶77-78); and (vii) the Board has failed to act conscientiously and independently in reviewing and approving the fee agreements with SIMC (Complaint, ¶68). *Am. Chems. & Equip., Inc. 401(K) Ret. Plan v. Principal Mgmt. Corp.*, No. 4:14-cv-00044-JAJ, 2014 WL 5426908, at *7 (S.D. Iowa Sept. 10, 2014).

As shown below, Plaintiffs' sub-adviser-based allegations, by themselves, are sufficiently pled to satisfy the "relatively low standard of plausibility" pleading standard. *See Harbor*, 2014 WL 6478054, at *4-5 and *Am. Chem.*, *infra*. And when these core allegations are combined with Plaintiffs' additional factual allegations in support of the economies of scale and profitability factors and the new allegations in the amended complaint regarding duplicative fees and the comparative costs and profitability of the Vanguard funds, Plaintiffs have more than adequately pled their Section 36(b) claims to survive Defendants' Motion to Dismiss.

1.    **Plaintiffs Have Properly Pled Their Section 36(b) Claims Based on Allegations that SIMC Delegated the Investment Management Services to Sub-advisers and Retained a Substantial Portion of the Advisory Fees for Itself**

   a.    **Plaintiffs' Sub-Adviser Allegations Alone Demonstrate that SIMC Charged Excessive Fees**

In view of the low pleading standard and the substantial weight of authority, Plaintiffs have adequately pled their Section 36(b) claims against SIMC based solely on their allegations that defendant SIMC, as the investment adviser, delegated the most costly and important investment management services to its sub-advisers, but retained a disproportionate share of the fee for itself relative to the de minimis services actually provided.  Complaint, ¶¶14-44.  As alleged in the Complaint, the SEI Funds hired SIMC primarily to provide investment management services, which along with the record keeping responsibilities, were then passed off almost entirely to SIMC's sub-advisers.  Complaint, ¶¶35-37.  This left SIMC with the less important and less costly duties of selecting and overseeing the sub-advisers.  Complaint, ¶¶36-44.  As reflected by detailed charts and tables in the Complaint, despite sub-contracting out the primary duties, SIMC retained an average of 66%, and for one fund as much as 115%, of the fees paid to the sub-advisers.  Complaint, ¶42.

In their Complaint, Plaintiffs have bolstered these core allegations with additional factual support.  Most notably, Plaintiffs have added factual allegations demonstrating that the asset management services performed by the sub-advisers are far more important and expensive than the remaining largely supervisory services provided by SIMC.  Complaint at 44.   In addition, Plaintiffs have alleged a host of additional facts that further challenge the nature and quality of the services provided by SIMC, including that: (i) the investment advisory services SEI Funds received were of low quality given SEI Funds' underperformance of their primary benchmarks (Complaint, ¶74); (ii) defendant SIMC hired one of its own affiliates, LSV Asset Management

("LSV") as a sub-adviser, which further reduced the costs and burdens of its limited supervisory services (Complaint, ¶43); and (iii) defendant SIMC double-charged the SEI Funds for cash assets placed into affiliated funds despite providing negligible, if any, services for these particular funds (which is explained in more detail below) (Complaint, ¶¶77-88; *see also* Section III.F. *infra*).

Courts, including two recent decisions, have repeatedly found that the sub-adviser-related allegations that are at the heart of Plaintiffs' Section 36(b) claims to be more than sufficient to avoid dismissal on the pleadings.  In fact, Defendants do not and still cannot cite to a single case in which claims predicated on this type of sub-adviser-based allegations have been dismissed at the pleading stage.  *See* MTD at 29-35.

Just two months ago, the court in *Harbor* denied a motion to dismiss a Section 36(b) complaint containing strikingly similar allegations to the ones in this case—that the investment adviser had delegated its assigned investment management services to a sub-adviser and had performed only general oversight and supervisory responsibilities for the funds and yet retained a disproportionate share of the advisory fees for itself.  *See Harbor*, 2014 WL 6478054, at *4-5.  Notably, the percentage of fees retained by the defendant advisers in both cases are roughly the same.  *See id*. (the investment adviser retained 45% of the total advisory fees while SIMC retained 40% of the total advisory fees).  In denying the motion to dismiss, the *Harbor* court rejected the identical arguments raised by SIMC in this case—that it provided comprehensive services justifying its high fees—stating that **such factual arguments were "better suited for summary judgment**."  *See Harbor*, 2014 WL 6478054, at *4.  The court also stated that plaintiff's economies of scale allegations, which are similar to, but actually less fulsome than, those alleged here, further bolstered the plaintiff's Section 36(b) claim.  *Id*.

- 16 -

A comparison of the Complaint with the complaint in *Harbor* demonstrates that Plaintiffs' Section 36(b) claims are even stronger in this case.  Both include the same core set of allegations and many of the same detailed charts and tables, but the Complaint here also includes more specific and comprehensive factual allegations in support of its sub-adviser-based and economies of scale allegation and adds allegations and tables in support of several other factors as well. *Compare Harbor* Consolidated Amended Complaint, ¶¶15-35 (attached as Exhibit A to Declaration of Stephen J. Oddo in Support of Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Complaint ("Oddo Decl.")) with the Complaint, ¶¶35-44 (including many of the same tables and charts as in the *Harbor* complaint).  As just one example, the Complaint provides specific factual support for the allegation that the asset management services performed by the sub-advisers in this case are the most costly and important of the investment management services assigned to SIMC while the *Harbor* complaint included no specific factual support for this allegation.  Complaint at 44.  In their Motion to Dismiss, Defendants distinguish *Harbor* from this case on the sole ground that the investment adviser had to oversee only one sub-adviser instead of multiple ones, but this is exactly the type of fact-driven weighing of the services that the *Harbor* court found to be improper on a motion to dismiss.

In another recent case, the court in *American Chemicals* denied a motion to dismiss based on similar allegations that defendants delegated the primary investment management responsibilities to sub-advisers but, as in this case, retained a large portion of the fee.  *Am. Chems.*, 2014 WL 5426908, at *1.  The court in *American Chemicals* summarized these allegations thusly: defendants' fee "constitute[d] 'something for nothing'" and that defendants were "'mainly acting as a fee conduit'" to the sub-advisors.  *Id*. at *5.  The plaintiff in *American Chemicals* also included other allegations that are included in the Complaint— that defendants'

fee was excessive given the benefits of economies of scale stemming from the growth in the fund's AUM (*see* Section III.B *infra*) and in comparison to fees for similar funds offered by Vanguard LifeStrategy Moderate Growth Fund (*see* Section III.D *infra*).  Considering the totality of the circumstances, the court found the allegations satisfied the low pleading standard in denying the motion to dismiss.  *Am. Chems.*, 2014 WL 5426908, at *7.

In addition to *American Chemicals* and *Harbor*, four other federal courts have considered motions to dismiss Section 36(b) claims involving substantially similar sub-adviser allegations— that the investment adviser hired sub-advisers to perform nearly all of the investment management services for the funds and kept a significant portion for itself while performing only supervisory and oversight work.  In each of them, the court denied the motion to dismiss based primarily, if not alone, on these same core allegations.  *Curran*, 2010 WL 2889752, at *9 (holding that the plaintiffs' allegations that "[the adviser] charges more than the subadvisors, who allegedly provide[d] the bulk of investment advice" and "that the charges do not reflect the benefits derived from economies of scale … all support a reasonable inference that [the adviser] collected excessive fees for its investment advising services."); *see also Millenco*, 2002 WL 31051604, at *3 (denying a motion to dismiss, in part, because plaintiff alleged that the adviser subcontracted many of its investment advisory responsibilities to other sub-advisers); *Sivolella*, 2012 WL 4464040, at *5-6 (denying motion to dismiss complaint that alleged adviser-sub-adviser relationship); *Kasilag*, 2012 WL 6568409, at *3.

Unable to cite to any countervailing authority nor to properly distinguish this persuasive authority,[7] Defendants instead claim without support that these cases were "wrongly decided"

_____

[7] In Defendant's footnote 10 and throughout their brief, Defendants cite to a number of decisions dismissing Section 36(b) claims, but not one contained sub-adviser allegations of the type alleged here.  *See, e.g.*, *Hoffman v. UBS-AG*, 591 F. Supp. 2d 522, 539 (S.D.N.Y. 2008) (dismissing complaint that "offers no allegations about the actual services provided by the funds."); *In re*

and attempt to nitpick minor factual differences between these cases and the one at bar. For example, Defendants attempt to distinguish this case from *Kasilag* by arguing that the adviser in that case had a fee split with the sub-adviser that was more lopsided in its favor than in this case. But the comparison they draw is an inapt one because they rely on different metrics to give the appearance there is a disparity between the portions retained by the advisers in the two cases. An apples to apples comparison demonstrates that both defendant SIMC and the defendants in *Kasilag* retained nearly the same percentage of total advisory fees after paying their sub-advisers (on average, 40% by SIMC and 42% by the *Kasilag* investment adviser). *See* Oddo Decl., Exhibit B, Excerpts of Second Amended Complaint, ¶46, *Kasilag v. Hartford Inv. Fin. Servs., LLC*, No. 1:11-cv-01083-RMB-KMW (D.N.J. Nov. 14, 2011). A small difference between the fee splits in the two cases, however, has no legal significance, particularly without a full evidentiary record. *See, e.g.*, *Green v. Nuveen Adv. Corp.*, 186 F.R.D. 486, 491 (N.D. Ill. 1999) ("Determining whether defendant's arguments have merit would require looking beyond the pleadings at market circumstances and other economic factors. It is premature to dismiss plaintiff's 36(b) claims at this time.").[8]

---

*Scudder Mut. Funds Fee Litig.*, No. 04 CIV. 1921 (DAB), 2007 WL 2325862 at *13-18 (S.D.N.Y. Aug. 14, 2007) (dismissing complaint that failed to allege that Defendant's fees were disproportionately large); *In re Goldman Sachs Mut. Funds*, No. 04 CIV. 2567 (NRB), 2006 WL 126772 at *9 (S.D.N.Y. Jan. 17, 2006) (granting motion to dismiss because allegations regarding rule 12b-1 fees do not suffice as allegations regarding advisory fees); *Yampolsky v. Morgan Stanley Inv. Advisers Inc.*, No. 03 CIV. 5710 (RO), 2004 WL 1065533 (S.D.N.Y. May 12, 2004) (dismissing complaint that did not allege specific facts regarding the management services rendered) *aff'd sub nom Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338 (2d Cir. 2006); *Migdal v. Rowe Price-Fleming Int'l, Inc.*, No. AMD 98-2162, 2000 WL 350400 (D. Md. Mar. 20, 2000) aff'd, 248 F.3d 321 (4th Cir. 2001) (dismissing complaint that did not address what "relation exists between the disputed fees…and the services provided in consideration for their payment.").

[8] As stated above, Defendants attempt to also distinguish *Harbor* on a similar basis fails for the same reason. *Id.*; MTD at 31-32 n.17.

In addition, Defendants argue that the allegations in *Kasilag* were stronger than here because they included what they term as stronger allegations related to the other *Gartenberg* factors.  *See* MTD at 38 n.22.  However, the court in *Kasilag* made clear that the sub-adviser allegations alone were sufficient to state a plausible claim under Section 36(b) and the other facts merely provided additional support.  Specifically, the court held that plaintiff's allegations that the adviser "pays sub-advisors to perform 'substantially all' of the investment management services that it provides to the Funds at a fraction of the fee it charges for such services ... [raise[]] a plausible inference that [the adviser's] fees are excessive under [Section] 36(b)."  *Kasilag*, 2012 WL 6568409, at *3.

### 2. Defendant Ignores the Line of Analogous Decisions and Attacks Plaintiffs' Sub-adviser Allegations with Improper Fact-driven Arguments

Lacking any case law that supports their position, Defendants instead fall back on the same type of fact-based arguments that have been uniformly rejected by the above courts as inappropriate in connection with a motion to dismiss.  First, Defendants, like the defendants in each of the above analogous cases, argue that it provides comprehensive supervisory and administrative responsibilities which justify its enormous fees.  MTD at 27-32, 40-42.  In support of this argument, Defendants offer up a number of attorney-crafted, self-serving documents outside the four corners of the Complaint, such as SEC filings, brochures, and prospectuses, to show how much work it supposedly performed.  *Id.*  But at the pleadings stage, the court is "in no position…to determine what services Plaintiffs receive from [the adviser] or how much they can fairly be worth."  *Jones v. Harris Assocs. L.P.*, 2005 WL 831301, at *2 (N.D. Ill. April 7, 2005).  As made clear in *Harbor* and the other cases, such arguments impermissibly invite the Court to engage in a premature factual examination of the precise scope and cost of services provided by SIMC to SEI Funds and the division of them with the Board.  As the *Harbor* court stated, such

attempts to demonstrate that the investment adviser "retain[ed] significant responsibility for the Fund's management" and performed comprehensive services justifying its enormous fees are beyond the scope of a motion to dismiss and are "better suited for summary judgment."  *See* Harbor, 2014 WL 6478054, at *4.[9]

Similar fact-driven arguments were also raised by the defendants in *Curran* and *Kasilag* and were roundly rejected for the very same reasons.  *See, e.g.*, *Curran*, 2010 WL 2889752, at *9 (finding that defendant's arguments attacking the plaintiff's allegations improperly "ask the Court to engage in a factual inquiry" on a motion to dismiss); *Kasilag*, 2012 WL 6568409, at *3 (rejecting defendants' argument that "it provides the Funds with extensive administrative and investment management services that are not delegated to the sub-advisers" as "a merits argument that is more appropriate at summary judgment").

Second, Defendants argue that, despite having delegated investment management decisions for the SEI Funds to its sub-advisers, SIMC continued to be responsible for these decisions based on language in the advisory and sub-advisory agreements stating that the

---

[9] Accordingly, Defendants' reliance on a number of self-serving documents outside the four corners of the Complaint, such as SEC filings, brochures, and prospectuses, to show how much work it supposedly performed and how it divided its labor with the Board is inappropriate.  *See, e.g.*, MTD at 6 n.2, 10, Declaration of Michael S. Doluisiuo in Support of Defendants' Motion to Dismiss the Amended Complaint ("Doluisio Decl.") (citing to and attaching a Form ADV Mutual Fund Implementation Wrap Brochure), 13 & n.4 (citing to and attaching a number of the SEI Funds' annual reports).  Such documents may not be considered on a motion to dismiss without a request for judicial notice, which Defendants have not done here.  *Skilstaf Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012) (permitting public records that satisfy the requirements to be judicially noticed to be considered on a motion to dismiss).  Even if properly subject to judicial notice though, the SEC filings and other public records offered by Defendants may be considered by courts for the sole purpose of showing they exist, not for the facts asserted therein, as Defendants have attempted to do here.  *See Ritz Camera & Image, LLC v. SanDisk Corp.*, 772 F. Supp. 2d 1100, 1109 (N.D. Cal. 2011) *aff'd*, 700 F.3d 503 (Fed. Cir. 2012) (holding that a court may take judicial notice merely of the existence of SEC filings, but not for the truth of facts asserted therein); *Intri Plex Techs., Inc. v. Crest Grp.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (permitting courts to consider matters of public record only to the extent they contain undisputed facts).

"'retention of a sub-adviser … shall not relieve [it] of its responsibilities.'"  MTD at 29.  This vague language does not show that Defendants actually made any investment management decisions for the SEI Funds and appears to have little, if, any, force or effect given that SIMC passed off all liability exposure related to such decisions to the sub-advisers.  Complaint, ¶36.

Third, Defendants quibble with Plaintiffs' failure to allege the exact amount of manpower, resources, time, and expenses used by SIMC to provide its supervisory responsibilities (*see* MTD at 31).[10]  This level of specificity, however, is not required at the pleading stage, particularly in a case like this where such internal corporate information is only available through discovery.  *See Curran*, 2010 WL 2889752, at *8 (holding that the plaintiffs had adequately pled their Section 36(b) claims despite alleging generally, on information and belief, that the services provided by the investment adviser were "a very small percentage of the expenses" incurred under the advisory agreement); *see, e.g.*, *Sylmark Holdings Ltd. v. Silicone Zone Int'l Ltd.*, 783 N.Y.S.2d 758, 774 (N.Y. Sup. Ct. 2004) (recognizing that corporate defendants alone possessed information necessary to determine the extent of their improper conduct).  Again, to survive a motion to dismiss, Plaintiffs need only allege a plausible claim entitling them to relief, and are not required as Defendants argue, to provide every conceivable fact about the services provided by SIMC.  *Curran*, 2010 WL 2889752, at *9.

---

[10] As part of this argument, Defendants also claim that Plaintiffs have not challenged the quality of its services.  MTD at 34.  Not true.  In fact, in the Complaint, Plaintiffs provide specific evidence showing that several of the SEI Funds "managed" by SIMC underperformed their primary benchmarks in recent years.  Complaint, ¶41.  Defendant contends this evidence is insufficient to sustain a Section 36(b) claim, but Plaintiffs do not claim otherwise.  Plaintiffs' Section 36(b) claim is based primarily on other allegations, and the fact that the SEI Funds have underperformed merely provides additional support.  *Cf. Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 327-28 (4th Cir. 2001) (dismissing Section 36(b) case where the plaintiff did not make any allegations about the services offered by the investment adviser); *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 528 F. Supp. 2d 332, 336 (S.D.N.Y. 2007) (dismissing Section 36(b) claim based primarily on economies of scale and fund underperformance allegations).

Finally, Defendants argue that the fact that SIMC took less than half the advisory fees conclusively shows that the fees charged were not excessive.  But courts do not impose a specific numeric threshold for fees to be deemed to be excessive.  In fact, in the recent *Harbor* decision, the court denied the motion to dismiss Section 36(b) claims where the adviser also received a comparable percentage of the total fees for likewise delegating the investment management of the SEI Funds to sub-advisers and performing mostly supervisory and oversight duties.  *See Harbor*, 2014 WL 6478054, at *4.

### 3. Plaintiffs Have Pled Sufficient Facts to Support an Inference that Defendant SIMC Enjoyed Economies of Scale and Did Not Share the Benefits of the Economies of Scale with the SEI Funds

As detailed below, Plaintiffs have bolstered their core sub-adviser allegations with additional facts demonstrating that Defendants failed to adequately share the benefits of economies of scale with the SEI Funds.

### a. Plaintiffs Have Pled Facts Demonstrating that Significant Economies of Scale Exist as to the SEI Funds

Plaintiffs have alleged a multitude of facts demonstrating that SIMC experienced substantial economies of scale with respect to the SEI Funds. Plaintiffs' initial complaint alleged facts showing that economies of scale generally exist in the mutual fund industry because "[i]nvestment management efforts, the most import (and most expensive) input into portfolio management, do not increase" proportionally with increases in AUM.  Initial Complaint, ¶29.[11] Plaintiffs also alleged additional supporting facts showing that the SEI Funds' AUM have grown significantly, but their advisory fees have not changed over the past twenty years.  *Id.*, ¶30-31.

---

[11] "Initial Complaint" refers to Plaintiffs' Verified Complaint (Document No. 1) filed December 11, 2013.

In their Complaint, Plaintiffs have further augmented their "economies of scale" allegations by including: (i) additional studies showing the existence of economies of scale generally in the mutual fund industry; (ii) specific details about SIMC's cost structure reflecting that it achieved economies of scale with respect to the services provided to the SEI Funds (Complaint, ¶¶45-49); and (iii) the SEI Funds' SEC filings, in which the Board concedes ***"the SEI Funds obtain reasonable benefit from economies of scale."*** Complaint, ¶50.  Finally, in addition to this information, Plaintiffs updated charts that demonstrate that the SEI Funds' AUM, and commensurately defendant SIMC's fees, have grown exorbitantly over the past twenty years. Complaint, ¶51.

The reasonable inference from these facts is that the growth of defendant SIMC's fees has greatly outpaced the growth of its costs, resulting in economies of scale.  *Sins v. Janus Capital Mgmt., LLC*, No. 04-cv-01647-WDM-MEH, 2006 WL 3746130, at *3 (D. Colo. Dec. 15, 2006) ("Since it is possible to infer from these facts that the growth in Funds assets has not been matched by a proportional, as opposed to marginal, decrease in fees and that the lack of breakpoints in fee structures demonstrates that savings from economies of scale are not being passed on to the Funds, I must do so.").  Because it is so well-known that economies of scale exist in the mutual fund industry, courts routinely accept allegations such as those in Plaintiffs' Complaint to demonstrate the existence of economies of scale.  *See, e.g.*, *Curran*, 2010 WL 2889752, at *8 (crediting plaintiff's argument regarding economies of scale based, in part, on the "many generalized statements about the mutual fund industry"); *Dumond v. Mass. Fin. Servs.*, No. Civ.A. 04-11458-GAO, 2006 WL 149038, at *2 (D. Mass. Jan. 19, 2006) (denying motion to dismiss, in part, because of allegation that the cost of "providing advisory services to Plaintiffs are nominal, while the additional fees received by Defendants are hugely disproportionate given that the nature, quality and level of the services remains the same."); *Reso*, 2011 WL 5826034,  at

*9 (denying motion to dismiss, in part, because plaintiff "alleged facts that sufficiently establish that [defendant]'s fee is reduced only slightly over the course of amassing a large amount of assets, but that [defendant] does not suffer significant additional expenditure over the course of that expansion"); *Strigliabotti*, 2005 WL 645529, at *3 (denying a motion to dismiss, in part, because of allegations that "the funds have grown in size…while the nature of the services rendered has not changed, resulting in disproportionately large advisory fees."); *Sins*, 2006 WL 3746130, at *3 ("it is possible to draw other inferences from the facts alleged by Plaintiffs; however…since it is possible to infer from these facts that the growth in Fund assets…demonstrates economies of scale…I must do so").

Remarkably, despite an admission to the existence of economies of scale in a public document, Defendants still argue in their Motion to Dismiss that economies of scale may not exist at all.  MTD at 32-33.  Defendants do not, and cannot, explain how the SEI Funds could "obtain reasonable benefit from economies of scale" without economies of scale existing in the first place.  Contrary to Defendants' assertion, Plaintiffs pled that the Board reached this conclusion for each of the SEI Funds.  Complaint, ¶50.

The authority defendant SIMC half-heartedly offers to support its position is inapposite and distinguishable.  In contrast to the allegations referenced above, the court in *Amron* found plaintiffs had failed to make a sufficient showing on the economies of scale factor because the complaint alleged "no facts related to the Funds regarding the question of economies of scale".  *Amron*, 464 F. 3d at 345.  Similarly, in *Hoffman*, the court dismissed a complaint that did not allege whether costs "increased or decreased as the assets under management grew."  *Hoffman*, 591 F. Supp. 2d at 540.  Thus, in neither case, did the court dismiss specific well-pled allegations of the type alleged in the Complaint.  Moreover, these cases are also distinguishable because

- 25 -

Plaintiffs' allegations regarding economies of scale are not the crux of their case here, but merely bolster its sub-adviser-related allegations.

> ### b.  Plaintiff Adequately Alleged that Defendant SIMC Did Not Share the Benefits of Economies of Scale with the SEI Funds

Plaintiffs have also pled specific facts demonstrating that defendant SIMC failed to share the benefits of economies of scale with the SEI Funds.  In their Initial Complaint, Plaintiffs alleged generally that defendant SIMC failed to lower its advisory fee rates as AUM grew. Initial Complaint, ¶30-31.

In the Complaint, Plaintiffs provided additional factual support for this allegation. Specifically, that Defendants failed to implement any measures to share economies of scale with some funds (neither fee waivers or breakpoints) and merely provided negligible fee waivers for the others.  Complaint, ¶¶51-55.  For example, Plaintiffs cited to mutual fund industry experts who have recognized that breakpoints (which are graduated declines in fee rates as AUM increase) are the primary means for sharing the benefits from economies of scale with shareholders.  Complaint, ¶52.  In addition, Plaintiffs cited to the SEI Funds' annual reports, which acknowledge that breakpoints and fee waivers are the two mechanisms by which SIMC could pass the benefits realized from economies of scale to the SEI Funds.  Complaint, ¶50. Indeed, Plaintiffs have alleged Defendants admit that none of the SEI Funds employ breakpoints (Complaint, ¶53) and that some of the SEI Funds do not offer fee waivers at all, and those that do waived minimal amounts (i.e., less than $1 million a year) (Complaint, ¶54).  The reasonable inference from these facts is that defendant SIMC did not adequately share economies of scale benefits with the SEI Funds.  *See Sins*, 2006 WL 3746130, at *3.

Courts have routinely acknowledged this precise inference based on nearly identical allegations in denying motions to dismiss and have considered these allegations to be among the

strongest support for these types of claims.  For instance in *Jones v. Harris Assoc., L.P.*, No. 04 C 8305, 2005 WL 831301 (N.D. Ill. Apr. 7, 2005) ("Jones II"), the court rejected a pleadings challenge to a complaint whose "central allegation" was that the funds had paid many times more than it had years earlier for identical services.  *Jones II*, 2005 WL 831301, at *2.  The court recognized because it was "not inconceivable that the fees charged, given the exponential increase [in AUM], were disproportionate to the value of the services rendered, that was "enough to withstand a 12(b)(6) challenge."  *Id.*; s*ee also Sins*, 2006 WL 3746130, at *3 ("Since it is possible to infer from these facts that the growth in Fund assets has not been matched by a…decrease in fees and that the lack of breakpoints in fee structures demonstrates that savings from economies of scale are not being passed on to the Funds, I must do so.").

In fact, even when investment advisers employ breakpoints, which SIMC has not done here, courts routinely deny motions to dismiss where the breakpoints are immaterial.  In *Reso*, for example, the plaintiff pled that defendant investment advisor passed along a fee breakpoint of only ten basis points as AUM grew into the billions.  *Reso*, 2011 WL 5826034, at *9.  The court recognized that "based solely on the breakpoints offered to mutual funds in this case, [plaintiff] establishes that [defendant] receives economies of scale that it does not pass on to the mutual funds in substantial ways."  *Id.*  Allegations that "[defendant]'s fee is reduced only slightly over the course of amassing a large amount of assets, but that [defendant] does not suffer significant additional expenditures over the course of that expansion" were plaintiff's "strongest allegations", sufficient to meet its burden at a motion to dismiss.  *Id.*; *see also Kasilag*, 2012 WL 6568409, at *6 (denying motion to dismiss, in part, because "[p]laintiffs have sufficiently alleged that [defendant's] breakpoints did not give shareholders meaningful benefits from the economies of scale enjoyed by the Fund"); *Curran*, 2010 WL 2889752, *8–9 (advisory fees did not reflect benefits derived from economies of scale where breakpoints to the fees were "immaterial").  As

shown in the Complaint, while SIMC did waive fees for certain funds, the amount of these fee waivers were, as in the above line of cases, immaterial.  Complaint, ¶54.

In their Motion to Dismiss, Defendants cite to three cases as support for their argument that Plaintiffs' economies of scale allegations are insufficient, but these cases are entirely distinguishable from the case at bar both because none of them included the core sub-adviser-related allegations or economy of scale allegations as strong as those asserted here.

First, Defendants cite *Goldman Sachs* for the proposition that mere assertions that fees increased with the size of the Funds do not prove that economies of scale existed.  MTD at 34. But Defendants fail to mention that in *Goldman Sachs* the fees at issue were Rule 12-b1 (17 C.F.R. §270.12b-1 (2004)) fees, which cover distribution services, not investment advisory services, which have different cost structures.  *Goldman Sachs*, 2006 WL 126772, at *9.  While the costs of investment management services are primarily fixed, meaning they do not increase proportionately with increases in AUM, the costs of distribution services tend to be more variable.  Complaint, ¶47.  Moreover the court in *Goldman Sachs* recognized that if the plaintiffs had alleged that, not only had the fees increased, but the quality of services provided had not changed as well—which Plaintiffs have alleged in the Complaint (*see* ¶47)—then they would have met their pleading burden. *Goldman Sachs*, 2006 WL 126772, at *9 n.24 (citing *Wicks v. Putnam Inv. Mgmt, LLC*., 2005 WL 705360 at *1 (D. Mass. Mar. 28, 2005) (denying a motion to dismiss, in part, because the nature and quality of services has not changed, which created benefits from economies of scale that Defendants did not share with the subject funds).

Defendants cite two other cases that rejected summary allegations different from the extensive well-pled allegations here.  In *Scudder* the court recognized that the complaint made only general allegations that did not explain why economies of scale existed, or how defendants failed to pass them along.  *Scudder*, 2007 WL 2325862, at *16.  Similarly in *Franklin* the court

relied on the inapposite *Goldman Sachs* decision to conclude that the allegation, that a fund grew so large as to function like an index fund standing alone, was insufficient because plaintiff did not plead facts regarding the actual services rendered.  *In re Franklin Mut. Funds Fee Litig.*, 478 F. Supp. 2d 677, 687 (D. N.J. 2007).   Both of these cases, like *Goldman Sachs*, are distinguishable because Plaintiffs have pled facts here demonstrating that the investment advisory services provided did not substantially grow as AUM and Defendants' fees did and that the board acknowledged that economies of scale exist.  Complaint, ¶¶45-55.

> **4.      Plaintiffs Have Pled Sufficient Facts Demonstrating that Defendant SIMC's Profits are Excessive and Their Fees are Disproportionately High Compared to Other Mutual Funds**

In their Complaint, Plaintiffs have further bolstered their core allegations by providing a comparison between SIMC's costs and the operating costs of The Vanguard Group's ("Vanguard") mutual funds to demonstrate that SIMC's profits are excessive.  Without the aid of discovery, Plaintiffs cannot allege the actual costs or financial data for Defendants SIMC and SIGFS, but Vanguard's publicly available cost data provide a reasonable data point for comparison purposes.

As explained in the Complaint, the Vanguard funds are mutual funds governed by the ICA that are owned by their unaffiliated shareholders.  Complaint, ¶58.  Because Vanguard's profits are re-invested into their funds, their profits are necessarily zero, and Vanguard's fees are therefore equal to its costs.  Many academics have recognized that Vanguard, as its name implies, provides an unvarnished view of the true costs and profits of mutual funds.  *See* Complaint, ¶¶58-62 (citing John P. Freeman, et al., *Mutual Fund Advisory Fees: New Evidence and a Fair Fiduciary Test*, 61 Okla. L. Rev. 83, 117-118 (2008)); *see also* John C. Bogle, ReMutualizing the Mutual Fund Industry—The Alpha and the Omega, 45 B.C. L. REV. 391 (2004).

Plaintiffs have alleged that Vanguard's costs are comparable to SIMC's costs because they are similar in nearly all material respects.  Specifically, they both: (i) provide similar services; (ii) do not make day-to-day investment decisions; (iii) are subject to the same regulatory requirements; and (iv) incur nearly identical administrative, custodian, distribution, and professional costs.  Complaint, ¶59.  Moreover, the Vanguard funds and the SEI Funds invest in similar assets, and in some cases employ the same investment advisers.  Complaint, ¶¶65-66.

Despite these similarities, Vanguard funds incur total fees of less than twenty-five basis points, (Complaint, ¶61) compared to the SEI Funds' fees of more than 110 basis points (MTD at 36).  It is reasonable to infer that if Vanguard's total costs for providing similar services are this low, SIMC's costs are comparable, meaning their resulting profits are sky high.  Complaint, ¶¶62-63.

Courts have credited these types of allegations in considering and denying a motion to dismiss.  *See, e.g.*, *Am. Chems.*, 2014 WL 5426908, at *6; *Kasilag*, 2006 WL 6568409, at *4-5 (recognizing the Vanguard comparison is "more apt than in the typical case" because Vanguard and the defendants employ the same sub-advisor and investors in the funds receive "comparable investment management services").  For example, in *American Chemicals*, the plaintiff similarly pointed out the stark difference between Vanguard's fees and those charged by the defendant adviser to support its Section 36(b) claims.  In denying the motion to dismiss in part because of these comparative cost allegations, the court rejected defendant's argument that this comparison was irrelevant, reasoning that "the ultimate weight of this comparison is not before the court" at the motion to dismiss stage.  *Id*.

In their Motion to Dismiss, Defendants argue the comparison is irrelevant because the SEI Funds and Vanguard Funds are dissimilar in certain respects.  Even assuming this is true, as noted in the *American Chemicals* decision, it is not the Court's role to weigh the significance of

such differences at the pleading stage.  Here, Plaintiffs have included a more detailed and fact-based Vanguard cost comparison than those rejected in cases cited by Defendants, such as *Hoffman v. UBS*, 591 F. Supp. 2d at 539, and, at the very least, it provides some factual support for Plaintiffs' claim that defendant SIMC's profits are excessive.  *Am. Chems.*, 2014 WL 5426908, at *6.

**5.     Plaintiffs Have Pled Sufficient Facts Demonstrating that Defendant SIMC's Fees are Excessive In Comparison to Fees Charged by Comparable Mutual Funds**

As alleged in the Complaint, the gross disparity between Vanguard's fees and SIMC's fees also demonstrates that Defendants charge excessive fees relative to similar mutual funds.  The fee comparison between SEI's Tax-Managed Small/Mid Cap Fund ("Tax-Managed Small/Mid") and Vanguard's Capital Value Fund ("Capital Value") is relevant because both are similar in important respects, including: (i) they invest in similar types of assets; (ii) they are of a similar size;[12] (iii) they have similar benchmarks; and (iv) they both employ the Wellington Management Company ("Wellington") as a sub-advisor.  Complaint, ¶¶65-67.  Despite these similarities, Vanguard's Capital Value has a total expense ratio of only forty-one basis points while SIMC's Tax-Managed Small/Mid has a total expense ratio that is nearly three times higher at 111 basis points.  *Id.*

Courts considering similar fee comparisons to Vanguard have credited them as bolstering Section 36(b) claims.  For example, the plaintiffs in *Kasilag* alleged that defendant's fund and a Vanguard fund were comparable, and that both funds also employed Wellington as a sub-adviser.  *Kasilag*, 2012 WL 6568409, at *4.  Despite these similarities, defendant's management fee was, similar as in this case, three times greater than Vanguard's management and administration fees.

---

[12] As of November 2014 Tax-Managed Small/Mid has an AUM of $609 million and Capital Value has an AUM of $1.6 billion.

*Id.*  The defendants in *Kasilag*, like the Defendants in this case, argued that the Vanguard comparison was inapt because Vanguard is a low-cost provider, and other fact-based distinctions like those raised by Defendants here.  The court in *Kasilag* recognized that it was required to consider fee comparisons in light of the similarities and differences in the services provided.  *Id.* (citing *Jones*, 559 U.S. at 349-50).  But the *Kasilag* court concluded that because Vanguard and the defendants employ the same sub-adviser and investors in the two funds receive "comparable investment management services," as is the case here, the "comparison is more apt than in the typical case [of a Vanguard comparison]."  *Id.* at *4-5 (denying motion to dismiss).

Defendants also attempt to refute the Vanguard fee allegations by citing to fact-based distinctions between the SEI Funds and the Vanguard funds.[13]  MTD at 36-38.  But again, such fact-based arguments are not appropriate on a motion to dismiss, as "the ultimate weight of this comparison is not before the Court."  *See Am. Chem.*, 2014 WL 5426908, at *6.  More importantly, even if there are differences between the two mutual funds, given that the disparity in fees is so significant, the fee comparison provides some factual support to show SIMC's fees are excessive and bolsters Plaintiffs' core allegations.

### 6.      Plaintiffs Alleged Facts Demonstrating that Defendant SIMC Charges the Funds Duplicative, and Therefore Excessive, Fees

The Complaint also includes a new set of allegations augmenting Plaintiffs' Section 36(b) claims-specifically that defendant SIMC charges duplicative fees on the SEI Funds' cash assets

---

[13] Defendants recognize *Kasilag*, but complain that it is distinguishable because Wellington is not a sub-adviser to the Vanguard funds.  MTD at 38 n.22.  Defendants are wrong. Because Wellington makes investment decisions for both Capital Value and Tax-Managed Small/Mid, shareholders of both receive "comparable investment management services" and the comparison is apt.  *Kasilag*, 2012 WL 6568409, at *5; Complaint, ¶66 n.9.

invested in the Acquired Funds.[14]  By way of background, SIMC sets aside a certain portion of the SEI Funds assets (7% or $600 million) as cash for depositing into the Acquired Funds. Complaint, ¶¶77-80.   Defendant SIMC collects two layers of fees for these assets: *first*, it serves as the investment adviser placing these cash assets into the Acquired Funds; and *second*, it serves as the investment adviser to the Acquired Funds managing the assets placed into these funds.  *Id.*

SIMC is not entitled to receive two layers of fees given that, in its capacity as adviser to the SEI Funds, it merely determines "what portion of this uninvested cash should be reinvested and what portion should be retained to meet shareholder redemptions and other liquidity needs." *See* MTD at 44-45; *see also* Complaint, ¶¶83-85.  Despite providing negligible, if any, services for these funds, defendant SIMC charges the same advisory fee rate for them as it does for those allocated to subadvisors.  *Id.*  But the service of allocating cash to an affiliate is even much less labor-intensive and costly compared to selecting and supervising sub-advisors.  *Id.*  Because defendant SIMC also charges a fee for its second role, defendant SIMC receives two layers of fees, and two layers of profits, for only one layer of investment services.  In short, Plaintiffs have alleged facts demonstrating that defendant SIMC received "something for nothing," charging a fee of $3 million for shuffling cash from one SEI fund to another.  *Id.*

Many courts have held that Plaintiffs' allegations that defendant SIMC received an excessive or duplicative fee for nominal services with nominal costs are sufficient to defeat a motion to dismiss.  For instance, the plaintiffs in *American Chemicals* alleged that defendant investment adviser charged an acquired fund fee for the nominal service of allocating assets to affiliated funds.  *Am. Chem.*, 2014 WL 5426908, at *5.  Plaintiffs alleged that defendants' costs were nominal because they "provide no additional services … justifying their retention" of that

---

[14] The "Acquired Funds" are comprised of the SEI Liquidity Fund (the "Liquidity Fund") and the SEI Daily Income Trust, Prime Obligation Fund (the "Prime Obligation Fund")

fee, and that Defendants acted mainly "as a fee conduit" from its investors to defendants' affiliated sub-advisors.  *Id.*  The court denied the motion to dismiss, and recognized these allegations are comparable to those deemed sufficient to defeat a motion to dismiss in other cases.  *Id.* (citing *Forsythe*, 417 F. Supp. 2d at 116 (finding plaintiff's theory that fees amount to "something for nothing" asserts that fee may be inherently excessive, and that the nature of the services provided may be irrelevant to plaintiff's theory)); *see also Jones II*, 2005 WL 831301, at *2 (denying motion to dismiss because "if the money Harris is receiving can be fairly characterized as a fee and it is in essence something for nothing, clearly that would represent an actionably disproportional relationship between the fees paid and the services provided"); *Zucker v. Federated S'holder Servs. Co*., 2007 WL 709305, at *4 (W.D. Pa. Mar. 5, 2007) (denying motion to dismiss with regard to Plaintiff's claim that multiple fees "overlap...and essentially duplicate" each other because Plaintiff may be able to prove he is entitled to relief).  In addition, other courts have denied motions to dismiss based on allegations that investment advisers reap too large of a fee for minimal services relating to uninvested cash.[15]  *See, e.g.*, *Millenco*, at *3 (denying motion to dismiss, in part, because of allegation that defendant received an excessive fee considering its treatment of uninvested cash.).

In their Motion to Dismiss, Defendants do not dispute that SIMC receives two layers for fees for these cash assets invested in the Acquired Funds.  Instead, Defendants, without citation to authority, resort yet again to a series of fact-based arguments about the nature of services provided and the size of the fee, which are inappropriate at this stage.  *See Am. Chem.*, 2014 WL

---

[15] Plaintiffs have not found a decision interpreting SEC Rule 12(d)(1) as a component of a Section 36(b) claim, but courts have recognized that the purpose of Rule 12(d)(1) is to prevent investment companies from "creating complicated pyramid structures…[via] the layering of sales charges, advisory fees and administrative costs."  *See, e.g.*, *meVC Draper Fisher Jurvetson Fund I, Inc., v. Millennium Partners, L.P.*, 260 F. Supp. 2d 616, 619-20 (S.D.N.Y. 2003).

5426908, at *6.  They also claim that Rule 12d1-1 (17 C.F.R. 270.12d1-1) ("Rule 12d1-1") does not create a *per se* ban on this.  But Plaintiffs are not asserting a Rule 12d1-1 claim.[16]  Rather, Plaintiffs have referenced the Rule 12d1-1 Release, which indicates SIMC's duplicative fee practice is improper, solely as further support for their Section 36(b) claim.  Complaint, ¶¶84-88.

### 7. Plaintiffs Have Pled Facts Establishing Fall-Out Benefits Enjoyed by Defendant SIMC

The Complaint also adds another new allegation—that defendant SIMC enjoyed financial fall-out benefits as a result of its role as investment adviser to the SEI Funds.[17]  Specifically, Plaintiffs alleged that defendant SIMC used its role as investment adviser to hire its subsidiary LSV as a sub-adviser to two of the SEI Funds, thereby generating income for one of its affiliates.  Complaint, ¶43.  LSV is a partially owned subsidiary of SIMC.  *Id*.[18]

Plaintiffs' allegations regarding the indirect benefits Defendant SIMC receives as the SEI Funds' investment adviser further support Plaintiffs' Section 36(b) claims.  *See, e.g.*, *Gallus v. Am. Express Fin. Corp.*, 370 F. Supp. 2d 862 (D. Minn. 2005) (denying motion to dismiss in part because "the court finds compelling Plaintiffs' allegations regarding…the 'fall-out' benefits obtained by [Defendant].");  *see also Batra v. Investors Research Corp.*, 144 F.R.D. 97 (W.D. Mo. 1992) (granting a motion to compel production of documents regarding fall-out benefits in a

---

[16] Plaintiffs refer to Rule 12(d)(1) in their Complaint merely to demonstrate that Plaintiffs and the SEC share similar interpretations of the requirements of Section 36(b) with regard to uninvested cash, and not to bring a separate claim under the provision.  *See* SEC Rule 12d1-1, n.52.

[17] Fall-out benefits are any financial perks that accrue to defendant or its affiliates pursuant to its position with respect to the funds.  *See, e.g.*, *Gartenberg*, 694 F.2d 923 (recognizing that defendant received a fall-out benefit when investors in the fund also engaged in non-fund business with defendant).

[18] In addition, Plaintiffs allege that Defendant SIMC, in its capacity as investment adviser to the SEI Funds, directed its cash assets to affiliated Acquired Funds, which allowed it to collect a second layer of fees for these funds.  Complaint, ¶¶77-80.

36(b) claim). A court must take into account "benefits to an affiliate…to the extent quantifiable…in determining whether the Manager's fee meets the standard of §36(b)." *Gartenberg*, 694 F. 2d at 933. Defendants fail to rebut these allegations in their Motion to Dismiss.[19] MTD at 40.

### 8. Plaintiffs Alleged Facts Questioning the Care and Conscientiousness of the Board

Plaintiffs have further bolstered their core sub-adviser allegations with facts showing the Board's lack of conscientiousness and care, including:

(i) the Board was unable to adequately review and approve the advisory fee agreements given the vast number of SEI Funds it is charged with overseeing (Complaint, ¶71);

(ii) the part-time nature of their positions on the Board (Complaint, ¶69);

(iii) the conflicts of interest between the Board and SIMC (Complaint, ¶¶69, 19-29);

(iv) even though AUM have more than tripled for some funds since initiation, the Board has never negotiated for lower management fees or any breakpoints for any of the SEI Funds (Complaint, ¶¶51, 73);

(v) the Board continued to approve the same excessive fees despite many of the SEI Funds repeatedly underperforming their primary benchmarks (Complaint, ¶74);

(vi) the Board continued to approve excessive fees despite similar funds with the same sub-advisers charging significantly lower fees (Complaint, ¶¶56-67);

(vii) the Board's unsupported conclusion that the SEI Funds received benefits from economies of scale despite the lack of breakpoints and fee waivers (Complaint, ¶¶49-55);

---

[19] Defendants may argue that Plaintiffs did not formally label these allegations as a fall-out benefit in the Complaint, but because courts routinely analyze a particular allegation under multiple factors, no formal labeling is required. *See, e.g.*, *Kasilag*, 2012 WL 6568409, at *3-9 (analyzing facts under multiple factors).

(viii)   failure to require SIMC to stop its practice of charging duplicative fees on uninvested cash, even though SEC rules encourage them to do so (Complaint, ¶¶77-88).

These allegations are sufficient to demonstrate at the pleading stage that the Board failed to act with the care and conscientiousness required by arm's-length bargaining.  *See, e.g.*, *Kasilag*, 2012 WL 6568409, at *7 (reviewing similar allegations and granting plaintiff's requested inference that the board may not have adequately considered important facts when approving defendant's fees). *Acampora v. Birkland,* 220 F. Supp. 527 (D. Colo. 1963) (recognizing mutual fund directors should view management as an "adversary" and scrutinize their acts "with great care"); *see also Dumond*, 2006 WL 149038, at *2 (denying motion to dismiss, in part, because of allegation that the Board "rarely, if ever, questioned any information or recommendations provided by the Defendants").

Even if the Court finds Plaintiffs' allegations lacking on this factor, it is just one of several factors courts consider on a motion to dismiss and courts have liberally granted an inference in favor of allegations attacking the Board's process because of the difficulty of securing such information without the benefit of discovery.  *Reso*, 2011 WL 5826034, at *6 ("the court cannot expect plaintiff to know or outline the exact contours of the directors' decision making processes" at the pleading stage"); *Curran*, 2010 WL 2889752, at *9 (crediting plaintiff's factual allegations challenging the Board's conscientiousness and care as contributing to "all of the surrounding facts and circumstances").

Defendants cite a number of cases in support of their attack on Plaintiffs' Board-related allegations, but all are wholly inapplicable here because none assert Plaintiffs' core sub-adviser allegations.  *See* MTD at 22 (citing *Amron*, 464 F.3d at 345 (granting motion to dismiss Section 36(b) claim where plaintiff did not include a single allegation about advisory fees); *see also*

*Migdal*, 248 F.3d at 328 (plaintiffs argued they need not allege excessive fees "because they instead alleged that the directors of the funds were not independent").

## IV.   PLAINTIFFS HAVE PROPERLY PLED A SECTION 36(B) CLAIM FOR EXCESSIVE FEES FOR ADMINISTRATIVE SERVICES

Based on many of the same factors as those alleged above, Plaintiffs have pled sufficient facts to raise a non-speculative inference that defendant SIGFS charged an excessive administrative fee based on the same factors as those alleged with regard to defendant SIMC.

### A.   Plaintiffs Have Pled Sufficient Facts to Raise a Non-Speculative Inference that Defendant SIGFS Charged an Excessive Fee Given the Nature and Quality of Administrative Services Provided to the Fund

Plaintiffs have properly pled their administrative fee claims based on their allegations demonstrating the simple, back-office nature of the services defendant SIGFS provides to the SEI Funds.  In their Complaint, Plaintiffs explained that the Administration Agreement obligates defendant SIGFS to provide only low-cost, uncomplicated services such as office space, equipment, and regulatory reporting.  Complaint, ¶90.  A number of other administrative services that are typically performed by the fund administrator, such as printing, registration fees, custodian fees and nebulous "other expenses," are not even provided by SIGFS.  Complaint, ¶91. Instead, these services are performed by third party providers and paid for separately by the SEI Funds.  Despite the straightforward nature of these services it does provide, defendant SIGFS charges the captive SEI Funds as much as $9 million per year, per fund.  Complaint, ¶92.  This amount is comparable to, and for some funds, more than the amount defendant SIMC charges for the supposedly complex services it provides for the SEI Funds.   Complaint, ¶¶42, 44, 92. Further, defendant SIGFS' administration fee is above the industry average, after accounting for profits for both transfer agency and administrative services.  Complaint, ¶94.

Based on these facts, Plaintiffs have alleged sufficient facts to meet their low burden of plausibly demonstrating that the relationship between "the fee charged and the services provided" is excessive.  *Am. Chems.*, 2014 WL 5426908, at *5.  Courts routinely deny motions to dismiss regarding administrative services when plaintiffs allege that the "administrative services provided by [the adviser] are minimal and that the Funds pay for these additional services through separate agreements and/or fees."  *Kasilag*, 2012 WL 6568409, at *3 (denying motion to dismiss, in part, because plaintiff raised a plausible inference that defendant's fee with regard to administrative services is excessive).  The Court should once again ignore Defendants SIGFS' counterargument that many of these services are "specialized" (MTD at 42) because it is a fact-based argument that is appropriate only at summary judgment.  *Id.*; *see* Section III.A. *supra*.

**B.     Plaintiffs Have Pled Sufficient Facts to Raise a Non-Speculative Inference that Defendant SIGFS Enjoyed Economies of Scale and Did Not Share the Benefits of Economies of Scale with the SEI Funds**

Plaintiffs' Section 36(b) claims against SIGFS are further bolstered by their allegations that the fund administrator failed to share economies of scale from such services with the SEI Funds.  As an initial matter, Plaintiffs have alleged sufficient facts to show economies of scale exist with respect to administrative services.  As with advisory services, "the costs of many administrati[ve] services are fixed costs and do not increase as AUM increase."  Complaint, ¶96.  In particular, services such as calculating the SEI Funds' daily NAV, preparing the SEI Funds' tax returns, and drafting the SEI Funds' shareholder reports, services that defendant SIGFS acknowledges it provides (MTD at 41), do not become more expensive or complicated as AUM rise.[20]  Further reflecting the existence of such economies of scale, the Board expressly

---

[20] Defendants do not dispute Plaintiffs' allegation that many administrative costs are fixed costs, and instead only argue that the cost of ***some*** administrative services "may" increase as AUM increases.  MTD at 43.

concluded that the SEI Funds achieve a "reasonable benefit from economies of scale" (Complaint, ¶98), and the absence of reductions in the administration fee despite more than ten years of asset growth (Complaint, ¶99).  Taken together, these allegations are more than sufficient to raise an inference that economies of scale exist with respect to administrative services.  *Sins*, 2006 WL 3746130 at *3 ("it is possible to draw other inferences from the facts alleged by Plaintiffs; however…since it is possible to infer from these facts that the growth in Fund assets…demonstrates economies of scale…I must do so."); *see* Section III.B.1. *supra*.

Despite the existence of economies of scale, defendant SIGFS have failed to pass on the benefits of them to the SEI Funds.  And despite the Board's recognition that breakpoints and fee waivers are the primary means to share the benefits of economies of scale, SIGFS, like SIMC, did not employ breakpoints and offered minimal fee waivers (only $4,000 for all of the SEI Funds) over the past three years.  Complaint, ¶¶99-104.

### C.    Plaintiffs Have Pled Sufficient Facts Demonstrating that Defendant SIGFS' Profitability Is Excessive

The Complaint also contains well-pled allegations that SIGFS's profits are excessively high based on a comparison to the costs of Vanguard, a shareholder-owned family of mutual fund.  *See* Section III.C., *supra*.  Plaintiffs have alleged that Vanguard's total expense ratio of twenty-five basis points includes both advisory and administrative services whereas defendant SIGFS' administration fees alone are between twenty-four and forty-five basis points.  *See* Complaint, ¶¶60-61.  Given that SIGFS' administration fee is higher than the total costs of many Vanguard funds, it can be plausibly inferred that defendant SIGFS's profits for providing low cost administrative services alone are substantial.  Complaint, ¶61.  Similar to above, Plaintiffs have pled these facts, not as their primary basis for recovery, but as contributing to "all of the

surrounding facts and circumstances" that support an inference in their favor.  *Curran*, 2010 WL 2889752, at *9.

      **D.**     **Plaintiffs Have Pled Sufficient Facts Demonstrating that Defendant SIGFS' Fees are Excessive In Light of Other Factors**

Plaintiffs' administrative fee claims against SIGFS are further bolstered by allegations supporting additional factors, including that (i) SIGFS' fees are high compared to other mutual fund administrators; (ii) SIGFS achieved certain fall-out benefits as a result of its position as fund administrator; (iii) SIGFS receives a duplicative, and therefore excessive, fee for providing administrative services for SEI Funds' cash assets; and (iv) the lack of independence and thoroughness of the Board in negotiating the administrative fees with SIGFS.  *See* Section III.G., *supra*.

**V.**     **PLAINTIFFS' COMPLAINT ADEQUATELY ALLEGES FACTS REGARDING FEES CHARGED WITHIN THE PROPER PERIOD**

Plaintiffs' Amended Complaint is well pled for the damages period.  Section 36(b) excludes from damages "any period prior to one year before the action was instituted." 15 U.S.C. §80a-35(b)(3).  This action was instituted when Plaintiffs filed their initial action on December 11, 2013, and not, as Defendants suggest when the Amended Complaint was filed.[21]  *See In re Dreyfus Mut. Funds Fee Litigation*, 428 F. Supp. 2d 342 (W.D. Pa. 2005) (recognizing case was instituted on the day the original complaint was filed despite later filed amended complaints) *see also, Boyce v. AIM Management Group, Inc*., 2007 WL 7117575 (S.D. Tex., Sept 17, 2007)

---

[21] Defendants' citation of *In re Franklin* is inapposite because there the court concluded the filing of an amended derivative complaint instituted the action, but erroneously filing an initial 36(b) **class action**—a claim not cognizable under section 36(b)—did not institute a 36(b) claim.  *In re Franklin Mut. Funds Fee Litigation*, 478 F. Supp.2d 677, 684 (D. N.J. 2007).  In contrast, Plaintiffs' initial complaint here suffers from no such deficiency.

(holding an action is instituted when plaintiffs' filed a derivative complaint on behalf of a mutual fund).  Therefore, the valid damages period is December 2012 to present.  *Id*.

While Section 36(b) limits recoverable damages to the one year period prior to the filing of the complaint, it does not limit the presentation of facts to that period.  *Hunt v. Invesco Funds Group*, 2006 WL 1581846, at*6 (S.D. Tex. June 5, 2006) (denying motion to dismiss and expressly considering allegations beyond the damages period because "a more expansive history of increasing assets…[and] changes in fees over time [are] relevant to their resulting disproportionality to services rendered.").  Thus, to the extent Plaintiffs allege facts outside the one-year period, it is permitted to do so to support its claims under 36(b).

Even if the Court accepts Defendants' argument that the statutory period for this Amended Complaint is from October 2013 to October 2014, Plaintiffs' Complaint still is timely because it alleges facts about fees using either 2014 data or (*see* Complaint, ¶41 (citing structure of advisory services in effect as of January, 2014) *see also* ¶90 (citing Administration Agreement in effect as of August, 2014)) the most up-to-date information available at the time of filing.  Courts recognize the difficulty of filing complaints with the fee data for the entire damages period and excuse it as a requirement, particularly, where, as here, Defendants do not contend Defendants' fees have materially changed from fiscal year 2013 to fiscal year 2014.  *See Harbor*, 2014 WL 647854, at *10 ("it is not necessary, and is often impossible, for §36(b) plaintiffs to file suit with the fee data that relates to the entire damages period").  Therefore, Plaintiffs have properly alleged damages within an actionable period, and Defendants' argument to the contrary is incorrect as a matter of law.  *Green,* 186 F.R.D. at *491 (rejecting defendant's argument that plaintiff's claim is time barred because plaintiffs alleged damages in the proper one year period and "whether plaintiffs actually suffered damages within one year period prior to the

filing of the complaint is a factual question not appropriate for consideration on a motion to dismiss").

## VI.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court denies Defendants' Motion to Dismiss in its entirety.

Dated: January 9, 2015

Respectfully submitted,

ROBBINS ARROYO LLP

s/ Stephen J. Oddo
STEPHEN J. ODDO

BRIAN J. ROBBINS
EDWARD B. GERARD
JUSTIN D. RIEGER
DANIEL L. SACHS
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
brobbins@robbinsarroyo.com
soddo@robbinsarroyo.com
egerard@robbinsarroyo.com
jrieger@robbinsarroyo.com
dsachs@robbinsarroyo.com

RYAN & MANISKAS, LLP
RICHARD A. MANISKAS
995 Old Eagle School Road, Suite 311
Wayne, PA 19087
Telephone: (484) 588-5516
Facsimile: (484) 450-2582
rmaniskas@rmclasslaw.com

Attorneys for Plaintiffs

999048

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

s/ Stephen J. Oddo
STEPHEN J. ODDO
