IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN CURD and REBEL CURD, : | |
| on behalf of SEI : | CIVIL ACTION |
| INTERNATIONAL EQUITY FUND, SEI : | No. 13-7219 |
| HIGH YIELD BOND FUND, SEI : | |
| TAX-MANAGED LARGE CAP FUND, SEI : | |
| TAX-MANAGED SMALL/MID CAP : | |
| FUND, and SEI INTERMEDIATE-TERM : | |
| MUNICIPAL FUND, : | |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | |
| : | |
| SEI INVESTMENTS MANAGEMENT : | |
| CORPORATION and SEI INVESTMENTS : | |
| GLOBAL FUNDS SERVICES, : | |
| : | |
| Defendants. : | |

**July \_13\_\_, 2015**                                                                                      **Anita B. Brody, J.**

**MEMORANDUM**

Plaintiffs Steven Curd and Rebel Curd (the "Curds") bring an action on behalf of five mutual funds in which they own shares (collectively, the "SEI Funds"),[1] against Defendant SEI Investments Management Corporation ("SIMC"), the investment adviser for the SEI Funds, and against Defendant SEI Investments Global Funds Services ("SIGFS"), the administrative agent for the SEI Funds. In the Amended Complaint, the Curds allege that SIMC and SIGFS each

---

[1] The five SEI Funds are SEI International Equity Fund ("International Equity"), SEI High Yield Bond Fund ("High Yield Bond"), SEI Tax-Managed Large Cap Fund ("Tax-Managed Large Cap"), SEI Tax-Managed Small/Mid Cap Fund ("Tax-Managed Small/Mid Cap"), and SEI Intermediate-Term Municipal Fund ("Intermediate-Term Municipal"). The SEI Funds are organized under three trusts—the SEI Institutional International Trust, the SEI Institutional Managed Trust, the SEI Tax Exempt Trust—which are management investment companies under the ICA. Am. Compl. ¶¶ 12–16, ECF No. 51. The SEI Funds were originally named as Nominal Defendants in this lawsuit. However, they have since been dismissed.

1

breached their fiduciary duties to the SEI Funds by charging excessive management and administrative fees to the SEI Funds, in violation of § 36(b) of the Investment Company Act of 1940 ("ICA"), 15 U.S.C. § 80a-35. Pursuant to § 36(b)(3) of the ICA, the Curds seek actual damages in the amount of all excessive fees paid from a period one year before this action was instituted. As an alternative remedy, pursuant to § 47(b) of the ICA, 15 U.S.C. § 80a-46, the Curds seek rescission of the contracts between the SEI Funds and the Defendants and restitution of all excessive fees paid from a period one year before this action was instituted.[2] This Court has subject matter jurisdiction over the Curds' claims pursuant to 28 U.S.C. § 1331.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), SIMC and SIGFS move to dismiss the Amended Complaint alleging that the Curds have failed to state a claim for excessive fees under Section 36(b) of the ICA. ECF No. 54. On July 7, 2015, I held oral argument on Defendants' motion. For the reasons discussed below, I will deny Defendants' motion as to SIMC and grant it as to SIGFS.

I. BACKGROUND

The Curds own shares in each of the SEI Funds, which are mutual funds[3] held in three management investment companies governed by the ICA. Am. Compl. ¶¶ 10–16, ECF No. 51. SIMC serves as the investment adviser for the SEI Funds, and per Advisory Agreements is charged with managing the investment and reinvestment of the SEI Funds' assets. *Id.* ¶¶ 2, 35. In turn, SIMC subcontracts the majority of its investment management duties to numerous sub-advisers pursuant to Sub-Advisory Agreements. *Id.* ¶ 36. All of the SEI Funds' assets are managed by sub-advisers, "leaving defendant SIMC largely without any asset management

---

[2] Technically, the trusts entered into contracts with SIMC (Advisory Agreements) and SIGFS (Administration Agreements) on behalf of the SEI Funds. *See id.* ¶¶ 17–18, 35, 90.
[3] "A mutual fund is a pool of assets, consisting primarily of [a] portfolio [of] securities, and belonging to the individual investors holding shares in the fund." *Burks v. Lasker*, 441 U.S. 471, 480 (1979).

responsibilities." *Id.* ¶ 37. As their investment adviser, SIMC charges the SEI Funds management fees.[4] *Id.* ¶ 2. Management fees are based on a stated percentage of the SEI Funds' average daily net asset value. *Id*. ¶ 40. SIMC has charged the same fee percentage to the SEI Funds since initiating its management services, despite the SEI Funds' significant growth through additional investment.[5] *Id.* ¶¶ 51–53. For the 2013 fiscal year, the SEI Funds paid SIMC approximately $30.7 million in management fees.[6] *Id*. ¶¶ 40–41. Of that amount, the sub-advisers received approximately $18.5 million and SIMC retained approximately $12.2 million. *Id*. ¶¶ 2, 41. SIMC thus passes on approximately 60% of these fees to the sub-advisers, and retains 40% for itself. *Id.* ¶ 41.

SIGFS serves as the administrative agent for the SEI Funds and provides administrative, regulatory, and other back-office services to the SEI Funds. *Id.* ¶¶ 4, 90. SIGFS has Administration Agreements with the trusts in which the SEI Funds are held. *Id.* ¶ 90. Administrative fees are based on a stated percentage of the SEI Funds' average daily net asset value. *Id.* ¶ 92. SIGFS has charged the same fee rates to the SEI Funds since initiating its administrative services, despite the SEI Funds' significant growth through additional investment. *Id.* ¶¶ 99–100. In fiscal year 2013, SIGFS received approximately $27 million in administration fees. *Id.* ¶ 92.

The SEI Board of Trustees (the "Board") oversees all of the funds in the SEI Fund Complex, including the SEI Funds at issue in this case. *Id.* ¶¶ 69–70. The Board is composed of

---

[4] SIMC has voluntarily agreed to waive portions of its fee for select funds. Am. Compl. ¶¶ 40, 54.
[5] Assets under management have grown at each SEI Fund since SIMC initiated its management services as follows: Intermediate-Term Mutual (314%); International Equity (267%); High Yield Bond (94%); and Tax-Managed Small/Mid Cap (123%). *Id.* ¶ 51. Tax-Managed Large Cap (18%) is the only SEI Fund that has not experienced significant asset growth since its initiation. *Id.*
[6] The 2013 fiscal year for Intermediate-Term Municipal ended on August 31, 2013. *Id.* ¶ 40 n.5. The 2013 fiscal year for High Yield Bond, International Equity, Tax-Managed Large Cap, and Tax-Managed Small/Mid Cap ended on September 30, 2013. *Id.*

eight trustees, six independent members who are compensated for their services and two interested trustees who do not receive compensation. *Id.* ¶ 69. The Board negotiates and approves management and administration fees, monitors the quality of services provided to the SEI Funds, and reviews the Funds' investment performance. *Id.* ¶¶ 68–76. In recent years, the Board approved SIMC's fees for the SEI Funds despite underperformance by the Funds. *Id.* ¶ 74. For the 2013 fiscal year, all five SEI Funds missed their five-year and ten-year period primary benchmarks, and three of the Funds missed their one-year period primary benchmarks. *Id.* In recent years, the Board also approved the Administration Agreements with SIGFS without publishing their considerations for approval. *Id.* ¶ 108.

## II.  LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted).

To survive dismissal, a complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered . . . ." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis omitted) (citations omitted) (internal quotation marks omitted). Thus, a court may "consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). Further, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

### III. DISCUSSION

Congress enacted the Investment Company Act of 1940 ("ICA") to address "the potential for abuse inherent in the structure of investment companies." *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 536 (1984) (internal quotation marks omitted). "Recognizing that the relationship between a fund and its investment adviser was fraught with potential conflicts of interest, the Act created protections for mutual fund shareholders." *Jones v. Harris Assoc., L.P.*, 559 U.S. 335, 339 (2010) (internal quotation marks omitted). In its 1970 amendments to the ICA, Congress "bolstered shareholder protection" by "impos[ing] upon investment advisers a fiduciary duty with respect to compensation received from a mutual fund and grant[ing] individual investors a private right of action for breach of that duty." *Id.* at 339–40 (internal citation and quotation marks omitted).

The ICA's resulting fiduciary duty section, § 36(b), provides in pertinent part:

[T]he investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or

5

of payments of a material nature, paid by such registered investment company, or by the security holders thereof, to such investment adviser or any affiliated person of such investment adviser. An action may be brought under this subsection by the Commission, or by a security holder of such registered investment company on behalf of such company, against such investment adviser, or any affiliated person of such investment adviser, or any other person enumerated in subsection (a) of this section who has a fiduciary duty concerning such compensation or payments, for breach of fiduciary duty in respect of such compensation or payments paid by such registered investment company or by the security holders thereof to such investment adviser or person.

15 U.S.C. § 80a-35(b). The ICA imposes the burden of proof on the party claiming breach under § 36(b). 15 U.S.C. § 80a-35(b)(1); *see Jones*, 559 U.S. at 347.

In *Jones v. Harris Associates*, the Supreme Court adopted the Second Circuit's standard for proving § 36(b) violations as follows:

> [T]o face liability under § 36(b), an investment adviser must charge a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining.

559 U.S. at 346 (citing *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923 (2d Cir. 1982)). The Supreme Court also adopted the Second Circuit's multi-factor *Gartenberg* test used to evaluate § 36(b) claims. *Id.* at 346–48 (citing *Gartenberg*, 694 F.2d at 929). The *Gartenberg* factors include: (1) the nature and quality of the services provided to the fund and shareholders; (2) the profitability of the fund to the adviser; (3) any "fall-out financial benefits," those collateral benefits that accrue to an adviser because of its relationship with a mutual fund; (4) comparative fee structures (meaning a comparison of the fees with those paid by similar funds); (5) economies of scale; and (6) the independence, expertise, care, and conscientiousness of the board in evaluating adviser compensation. *Id.* at 344 & n.5 (citing *Gartenberg*, 694 F.2d at 929–32). "*Gartenberg* insists that all relevant circumstances be taken into account, as does § 36(b)(2)." *Id.* at 347 (internal citation omitted).

A. **Section 36(b) Claim Against SIMC**

SIMC moves to dismiss the Curds' Amended Complaint on two grounds. First, SIMC argues that the Curds fail to state a claim because they do not allege sufficient facts to satisfy the *Gartenberg* test. Second, SIMC argues that the Curds' allegations are untimely because they do not allege facts within the relevant damages period.

   1. *Gartenberg* **Analysis of the Curds' Claim**

SIMC argues that the Curds fail to state a claim under § 36(b) because their allegations fail to satisfy the demanding *Gartenberg* standard.

Justice Alito's majority opinion in *Jones* makes clear that the *Gartenberg* approach is fact intensive. *See generally id.* at 348–53 (discussing, on review of a grant of summary judgment, how courts should analyze and weigh the *Gartenberg* factors); *id.* at 354 (Thomas, J., concurring) (noting that courts have applied the *Gartenberg* test "principally in deciding which cases may proceed past summary judgment"). At the motion to dismiss stage, a district court looks to the *Gartenberg* factors not to engage in a merits inquiry, but rather to determine whether a plaintiff plausibly states a claim for relief under § 36(b).

Under Rule 8's liberal pleading standard and the *Iqbal/Twombly* "plausibility standard," the Curds' Amended Complaint states a claim under § 36(b) sufficient to survive SIMC's motion to dismiss. *See In re Blackrock Mut. Funds Advisory Fee Litig.*, No. 14-1165, 2015 WL 1418848, at *4 (D.N.J. Mar. 27, 2015) ("The plaintiff need not address all of the *Gartenberg* factors to survive a motion to dismiss if, when taken as a whole, the complaint demonstrates a plausible claim for relief under § 36(b)." (internal quotation marks omitted)); *Am. Chem. & Equip., Inc. 401(K) Ret. Plan v. Principal Mgmt. Corp.*, No. 14-44, 2014 WL 5426908, at *4 (S.D. Iowa Sept. 10, 2014) (explaining that a plaintiff "may state a § 36(b) claim by alleging any

combination of facts that plausibly support an inference that a particular fee, given all of the surrounding facts and circumstances, is disproportionately large to the services rendered in exchange for that fee" (internal quotation marks omitted)). Here, the Curds allege facts relevant to all of the *Gartenberg* factors. While not all of the Curds' allegations are sufficient to state a claim on their own, taken together they raise a plausible inference that SIMC's fees are so disproportionately large that they bear no reasonable relationship to the services provided to the SEI Funds and could not have been the product of arm's length bargaining. *See Reso ex rel. Artisan Int'l Fund v. Artisan Partners Ltd. P'ship*, No. 11-873, 2011 WL 5826034, at *6 (E.D. Wis. Nov. 18, 2011) (explaining that a § 36(b) claim may survive a motion to dismiss even where a plaintiff failed to allege some of the *Gartenberg* factors "so long as [plaintiff's] complaint, taken as a whole, alleges facts that demonstrate a plausible claim for relief"). In particular, the Curds' allegations about the nature and quality of the services provided and about SIMC's failure to share cost savings realized by economies of scale demonstrate a plausible claim for relief under § 36(b). *See Zehrer v. Harbor Capital Advisors, Inc.*, No. 14-789, 2014 WL 6478054, at *3–4 (N.D. Ill. Nov. 18, 2014) (denying motion to dismiss where plaintiff alleged substantially similar facts regarding the same two factors).

Regarding the nature and quality of the services SIMC provided to the SEI Funds, the Curds allege the following facts: SIMC subcontracts the majority of its investment advising duties to sub-advisers, yet keeps 40% of the investment management fees. Am. Compl. ¶ 36, 40–41. In subcontracting its duties, SIMC uses a "Manager of Managers" approach, leaving itself "largely without any asset management responsibilities." *Id.* ¶ 37. The SEI Funds pay SIMC a monthly management fee based on a percentage of the Funds' average daily net asset value. *Id.* ¶ 40. Thus, the fees are not based on SIMC's quality of services nor on the cost of

providing services. *Id.* Moreover, in recent years the SEI Funds have underperformed compared with benchmark funds.[7] *Id.* ¶ 74. These allegations raise a plausible claim that SIMC charges fees that are disproportionately large in comparison to the services it provides to the SEI Funds, and could not have been the product of arm's length bargaining. *See Kasilag v. Hartford Inv. Fin. Servs., LLC*, No. 11-1083, 2012 WL 6568409, at *3 (D.N.J. Dec. 17, 2012) (finding allegations that adviser kept significant portion of fees though it sub-contracted "substantially all" of its advising responsibilities sufficient to state a § 36(b) claim).

The Curds also allege facts related to the economies of scale, or cost efficiencies in managing the SEI Funds realized by SIMC after a substantial increase in the SEI Funds' assets. Investment advisers often schedule reductions in fee rates when a fund's net assets reach certain values. These scheduled reductions are known as "breakpoints" and exist to recognize cost efficiencies achieved in managing a fund as assets increase. Am. Compl. ¶ 52. Breakpoints enable advisers to share savings created by these efficiencies with the fund. Despite substantial growth in the SEI Funds' net assets, SIMC has never applied any breakpoints during the Funds' existence.[8] *Id.* ¶¶ 50–55. For example, although International Equity's assets have grown from $640 million in 1997 to a current value of $2.3 billion, SIMC continues to receive a management fee of 0.51% of net assets. *Id.* ¶ 51. According to the Curds, SIMC thus profits from economies of scale without sharing the benefits with the SEI Funds and, in turn, investors. These allegations support a plausible claim for relief under § 36(b).

---

[7] The Fourth Circuit has cautioned that "allegations of underperformance alone are insufficient to prove that an investment adviser's fees are excessive." *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 327 (4th Cir. 2001). The Curds do not base their claim solely on allegations of underperformance.
[8] Voluntary waiver of fees is another way for an adviser to share benefits realized by economies of scale with a fund. *See* Am. Compl. ¶¶ 50–55. While SIMC has voluntarily waived some of its advisory fees, in 2013 (as well as in 2011 and 2012) it did not waive any fees for International Equity. *Id.* ¶ 54. Moreover, SIMC is not contractually obligated to waive any fees. *Id.*

Further factual development is necessary for this Court to evaluate the validity and strength of the Curds' § 36(b) claim through the fact-intensive *Gartenberg* inquiry. While the allegations in the Amended Complaint may well not survive summary judgment, they are sufficient to survive the motion-to-dismiss stage.

For these reasons, the Curds have plausibly pled their § 36(b) claim.

### 2. Timeliness of the Curds' Claim

SIMC moves to dismiss the Curds' § 36(b) claim for a second, independent reason: The Curds make no allegation about SIMC's fees that are actionable under § 36(b). Section 36(b) provides that "[n]o award of damages shall be recoverable for any period prior to one year before the action was instituted." 15 U.S.C. § 80a-35(b)(3). The parties dispute whether the Court should look to the date the Curds filed their original Complaint or the date they filed their Amended Complaint to assess the Curds' compliance with this provision. The plain language of the statute compels the conclusion that the Curds instituted this action when they filed their original Complaint on December 11, 2013. Therefore, the Curds cannot recover damages for excessive fees charged prior to December 11, 2012. Because they rely on financial documents for the SEI Funds' 2013 fiscal years,[9] the Curds have alleged facts relating to the excessiveness of SIMC's fees within the appropriate damages recovery period. The Curds' claim is not time-barred.

Accordingly, I will deny SIMC's motion to dismiss.

### B. Section 36(b) Claim Against SIGFS

The Curds also bring suit against SIGFS, which provides administrative, regulatory, and other back-office services to the SEI Funds. SIGFS largely advances the same arguments as

---

[9] As discussed *supra* note 6, the 2013 fiscal year ended on August 31, 2013 for Intermediate-Term Municipal and on September 30, 2013 for the other four funds.

SIMC in support of its motion to dismiss.  Because I conclude that the ICA does not authorize a § 36(b) claim against SIGFS, I need not address SIGFS' arguments.

Section 36(b) authorizes a cause of action for breach of fiduciary duty against three categories of persons.  First, § 36(b) authorizes an action against an investment adviser of a registered investment company; that adviser has "a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, or by the security holders thereof, to such investment adviser or any affiliated person of such investment adviser."  15 U.S.C. § 80a-35(b).  The Amended Complaint alleges only that SIGFS is organized as a Delaware Statutory Trust and serves as the administrative agent for the SEI Funds.  Am. Compl. ¶¶ 4, 18.  The Curds thus fail to establish that SIGFS is an investment adviser, let alone that SIGFS serves as adviser to the SEI Funds.

Second, § 36(b) authorizes an action against any affiliated person of the investment adviser.  15 U.S.C. § 80a-35(b).  The ICA defines "affiliated person" as follows:

> "Affiliated person" of another person means (A) any person directly or indirectly owning, controlling, or holding with power to vote, 5 per centum or more of the outstanding voting securities of such other person; (B) any person 5 per centum or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by such other person; (C) any person directly or indirectly controlling, controlled by, or under common control with, such other person; (D) any officer, director, partner, copartner, or employee of such other person; (E) if such other person is an investment company, any investment adviser thereof or any member of an advisory board thereof; and (F) if such other person is an unincorporated investment company not having a board of directors, the depositor thereof.

15 U.S.C. § 80a-2.

The Amended Complaint is devoid of any facts alleging that SIGFS qualifies as an affiliate of SIMC, the investment adviser to the SEI Funds.  It contains no allegation that SIGFS owns a 5% or greater share in SIMC or that SIMC owns a 5% or greater share in SIGFS.  *Id.* § 80a-2(A)-(B).

11

It contains no allegation that SIGFS controls SIMC, that SIMC controls SIGFS, or that SIGFS and SIMC are under common control. *Id.* § 80a-2(C). Finally, it contains no allegation that SIGFS is an officer, director, partner, copartner, or employee of SIMC. *Id.* § 80a-2(D). Subsections (E) and (F) do not apply because SIMC is an investment adviser, not an investment company. The Curds thus fail to establish that SIGFS is an affiliate of SIMC. *See Pfeiffer v. Integrated Fund Servs., Inc.*, 371 F. Supp. 2d 502, 507–10 (S.D.N.Y. 2005) (granting defendant administrator's motion for judgment on the pleadings because plaintiff failed to allege any facts indicating that administrator qualified as an "affiliate" of the relevant investment adviser).

Third, § 36(b) authorizes an action against "any other person enumerated in subsection (a) of [15 U.S.C. § 80a-35] who has a fiduciary duty concerning such compensation or payments." 15 U.S.C. § 80a-35(b). Subsection (a) enumerates the following persons: an officer, director, member of any advisory board, investment adviser, or depositor; or as principal underwriter, if such registered company is an open-end company, unit investment trust, or face-amount certificate company. *Id.* § 80a-35(a). The Amended Complaint contains no allegations that SIGFS holds any of these positions with respect to the SEI Funds. The Curds thus fail to establish that SIGFS is a person enumerated in subsection (a).

Because the Curds fail to establish that SIGFS is an entity that faces liability under § 36(b), their claim against SIGFS will be dismissed.

**IV. CONCLUSION**

In summary, I will deny Defendants' Motion to Dismiss the Amended Complaint as to SIMC, and I will grant the motion as to SIGFS.

                                                    s/Anita B. Brody
                                          _____
                                          ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:                 Copies **MAILED** on _____ to: