## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN CURD and REBEL CURD, Derivatively on Behalf of SEI INTERNATIONAL EQUITY FUND, SEI HIGH YIELD BOND FUND, SEI TAX-MANAGED LARGE CAP FUND, SEI TAX-MANAGED SMALL/MID CAP FUND, and SEI INTERMEDIATE-TERM MUNICIPAL FUND, <br><br> Plaintiffs, <br><br> v. <br><br> SEI INVESTMENTS MANAGEMENT CORPORATION, and SEI INVESTMENTS GLOBAL FUNDS SERVICES, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. 2: 13-cv-07219 |

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES
## TO THE SECOND AMENDED COMPLAINT

Defendants SEI Investments Management Corporation ("SIMC") and SEI Investments Global Funds Services ("SIGFS" and together, "Defendants") respectfully submit their Answer and Affirmative Defenses to the Second Amended Complaint ("Complaint") of plaintiffs Steven Curd and Rebel Curd (together, "Plaintiffs"), as follows:

## PRELIMINARY STATEMENT

The Complaint contravenes the Federal Rules of Civil Procedure by improperly mixing factual averments with argumentative rhetoric so as to make admissions or denials of such averments difficult and, at times, impossible. In addition, many of the Complaint's allegations are overly broad, vague, conclusory, and/or include terms that are undefined and susceptible to different meanings. As a result, it is difficult to understand many of the allegations in the

1

Complaint with sufficient clarity to allow a precise answer.  While Defendants have attempted to identify and respond to specific factual allegations in cases where they can be understood sufficiently to permit an answer, Defendants are not certain that they understand the exact nature of Plaintiff's allegations in all instances.  Defendants therefore reserve the right to withdraw, amend, or modify their Answer to the Complaint as later circumstances may warrant.  By way of general response, all allegations in the Complaint are denied unless specifically admitted.  Moreover, any factual averment that is admitted below is admitted only as to the specific facts so stated herein and not to any conclusions, characterizations, implications, or speculation contained in the averment or the Complaint as a whole.  The comments and objections of this preliminary statement are incorporated, to the extent appropriate, in each numbered paragraph of this Answer.  Additionally, to the extent the headings contained in the Complaint are taken to assert factual allegations against Defendants, those allegations are denied.

1.      Admitted in part and denied in part.  Defendants admit that Plaintiffs purport to bring this action on behalf of SEI High Yield Bond Fund ("High Yield Bond"), SEI International Equity Fund ("International Equity"), SEI Intermediate-Term Municipal Fund ("Intermediate-Term Municipal"), SEI Tax-Managed Large Cap Fund ("Tax-Managed Large Cap"), and SEI Tax-Managed Small/Mid Cap Fund ("Tax-Managed Small/Mid Cap"), (collectively, the "SEI Funds") pursuant to section 36(b) of the Investment Company Act of 1940 ("ICA"), as amended 15 U.S.C. §80a-35(b) ("Section 36(b)").  All other allegations in this paragraph are denied.

2.      Admitted in part and denied in part.  Defendants admit that SIMC is the investment adviser to each of the SEI Funds and charges fees to the SEI funds.  In fiscal years 2014 and 2013, the SEI Funds paid SIMC $37,866,000 and $30,708,000, respectively, in investment advisory fees after fee waivers.  It is admitted that SIMC paid the SEI Funds' sub-

advisers $19,627,000 in fiscal year 2014 and $18,499,000 in fiscal year 2013, retaining for itself $18,239,000 in fiscal year 2014 and $12,209,000 in fiscal year 2013.  All other allegations in this paragraph are denied.

3.      Admitted in part and denied in part.  As set forth in detail below, Defendants admit that SIMC has charged the same gross fee rate to certain of the SEI Funds for as many as 19 years and that the value of at least one SEI Fund has increased by as much as 451% during this period; Defendants deny that they have charged the same gross fee rate to all SEI Funds for 19 years or that 451% represents the growth rate for all SEI Funds during this period.  All other allegations in this paragraph are denied.

4.      Admitted in part and denied in part.  Defendants admit that SIGFS provides the SEI Funds with administrative and transfer agency services in exchange for a fee, pursuant to Administration and Transfer Agency Agreements.  Defendants admit that SIMC is the indirect owner of all beneficial interest in SIGFS.  All other allegations in this paragraph are denied.

5.      Denied.  To the extent the allegations in this paragraph allege conclusions of law, no response is required.  To the extent this paragraph is deemed to allege facts, it is denied.

6.      Admitted in part and denied in part.  Defendants admit that as of December 31, 2014, there were 98 funds in the SEI Funds complex.  To the extent the remaining allegations in this paragraph allege conclusions of law, no response is required.  To the extent the remaining allegations this paragraph are deemed to allege facts, they are denied.

7.      Admitted in part and denied in part.  Defendants admit that Plaintiffs purport to bring this action under Section 36(b)(3) to recover the damages claimed in Paragraph 7.  To the extent the remaining allegations in this paragraph allege conclusions of law, no response is

required.  To the extent the remaining allegations in this paragraph are deemed to allege facts, they are denied.

8.      Denied.  To the extent the allegations in this paragraph allege conclusions of law, no response is required.

9.      Denied.  Defendants admit that the SEI Funds' principal executive offices are located in this District, and that the SEI Funds, SIMC, and SIGFS transact business in this District.  To the extent the remaining allegations in this paragraph allege conclusions of law, no response is required.  To the extent the remaining allegations in this paragraph are deemed to allege facts, they are denied.

10.     Admitted.  Defendants admit that Steven Curd holds shares of each of the SEI Funds.

11.     Admitted.  Defendants admit that Rebel Curd holds shares of each of the SEI Funds.

12.     Admitted.  Defendants admit that the International Equity Fund is a separate series of the SEI Institutional International Trust ("SIT").  It is admitted that SIT is an open-end management investment company that offers four separate series, including the International Equity Fund.  It is admitted that SIT is a Massachusetts business trust and that its principal executive offices are located at One Freedom Valley Drive, Oaks, Pennsylvania 19456.  Defendants admit that, as of March 31, 2015, the International Equity Fund had net assets of $2,832,903,000 and that 40% of its assets are expected to be invested outside the United States.  Defendants admit that the International Equity Fund's principal executive offices are located at One Freedom Valley Drive, Oaks, Pennsylvania 19456.

13.     Admitted.  Defendants admit that the High Yield Bond Fund is a separate series of the SEI Institutional Managed Trust ("SIMT").  It is admitted that SIMT is an open-end management investment company that offers 25 separate series, including the High Yield Bond Fund.  It is admitted that SIMT is a Massachusetts business trust and that its principal executive offices are located at One Freedom Valley Drive, Oaks, Pennsylvania 19456.  Defendants admit that, as of March 31, 2015, the High Yield Bond Fund had net assets of $1,817,044,000. It is admitted that the High Yield Bond Fund will invest primarily in fixed income securities rated below investment grade, including corporate bonds and debentures, convertible and preferred securities, zero coupon obligations, tranches of collateralized debt obligations, and collateralized loan obligations.  Defendants admit that the High Yield Bond Fund's principal executive offices are located at One Freedom Valley Drive, Oaks, Pennsylvania 19456.

14.     Admitted.  Defendants admit that the Tax-Managed Large Cap Fund is a separate series of SIMT.  Defendants admit that, as of March 31, 2015, the Tax-Managed Large Cap Fund had net assets of $3,353,844,000.  It is admitted that, under normal circumstances, the Tax-Managed Large Cap Fund will invest at least 80% of its net assets (plus the amount of any borrowings for investment purposes) in equity securities of large companies, including common stocks, preferred stocks, warrants, American depository receipts (ADRs), and exchange-traded funds (ETFs).  Defendants admit that the High Yield Bond Fund's principal executive offices are located at One Freedom Valley Drive, Oaks, Pennsylvania 19456.

15.     Admitted.  Defendants admit that the Tax-Managed Small/Mid Cap Fund is a separate series of SIMT.  Defendants admit that, as of March 31, 2015, the Tax-Managed Small/Mid Cap Fund had net assets of $662,429,000.  It is admitted that, under normal circumstances, the Tax-Managed Small/Mid Cap Fund will invest at least 80% of its net assets

(plus the amount of any borrowings for investment purposes) in equity securities of small and medium capitalization companies.  Defendants admit that the High Yield Bond Fund's principal executive offices are located at One Freedom Valley Drive, Oaks, Pennsylvania 19456.

16.     Admitted.  Defendants admit that the Intermediate-Term Municipal Fund is a separate series of the SEI Tax Exempt Trust ("STET").  It is admitted that STET is an open-end management investment company that offers 10 separate series, including the Intermediate-Term Municipal Fund.  It is admitted that STET is a Massachusetts business trust and that its principal executive offices are located at One Freedom Valley Drive, Oaks, Pennsylvania 19456. Defendants admit that, as of February 28, 2015, the Intermediate-Term Municipal Fund had net assets of $1,427,601,000. It is admitted that, under normal circumstances, the Intermediate-Term Municipal Fund will invest at least 80% of its net assets (plus the amount of any borrowings for investment purposes) in investment grade municipal securities that pay interest that is exempt from federal income tax.  It is admitted that the issuers of these municipal securities are state and local governments and their agencies located in any of the fifty states, the District of Columbia, Puerto Rico and other U.S. territories and possessions.  Defendants admit that the Intermediate-Term Municipal Fund's principal executive offices are located at One Freedom Valley Drive, Oaks, Pennsylvania 19456.

17.     Admitted in part and denied in part.   Defendants admit that SIMC is an investment adviser to investment companies registered under the Investment Company Act of 1940 ("ICA").  It is admitted that SIMC is organized as a corporation under the laws of Delaware and that SIMC's principal executive offices are located at One Freedom Valley Drive, Oaks, Pennsylvania 19456.  It is admitted that, pursuant to separate Advisory Agreements with SIT, SIMT, and STET (together, the "Trusts"), SIMC serves as investment adviser to the SEI Funds

and receives a fee in exchange for its advisory services.  The remaining allegations in this paragraph allege conclusions of law to which no response is required.

18.     Admitted in part and denied in part.  Defendants admit that SIGFS is organized as a Delaware statutory trust and that SIGFS's principal executive offices are located at One Freedom Valley Drive, Oaks, Pennsylvania 19456.  Defendants admit that SIMC is the indirect owner of all beneficial interest in SIGFS.  It is admitted that, pursuant to separate Administration and Transfer Agency Agreements, SIGFS provides administration and transfer agency services in exchange for a fee.  The remaining allegations in this paragraph allege conclusions of law to which no response is required.

19.     Admitted in part and denied in part.  It is admitted that a mutual fund is a pool of assets, generally invested in stocks, bonds, or other types of investments, and belonging to the individual investors holding shares in the fund.  To the extent this paragraph purports to quote certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves.  To the extent the remaining allegations in this paragraph allege conclusions of law, no response is required.  To the extent the remaining allegations in this paragraph are deemed to allege facts, they are denied.

20.     Denied.  To the extent this paragraph purports to quote certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves.  To the extent the remaining allegations in this paragraph allege conclusions of law, no response is required.  To the extent the remaining allegations in this paragraph are deemed to allege facts, they are denied.

21.     Admitted in part and denied in part.  Defendants admit that many mutual funds pay their investment adviser an annual fee based on the percentage of value of the assets under

management in the fund.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.  All other allegations in this paragraph are denied.

22.     Denied.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and they are therefore denied.

23.     Denied.  To the extent this paragraph purports to quote or characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and/or the allegations call for legal conclusions to which no response is required.  To extent a response is required, the allegations in this paragraph are denied.

24.     Denied.  To the extent this paragraph purports to quote certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and/or the allegations call for legal conclusions to which no response is required.  To extent a response is required, the allegations in this paragraph are denied.

25.     Denied.  To the extent this paragraph purports to quote or characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and/or the allegations call for legal conclusions to which no response is required.  To extent a response is required, the allegations in this paragraph are denied.

26.     Denied.  To the extent this paragraph purports to quote or characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and/or the allegations call for legal conclusions to which no response is required.  To extent a response is required, the allegations in this paragraph are denied.

27.     Denied.  To the extent this paragraph purports to quote or characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and/or the allegations call for legal conclusions to which no response is required.  To extent a response is required, the allegations in this paragraph are denied.

28.     Denied.  To the extent this paragraph purports to quote or characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and/or the allegations call for legal conclusions to which no response is required.  To extent a response is required, the allegations in this paragraph are denied.

29.     Admitted in part and denied in part.  It is admitted that a basis point is equal to one hundredth of one percent.  To the extent this paragraph purports to quote or characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves.  Defendants lack knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in this paragraph. To extent a response is required, the allegations in this paragraph are denied.

30.     Denied. By way of further answer, $25,000 invested for 35 years with an annual return of 7% and fees and expenses of 0.5% equals $226,556 and $25,000 invested for 35 years with an annual return of 7% and fees and expenses of 1.5% equals $162,846. All other allegations in this paragraph are denied.

31.     Denied. To the extent this paragraph purports to characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves. By way of further answer, the allegations in this paragraph call for legal conclusions to which no response is required.

32.     Denied. To the extent this paragraph purports to characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves. By way of further answer, the allegations in this paragraph call for legal conclusions to which no response is required.

33.     Denied. To the extent this paragraph purports to characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves. By way of further answer, the allegations in this paragraph call for legal conclusions to which no response is required.

34.     Denied. The allegations call for legal conclusions to which no response is required. To extent this paragraph is deemed to allege facts, it is denied.

35.     Denied. The allegations call for legal conclusions to which no response is required. To extent this paragraph is deemed to allege facts, it is denied.

36.     Admitted in part and denied in part.  It is admitted that, pursuant to separate Advisory Agreements with the Trusts, SIMC serves as investment adviser to the SEI Funds.  To the extent this paragraph purports to quote or characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves.

37.     Admitted in part and denied in part.  It is admitted that SIMC, with the approval of the Board of Trustees of the relevant Trust (the "Board"), may retain sub-advisers.  It is admitted that, pursuant to separate sub-advisory agreements with SIMC, and under the supervision of SIMC and the Board, the sub-advisers to the SEI Funds perform certain services set forth in those agreements.  To the extent this paragraph purports to quote or characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves.  The remaining allegations in this paragraph are denied.

38.     Admitted in part and denied in part.  It is admitted that, as of July 17, 2015: the International Equity Fund used as sub-advisers Acadian Asset Management LLC, Blackcrane Capital, LLC, Causeway Capital Management LLC, Henderson Global Investors (North America) Inc., INTECH Investment Management LLC, Neuberger Berman Management LLC, Tradewinds Global Investors, LLC, and WCM Investment Management; the High Yield Bond Fund used as sub-advisers Ares Management LLC, Benefit Street Partners LLC, Brigade Capital Management, LP, Delaware Investments Fund Advisers, and J.P. Morgan Investment Management, Inc.; the Tax-Managed Large Cap Fund used as sub-advisers AQR Capital Management, LLC, BlackRock Investment Management, LLC, Brandywine Global Investment Management, LLC, Coho Partners, Ltd., Jackson Square Partners, LLC, LSV Asset

Management, Parametric Portfolio Associates LLC, and Snow Capital Management, L.P.; the Tax-Management Small/Mid Cap Fund used as sub-advisers AllianceBerstein L.P., CastleArk Management LLC, LMCG Investments, LLC, Parametric Portfolio Associates LLC, Snow Capital Management L.P., and William Blair & Company L.L.C.; and the Intermediate-Term Municipal Fund used as sub-advisers Delaware Investments Fund Advisers and Standish Mellon Asset Management Company LLC.  It is admitted that SIMC's parent company, SEI Investments Co., has a minority ownership interest of approximately 39.3% in LSV Asset Management.  All other allegations in this paragraph are denied.

39.     Denied.  To the extent this paragraph purports to quote or characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves.  All other allegations in this paragraph are denied.

40.     Admitted in part and denied in part.  It is admitted that the management of the Trusts and their series, including the SEI Funds, is overseen by the Trustees.  It is admitted that the Trustees have various duties, including overseeing the services provided to the SEI Funds by SIMC, the sub-advisers, and other service providers.  To the extent this paragraph purports to quote or characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves.  All other allegations in this paragraph are denied.

41.     Admitted in part and denied in part.  It is admitted that the SEI Funds paid the following advisory fees to SIMC, net of fee waivers, in fiscal year 2013 (October 1, 2012 to September  30, 2013 for the International Equity Fund, High Yield Bond Fund, Tax-Managed Large Cap Fund, and Tax-Managed Small/Mid Cap Fund and September 1, 2012 to August 31, 2013 for the Intermediate-Term Municipal Fund): the International Equity Fund paid

$10,313,000; the High Yield Bond Fund paid $8,114,000; the Tax-Managed Large Cap Fund paid $7,273,000; the Tax-Managed Small/Mid Cap Fund paid $2,059,000; and the Intermediate-Term Municipal Fund paid $2,949,000.  It is admitted that the SEI Funds paid the following advisory fees to SIMC, net of fee waivers, in fiscal year 2014 (October 1, 2013 to September  30, 2014 for the International Equity Fund, High Yield Bond Fund, Tax-Managed Large Cap Fund, and Tax-Managed Small/Mid Cap Fund and September 1, 2013 to August 31, 2014 for the Intermediate-Term Municipal Fund): the International Equity Fund paid $13,214,000; the High Yield Bond Fund paid $8,760,000; the Tax-Managed Large Cap Fund paid $9,630,000; the Tax-Managed Small/Mid Cap Fund paid $2,899,000; and the Intermediate-Term Municipal Fund paid $3,363,000.  It is admitted that in fiscal year 2014, the SEI Funds paid SIMC a total of $37,866,000 in advisory fees, of which $18,239,000 were retained by SIMC.  To the extent this paragraph purports to quote or characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves. All other allegations in this paragraph are denied.

42.     Admitted in part and denied in part.  Defendants admit that, pursuant to the Sub-Advisory Agreements, SIMC pays sub-advisory fees to the sub-advisers.  It is admitted that that in fiscal year 2014, the SEI Funds paid SIMC a total of $37,866,000 in advisory fees, of which $19,627,000 were paid to the sub-advisers and $18,239,000 were retained by SIMC.  It is admitted that in fiscal year 2013, the SEI Funds paid SIMC a total of $30,708,000 in advisory fees, of which $18,499,000 were paid to the sub-advisers and $12,209,000 were retained by SIMC.  Defendants admit that SIMC and the Trusts have obtained exemptive orders from the U.S. Securities and Exchange Commission that permits the disclosure of the aggregate amount payable by SIMC under all sub-advisory agreements.  To the extent this paragraph purports to

quote or characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves.  All other allegations in this paragraph are denied.

43.     Admitted in part and denied in part.  Defendants admit that, pursuant to separate sub-advisory agreements with SIMC, and under the supervision of SIMC and the Trustees, the sub-advisers to the SEI Funds provide certain management services to the Funds.  Defendants admit that the SEI Funds paid the following advisory fees to SIMC, net of fee waivers, in fiscal year 2013: the International Equity Fund paid $10,313,000, $6,895,000 of which was paid to the sub-advisers and $3,418,000 of which was retained by SIMC; the High Yield Bond Fund paid $8,114,000, $5,277,000 of which was paid to the sub-advisers and $2,837,000 of which was retained by SIMC; the Tax-Managed Large Cap Fund paid $7,273,000, $3,686,000 of which was paid to the sub-advisers and $3,587,000 of which was retained by SIMC; the Tax-Managed Small/Mid Cap Fund paid $2,059,000, $1,268,000 of which was paid to the sub-advisers and $791,000 of which was retained by SIMC; and the Intermediate-Term Municipal Fund paid $2,949,000, $1,373,000 of which was paid to the sub-advisers and $1,576,000 of which was retained by SIMC.  It is admitted than in fiscal year 2013, the SEI Funds paid SIMC a total of $30,708,000 in advisory fees, of which $18,499,000 was paid to the sub-advisers and $12,209,000 of which was retained by SIMC.  It is admitted that the SEI Funds paid the following advisory fees to SIMC, net of fee waivers, in fiscal year 2014: the International Equity Fund paid $13,214,000, $4,900,000 of which was paid to the sub-advisers and $8,314,000 of which was retained by SIMC; the High Yield Bond Fund paid $8,760,000, $5,669,000 of which was paid to the sub-advisers and $3,091,000 of which was retained by SIMC; the Tax-Managed Large Cap Fund paid $9,630,000, $5,412,000 of which was paid to the sub-advisers and

$4,218,000 of which was retained by SIMC; the Tax-Managed Small/Mid Cap Fund paid $2,899,000, $2,077,000 of which was paid to the sub-advisers and $822,000 of which was retained by SIMC; and the Intermediate-Term Municipal Fund paid $3,363,000, $1,569,000 of which was paid to the sub-advisers and $1,794 of which was retained by SIMC.  It is admitted that in fiscal year 2014, the SEI Funds paid SIMC a total of $37,866,000 in advisory fees, of which $19,627,000 were paid to the sub-advisers and $18,239,000 were retained by SIMC.  To the extent this paragraph purports to quote or characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves.  All other allegations in this paragraph are denied.

44.     Admitted in part and denied in part.  Defendants admit that SIMC's parent company, SEI Investments Co., has a minority ownership interest of approximately 39.3% in LSV.  Defendants admit that LSV Asset Management serves as one of the eight sub-advisers of the Tax-Managed Large Cap Fund. To the extent this paragraph purports to characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves.  All other allegations in this paragraph are denied.

45.     Admitted in part and denied in part.  Defendants admit that in fiscal year 2014, the SEI Funds paid SIMC a total of $37,866,000 in advisory fees, of which $19,627,000 were paid to the sub-advisers and $18,239,000 were retained by SIMC.  Defendants admit that in fiscal year 2013, the SEI Funds paid SIMC a total of $30,708,000 in advisory fees, of which $18,499,000 were paid to the sub-advisers and $12,209,000 were retained by SIMC. To the extent this paragraph purports to characterize or quote certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves.  All other allegations in this paragraph are denied.

15

46.     Denied.  To the extent this paragraph purports to quote or characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and/or the allegations call for legal conclusions to which no response is required.   To extent a response is required, the allegations in this paragraph are denied.

47.     Admitted in part and denied in part.  Defendants admit that there is an economic concept known as economies of scale and that the concept generally describes the situation present in certain industries or companies where average per unit cost falls as the number of units increase.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph, and they are therefore denied.

48.     Admitted in part and denied in part.   Defendants admit that the concept of economies of scale may apply to certain aspects of the mutual fund industry.  To the extent the remaining allegations in this paragraph concern the mutual fund industry generally, Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and they are therefore denied.   To the extent the remaining allegations in this paragraph concern Defendants, they are denied.

49.     Denied.  To the extent this paragraph purports to characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and they are therefore denied.

50.     Admitted in part and denied in part.  Defendants admit that economies of scale may exist with respect to an entire fund complex and an investment adviser's entire scope of

operations.  To the extent this paragraph purports to characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves.  To the extent the remaining allegations in this paragraph concern the mutual fund industry generally, Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and they are therefore denied.  To the extent the remaining allegations in this paragraph concern Defendants, they are denied.

51.     Denied.  To the extent this paragraph purports to quote or characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves.

52.     Admitted in part and denied in part.  Defendants admit that SIMC charges the following advisory fees to the SEI Funds: 0.505% to the International Equity Fund; 0.4875% to the SEI High Yield Bond Fund; 0.40% to the Tax-Managed Large Cap Fund; 0.65% to the Tax-Managed Small/Mid Cap Fund; and 0.33% to the Intermediate-Term Municipal Fund. Defendants admit that:  as of March 31, 2015, the International Equity Fund had net assets of $2,832,903,000; as of March 31, 2015, the High Yield Bond Fund had net assets of $1,817,044,000; as of March 31, 2015, the Tax-Managed Large Cap Fund had net assets of $3,353,844,000; as of March 31, 2015, the Tax Managed Small/Mid Cap Fund had net assets of $622,429,000; and, as of February 28, 2015, the Intermediate-Term Municipal Fund had net assets of $1,427,601,000.  All other allegations in this paragraph are denied.

53.     Admitted in part and denied in part.  Defendants admit that fee breakpoints are one method by which economies of scale, if any, may be shared with a mutual fund and its shareholders.  To the extent this paragraph purports to characterize certain documents, the Court

is referred to those documents for an accurate and complete statement of their contents, which speak for themselves.  All other allegations in this paragraph are denied.

54.     Admitted in part and denied in part.  Defendants admit that fee breakpoints are one method by which economies of scale, if any, may be shared with a mutual fund and its shareholders.  Defendants admit that the advisory fee rates and administrative fee rates paid by the SEI Funds do not, and have never, contained breakpoints.  To the extent this paragraph purports to characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves.   All other allegations in this paragraph are denied.

55.     Admitted in part and denied in part.  Defendants admit that fee waivers are one method by which economies of scale, if any, may be shared with a mutual fund and its shareholders.  It is admitted that in fiscal year 2012, Defendants waived the following amounts of advisory fees: $0 for the International Equity Fund; $946,000 for the High Yield Bond Fund; $859,000 for the Tax-Managed Large Cap Fund; $383,000 for the Tax-Managed Small/Mid Cap Fund; and $467,000 for the Intermediate-Term Municipal Fund.  It is admitted that in fiscal year 2013, Defendants waived the following amounts of advisory fees: $0 for the International Equity Fund; $1,105,000 for the High Yield Bond Fund; $1,145,000 for the Tax-Managed Large Cap Fund; $510,000 for the Tax-Managed Small/Mid Cap Fund; and $515,000 for the Intermediate-Term Municipal Fund.  It is admitted that in fiscal year 2014, Defendants waived the following amounts of advisory fees: $0 for the International Equity Fund; $1,287,000 for the High Yield Bond Fund; $1,618,000 for the Tax-Managed Large Cap Fund; $665,000 for the Tax-Managed Small/Mid Cap Fund; and $583,000 for the Intermediate-Term Municipal Fund.  To the extent this paragraph purports to characterize certain documents, the Court is referred to those

documents for an accurate and complete statement of their contents, which speak for themselves. All other allegations in this paragraph are denied.

56.     Denied.  To the extent the allegations in this paragraph call for legal conclusions, no response is required.  To extent a response is required, the allegations in this paragraph are denied.

57.     Admitted in part and denied in part.  Defendants admit that profitability is measured based on revenues and expenses.  To the extent this paragraph purports to quote or characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and/or the allegations call for legal conclusions to which no response is required.  To extent a response is required, the allegations in this paragraph are denied.

58.     Admitted in part and denied in part.  Defendants admit that the Trustees annually review the profitability of the SEI Funds to SIMC.  To the extent this paragraph purports to quote or characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves. Defendants specifically deny that SIMC or SIGFS earns excessive profits, provides limited services, or that the profitability of the SEI Funds to Defendants can be ascertained by examining the expense ratios of supposedly comparable mutual funds.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and/or the allegations call for legal conclusions to which no response is required.  To extent a response is required, the allegations in this paragraph are denied.

59.     Denied.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and they are therefore denied.

60.     Admitted in part and denied in part.  Defendants admit that SIMC oversees the investment advisory services provided to the SEI Funds and that the sub-advisers to the Funds provide certain management services to the SEI Funds.  Defendants admit that the SEI Funds have total assets of over $1 billion and are subject to the ICA and applicable SEC rules. Defendants further admit that the SEI Funds incur costs for management, administrative, custodian, distribution, professional, and other necessary services. Defendants admit that an index fund is a type of mutual fund with a portfolio constructed to match or track the components of a market index. SIMC specifically denies that the services it provides the SEI Funds are comparable to the services provided by Vanguard or any manager of an index fund. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and they are therefore denied.

61.     Denied.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and they are therefore denied.

62.     Admitted in part and denied in part.  Defendants admits that SIMC charges the following management fee rates, not including fee waivers, to the SEI Funds: 0.505% to the International Equity Fund; 0.49% to the High Yield Bond Fund; 0.40% to the Tax-Managed Large Cap Fund; 0.65% to the Tax-Managed Small/Mid Cap Fund; and 0.33% to the Intermediate-Term Municipal Fund.  Defendants admit that SIGFS currently charges the following administrative and transfer agency fee rates to the SEI Funds, not including fee waivers: 0.45% to the International Equity Fund; 0.30% to the High Yield Bond Fund; 0.30% to the Tax-Managed Large Cap Fund; 0.30% to the Tax-Managed Small/Mid Cap Fund; and 0.24%

to the Intermediate-Term Municipal Fund.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and they are therefore denied.

63.     Denied.  To the extent this paragraph purports to quote or characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves. Defendants specifically deny the characterization of SIMC's advisory fees as "enormous" and "substantially above the costs of providing the supervisory investment management services."  Defendants also specifically deny that parties other than SIMC performed much of the supervisory investment management services. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and they are therefore denied.

64.     Denied.  The allegations in this paragraph call for legal conclusions to which no response is required.  To extent a response is required, the allegations in this paragraph are denied.

65.     Admitted in part and denied in part.  Defendants admit that the advisory and administrative and transfer agency fees generally constitute a large portion of the expenses paid by a mutual fund.  All other allegations in this paragraph are denied.

66.     Admitted in part and denied in part.  Defendants admit that the investment goal of the Tax-Managed Small/Mid Cap Fund is "high long-term after-tax return" and that it uses the Russell 2500 Index as a benchmark.  It is admitted that the Tax-Managed Small/Mid Cap Fund pays an advisory fee rate of 0.65%, not including fee waivers, and that in fiscal year 2013, the Tax-Managed Small/Mid Cap Fund paid $2,059,000, net of waivers, in advisory fees.  It is admitted that SIMC operates as a "manager of manager" for the Tax-Managed Small/Mid Cap

Fund and other SEI Funds, whereby it recommends the hiring, termination, and replacement of sub-advisers who, subject to the supervision of SIMC and the Board, perform certain management services for the SEI Funds.  Defendants specifically deny that Wellington Management Company is currently one of the sub-advisers for the Tax-Managed Small/Mid Cap Fund.  All other allegations in this paragraph are denied.

67.    Admitted in part and denied in part.  Defendants admit that the Tax-Managed Small/Mid Cap Fund invests in equity securities of small and medium capitalization companies. To the extent this paragraph purports to quote or characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves.  Defendants specifically deny that SIMC or the SEI Funds are comparable to Vanguard or any Vanguard mutual funds.  Defendants also specifically deny that the Tax-Managed Small/Mid Cap Fund is benchmarked to the Russell 3000 value index and that the Tax-Managed Small/Mid Cap Fund uses Wellington as a sub-adviser.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and they are therefore denied.

68.    Admitted in part and denied in part.  Defendants admit that in fiscal year 2014, the Tax-Managed Small/Mid Cap Fund had total annual operating expenses of 1.29%. Defendants specifically deny that the Tax-Managed Small/Mid Cap Fund is "nearly the same product" as the Vanguard Capital Value Fund.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and/or the allegations call for legal conclusions to which no response is required.  To extent a response is required, the allegations in this paragraph are denied.

69.     Denied.  The allegations in this paragraph call for legal conclusions to which no response is required.  To extent a response is required, the allegations in this paragraph are denied.

70.     Admitted in part and denied in part.  Defendants admit that as of December 31, 2014, there were 98 funds in the SEI Funds complex.  Defendants admit that the management and affairs of the Trusts and its series, including the SEI Funds, are overseen by the Board of Trustees.  Defendants admit that the Board is responsible for overseeing the nature, extent, and quality of the services provided to the SEI Funds by SIMC, SIGFS, and other service providers. Defendants further admit that each year the Board considers whether to renew the Advisory Agreements between the Trusts, on behalf of the SEI Funds, and SIMC and the various Sub-Advisory Agreements between SIMC and the sub-advisers with respect to the SEI Funds. Defendants admit that there are seven members of the Board, five or whom are not interested persons of the Trust, as that term is defined in the ICA ("Independent Trustees").  Defendants admit that in fiscal year 2013, the Independent Trustees were compensated as follows: Nina Lesavoy, James M. Williams, Mitchell A. Johnson, and Hubert L. Harris, Jr. received $216,098; George J. Sullivan, Jr. received $246,211; and Rosemarie B. Greco, who resigned from the Board in March 2013, received $159,005.  Defendants admit that in fiscal year 2014, the Independent Trustees were compensated as follows: Nina Lesavoy, James M. Williams, Mitchell A. Johnson, and Hubert L. Harris, Jr. received $231,000 and George J. Sullivan, Jr. received $261,000.  All other allegations in this paragraph are denied.

71.     Denied.  The allegations of this paragraph allege conclusions of law to which no response is required.

72.     Admitted in part and denied in part.  Defendants admit that, as of December 31, 2014, there were 98 funds in the SEI funds complex.  Defendants admit that each fund in the SEI funds complex is issued pursuant to a registration statement, which contains a prospectus and Statement of Additional Information, and that each fund is subject to regulatory requirements. Defendants lack knowledge as to what is meant by "watchdogs" and "compliance issues" and therefore these allegations are denied.  All other allegations in this paragraph are denied.

73.     Denied.

74.     Denied.

75.     Admitted in part and denied in part.  Defendants admit that the Board approved the advisory contract between SIMC and the Trusts for fiscal year 2014.  Defendants admit that, as of September 30, 2014, the International Equity Fund's Class A shares returned 3.66% versus the MSCI EAFE Index return of 4.25% for the prior one-year period; the International Equity Fund's Class A shares returned 12.75% versus the MSCI EAFE Index return of 13.65% for the annualized 3-year prior period; the International Equity Fund's Class A shares returned 6.11% versus the MSCI EAFE Index return of 6.56% for the annualized 5-year prior period; and the International Equity Fund's Class A shares returned 3.65% versus the MSCI EAFE Index return of 6.32% for the annualized 10-year prior period.  Defendants admit that, as of September 30, 2014, the High Yield Bond Fund's Class A shares returned 6.49% versus the BofA Merrill Lynch U.S. High Yield Constrained Index return of 7.23% for the prior one-year period; the High Yield Bond Fund's Class A shares returned 10.52% versus the BofA Merrill Lynch U.S. High Yield Constrained Index return of 10.94% for the annualized 3-year prior period; and the High Yield Bond Fund's Class A shares returned 7.30% versus the BofA Merrill Lynch U.S. High Yield Constrained Index return of 8.21% for the annualized 10-year prior period.

Defendants admit that, as of September 30, 2014, the Tax-Managed Large Cap Fund's Class A shares returned 17.63% versus the Russell 1000 Index return of 19.01% for the prior one-year period; the Tax-Managed Large Cap Fund's Class A shares returned 23.17 versus the Russell 1000 Index return of 23.23% for the annualized 3-year prior period; the Tax-Managed Large Cap Fund's Class A shares returned 15.06% versus the Russell 1000 Index return of 15.90% for the annualized 5-year prior period; and the Tax-Managed Large Cap Fund's Class A shares returned 7.66% versus the Russell 1000 Index return of 8.46% for the annualized 10-year prior period. Defendants admit that, as of September 30, 2014, the Tax-Managed Small/Mid Cap Fund's Class A shares returned 8.44% versus the Russell 2500 Index return of 8.97% for the prior one-year period; the Tax-Managed Small/Mid Cap Fund's Class A shares returned 21.63% versus the Russell 2500 Index return of 22.80% for the annualized 3-year prior period; the Tax-Managed Small/Mid Cap Fund's Class A shares returned 14.80% versus the Russell 2500 Index return of 15.99% for the annualized 5-year prior period; and the Tax-Managed Small/Mid Cap Fund's Class A shares returned 7.75% versus the Russell 2500 Index return of 9.45% for the annualized 10-year prior period. Defendants admit that, as of August 31, 2014, the Intermediate-Term Municipal Fund's Class A shares returned 7.88% versus the Barclays 3-15 Year Municipal Blend Index return 8.22% for the prior one-year period; the Intermediate-Term Municipal Fund's Class A shares returned 3.81% versus the Barclays 3-15 Year Municipal Blend Index return of 4.15% for the annualized 3-year prior period; the Intermediate-Term Municipal Fund's Class A shares returned 4.73% versus the Barclays 3-15 Year Municipal Blend Index return of 4.89% for the annualized 5-year prior period; and the Intermediate-Term Municipal Fund's Class A shares returned 3.93% versus the Barclays 3-15 Year Municipal Blend Index return of 4.60% for the annualized 10-year prior period. All other allegations in this paragraph are denied.

25

76.     Denied.  To the extent this paragraph purports to characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves.  All other allegations in this paragraph are denied.

77.     Denied.  To the extent this paragraph purports to characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves.  All other allegations in this paragraph are denied.

78.     Admitted.  Defendants admit that SIMC is the investment adviser for each of the SEI Funds and operates as a "manager of managers."  Defendants admit that, subject to Board review, SIMC allocates and, when appropriate, reallocates the SEI Funds' assets to the sub-advisers, who invest those assets according to each fund's investment guidelines and goals, under the supervision of SIMC and the Board.

79.     Admitted in part and denied in part.  Defendants admit that SIMC may manage the cash portion of the SEI Funds' assets.  Defendants admit that the SEI Funds may invest in the SEI Daily Income Trust Prime Obligation Fund ("Prime Obligation Fund"), an affiliated money market fund, to manage excess cash or to serve as margin or collateral for derivative positions. Defendants also admit that the SEI Funds may invest cash collateral from the securities lending program in the SEI Liquidity Fund L.P. ("Liquidity Fund"), an affiliated fund.  Defendants admit that, as of March 31, 2015, the SEI Funds invested in the Prime Obligation Fund as follows: the International Equity Fund invested $80,952,000 (2.8% of its total investments including investments held as collateral for securities on loan); the High Yield Bond Fund invested $52,094,000 (2.9% of its total investments including investments held as collateral for securities on loan); the Tax-Managed Large Cap Fund invested $194,470,000 (5.8% of its total investments including investments held as collateral for securities on loan); and the Tax-Managed Small/Mid

Cap Fund invested $37,845,000 (5.7% of its total investments including investments held as collateral for securities on loan). Defendants admit that, as of March 31, 2015, the SEI Funds invested cash collateral from securities lending in the Liquidity Fund as follows: the International Equity Fund invested $87,518,000 (3.1% of its total investments including investments held as collateral for securities on loan); the High Yield Bond Fund invested $6,000 (0.0% of its total investments including investments held as collateral for securities on loan); the Tax-Managed Large Cap Fund invested $49,580,000 (1.5% of its total investments including investments held as collateral for securities on loan); and the Tax-Managed Small/Mid Cap Fund invested $53,582,000 (8.1% of its total investments including investments held as collateral for securities on loan). Defendants also admit that, as of February 28, 2015, the Intermediate-Term Municipal Fund did not invest any assets in the Prime Obligation Fund or the Liquidity Fund. To the extent this paragraph purports to quote or characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves. All other allegations in this paragraph are denied.

80. Admitted in part and denied in part. Defendants admit that, as of the date of the SEI Funds' 2015 Semi-Annual Reports (February 28, 2015 for the Intermediate-Term Municipal Fund and March 31, 2015 for the International Equity Fund, High Yield Bond Fund, and Tax-Managed Large Cap Fund, Tax-Managed Small/Mid Cap Fund), $365,361,000 of the SEI Funds' assets were invested in the Prime Obligation Fund and $190,686,000 of the SEI Funds' cash collateral from the securities lending program was invested in the Liquidity Fund. It is admitted that as of year-end fiscal year 2014, $313,784,000 of the SEI Funds' assets were invested in the Prime Obligation Fund and $200,692,000 of the SEI Funds' cash collateral from the securities lending program was invested in the Liquidity Fund. It is admitted that as of year-end fiscal year

2013, $358,525,000 of the SEI Funds' assets were invested in the Prime Obligation Fund and $271,145,000 of the SEI Funds' cash collateral from the securities lending program was invested in the Liquidity Fund.  Defendants lack knowledge as to what is meant by "earlier periods" and therefore this allegation is denied.  All other allegations in this paragraph are denied.

81.     Admitted in part and denied in part.  Defendants admit that SIMC is the investment adviser and SIGFS is the administrator of the Prime Obligation Fund and the Liquidity Fund.  Defendants admit that SIMC charges the Prime Obligation Fund an advisory fee of 0.07% of its average daily net assets, not including fee waivers.  Defendants admit that SIGFS charges the Prime Obligation Fund an administrative and transfer agency fee of 0.19%, not including fee waivers.  Defendants admit that the Liquidity Fund has a contractual advisory fee with SIMC of 0.05% of the Liquidity Fund's average daily net assets, which has always been waived.  All other allegations in this paragraph are denied.

82.     Admitted in part and denied in part.  Defendants admit that the Prime Obligation Fund is charged advisory fees and administrative and transfer agency fees on its average daily net assets.  Defendants admit that the Liquidity Fund is charged an administrative and transfer agency fee on its average net assets.  It is admitted that the Liquidity Fund has a contractual advisory fee in place and that this fee has always been waived.  All other allegations of this paragraph are denied.

83.     Denied.  To the extent this paragraph purports to quote or characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and/or the allegations call for legal conclusions to which no response is required.

84.     Denied.  To the extent this paragraph purports to quote or characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and/or the allegations call for legal conclusions to which no response is required.

85.     Admitted in part and denied in part.  Defendants admit that, as of March 31, 2015, the International Equity Fund invested $80,952,000 in the Prime Obligation Fund and $87,518,000 cash collateral in the Liquidity Fund; the High Yield Bond Fund invested $52,094,000 in the Prime Obligation Fund and $6,000 cash collateral in the Liquidity Fund; the Tax-Managed Large Cap Fund invested $194,470,000 in the Prime Obligation Fund and $49,580,000 cash collateral in the Liquidity Fund; and the Tax-Managed Small/Mid Cap Fund invested $37,845,000 in the Prime Obligation Fund and $53,582,000 cash collateral in the Liquidity Fund.  Defendants admit that, as of February 28, 2015, the Intermediate-Term Municipal Fund did not invest in the Prime Obligation Fund or the Liquidity Fund.  Defendants admit that SIMC charges the SEI Funds the following advisory fees, not including fee waivers: 0.505% with respect to the International Equity Fund; 0.4875% with respect to the High Yield Bond Fund; 0.40% with respect to the Tax-Managed Large Cap Fund; 0.65% with respect to the Tax-Managed Small/Mid Cap Fund; and 0.33% with respect to the Intermediate-Term Municipal Fund.  To the extent this paragraph purports to quote or characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and/or the allegations call for

legal conclusions to which no response is required.  To extent a response is required, all other allegations in this paragraph are denied.

86.     Admitted in part and denied in part.  Defendants admit that the SEI Funds paid advisory fees to SIMC based on a percentage of their average daily net assets, including assets invested in the Prime Obligation Fund and assets that are loaned in connection with the securities lending program.   To the extent the allegations in this paragraph allege conclusions of law, no response is required.  All other allegations in this paragraph are denied.

87.     Denied.  To the extent the allegations in this paragraph call for legal conclusions, no response is required.  To the extent this paragraph is deemed to allege facts, it is denied.

88.     Denied.  To the extent the allegations in this paragraph call for legal conclusions, no response is required.  To the extent this paragraph is deemed to allege facts, it is denied.

89.     Denied.  To the extent the allegations in this paragraph call for legal conclusions, no response is required.  To the extent this paragraph is deemed to allege facts, it is denied.

90.     Denied.  To the extent the allegations in this paragraph call for legal conclusions, no response is required.  To the extent this paragraph is deemed to allege facts, it is denied.

91.     Admitted in part and denied in part.  Defendants incorporate by reference into this paragraph their responses to each and every allegation above as if set forth fully herein. Defendants admit that the Trusts have each entered into a separate administrative and transfer agency agreement with SIGFS dated December 10, 2003, which remains in effect as of fiscal years 2013 and 2014, with certain amendments.  Defendants admit that the administrative and transfer agency agreements required SIGFS to provide a host of accounting, administrative, transfer agency, dividend distribution, and anti-money laundering services, as set forth in the agreements.  To the extent this paragraph purports to characterize certain documents, the Court is

referred to those documents for an accurate and complete statement of their contents, which speak for themselves.

92.     Admitted in part and denied in part.  Defendants admit that, in fiscal year 2013, in addition to administrative and transfer agency fees, the SEI Funds incurred trustee fees, chief compliance officer fees, printing fees, professional fees, custodian/wire agent fees, registration fees, and other expenses for services not provided under the administrative and transfer agency agreements.  It is admitted that the International Equity Fund also incurred interest expenses and licensing fees and the High Yield Bond Fund incurred interest expenses for services not provided under the administrative and transfer agency agreements.  Defendants specifically deny that SIGFS performs a small portion of the administrative services provided to the SEI Funds.  To the extent this paragraph purports to quote or characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves.  All other allegations in this paragraph are denied.

93.     Admitted in part and denied in part.  Defendants admit that in fiscal years 2012, 2013, and 2014, the SEI Funds paid SIGFS the following administrative and transfer agency fee rates, prior to waivers, calculated based upon the aggregate average daily net assets of the SEI Funds and paid monthly by each SEI Fund: 0.45% with respect to the International Equity Fund; 0.35% with respect to the High Yield Bond Fund; 0.35% with respect to the Tax-Managed Large Cap Fund; 0.35% with respect to the Tax-Managed Small/Mid Cap Fund; and 0.24% with respect to the Intermediate Term Municipal Fund.  Defendants admit that in fiscal year 2012, the SEI Funds paid the following administrative fees to SIGFS: the International Equity Fund paid $7,805,000; the High Yield Bond Fund paid $5,886,000; the Tax-Managed Large Cap Fund paid $6,142,000; the Tax-Managed Small/Mid Cap Fund paid $1,093,000; and the Intermediate-Term

Municipal Fund paid $2,301,000.  Defendants admit that in fiscal year 2013, the SEI Funds paid the following administrative fees to SIGFS: the International Equity Fund paid $9,190,000; the High Yield Bond Fund paid $6,619,000; the Tax-Managed Large Cap Fund paid $7,364,000; the Tax-Managed Small/Mid Cap Fund paid $1,383,000; and the Intermediate-Term Municipal Fund paid $2,519,000.  Defendants admit that in fiscal year 2014, the SEI Funds paid the following administrative fees to SIGFS: the International Equity Fund paid $11,775,000; the High Yield Bond Fund paid $7,213,000; the Tax-Managed Large Cap Fund paid $9,841,000; the Tax-Managed Small/Mid Cap Fund paid $1,919,000; and the Intermediate-Term Municipal Fund paid $2,870,000.  All other allegations in this paragraph are denied.

94.     Admitted in part and denied in part.  Defendants admit that the administrative and transfer agency fee paid by the SEI Funds to SIGFS covers the administrative and transfer agency services, and the other services described in the administrative and transfer agency agreements, that SIGFS provides to the SEI Funds.  To the extent this paragraph purports to quote or characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and they are therefore denied.

95.     Admitted in part and denied in part.  Defendants admit that the SEI Funds currently pay SIGFS the following administrative and transfer agency fee rates: 0.45% with respect to the International Equity Fund; 0.30% with respect to the High Yield Bond Fund; 0.30% with respect to the Tax-Managed Large Cap Fund; 0.30% with respect to the Tax-Managed Small/Mid Cap Fund; and 0.24% with respect to the Intermediate Term Municipal Fund.  Defendants specifically deny that the services provided by SIGFS do not warrant its fees.

To the extent this paragraph purports to quote or characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and they are therefore denied.

96.     Denied.  To the extent the allegations in this paragraph call for legal conclusions, no response is required.  To the extent this paragraph is deemed to allege facts, it is denied. Further, Defendants specifically deny that the services SIGFS provided to the SEI Funds were simple or supervisory.

97.     Admitted in part and denied in part.  Defendants incorporate by reference into this paragraph their responses to each and every allegation above as if set forth fully herein. Defendants admit that economies of scale may exist with respect to advisory and administrative fees.  Defendants lack knowledge as to what is meant by "[t]he discussion and comparison above," and therefore this allegation is denied.  All other allegations in this paragraph are denied.

98.     Admitted in part and denied in part.  Defendants admit that economies of scale may exist with respect to an entire fund complex and an investment adviser's entire scope of operations.  To the extent this paragraph purports to characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves.  To the extent the remaining allegations in this paragraph concern the mutual fund industry generally, Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and they are therefore denied.  To the extent the remaining allegations in this paragraph concern Defendants, they are denied.

99.     Denied.  To the extent this paragraph purports to quote or characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves.

100.     Admitted in part and denied in part.  Defendants admit that from December 2003 through September 30, 2014, SIGFS charged the SEI Funds the following administrative and transfer agency fee rates, before any fee waivers: 0.45% with respect to the International Equity Fund; 0.35% with respect to the High Yield Bond Fund; 0.35% with respect to the Tax-Managed Large Cap Fund; 0.35% with respect to the Tax-Managed Small/Mid Cap Fund; and 0.24% with respect to the Intermediate Term Municipal Fund.  Defendants admit that as of October 1, 2014, SIGFS charges the SEI Funds the following administrative and transfer agency fee rates, before any fee waivers: 0.45% with respect to the International Equity Fund; 0.30% with respect to the High Yield Bond Fund; 0.30% with respect to the Tax-Managed Large Cap Fund; 0.30% with respect to the Tax-Managed Small/Mid Cap Fund; and 0.24% with respect to the Intermediate Term Municipal Fund.  Defendants admit that:  as of March 31, 2015, the International Equity Fund had net assets of $2,832,903,000; as of March 31, 2015, the High Yield Bond Fund had net assets of $1,817,044,000; as of March 31, 2015, the Tax-Managed Large Cap Fund had net assets of $3,353,844,000; as of March 31, 2015, the Tax Managed Small/Mid Cap Fund had net assets of $622,429,000; and, as of February 28, 2015, the Intermediate-Term Municipal Fund had net assets of $1,427,601,000.  All other allegations in this paragraph are denied.

101.     Admitted.  Defendants admit that mutual funds may have a fee schedule where the contractual fee decreases as the fund size increases past certain "breakpoints."  Defendants admit that the administrative and transfer agency fee rates paid by the SEI Funds to SIGFS do not contain breakpoints.

102.     Admitted in part and denied in part.  Defendants admit that fee breakpoints are one method by which economies of scale, if any, may be shared with a mutual fund and its shareholders.  To the extent this paragraph purports to characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and they are therefore denied.

103.     Admitted in part and denied in part.  Defendants admit that fee breakpoints are one method by which economies of scale, if any, may be shared with a mutual fund and its shareholders.  To the extent this paragraph purports to characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves.  Defendants admit that the advisory fee rates and administrative and transfer agency fee rates paid by the SEI Funds do not, and have never, contained breakpoints.  All other allegations in this paragraph are denied.

104.     Admitted in part and denied in part.  Defendants admit that the SEI Funds currently pay SIGFS the following administrative and transfer agency fee rates, before fee waivers: 0.45% with respect to the International Equity Fund; 0.30% with respect to the High Yield Bond Fund; 0.30% with respect to the Tax-Managed Large Cap Fund; 0.30% with respect to the Tax-Managed Small/Mid Cap Fund; and 0.24% with respect to the Intermediate Term Municipal Fund.  Defendants admit that fee waivers are one method by which economies of scale, if any, may be shared with a mutual fund and its shareholders.  Defendants admit that SIGFS waived the following amounts of administrative and transfer agency fees for the SEI Funds: $2,000 for the Tax-Managed Large Cap Fund in fiscal year 2012; $2,000 for the Tax-Managed Large Cap Fund in fiscal year 2013; and $1,000 for the Tax-Managed Large Cap Fund

in fiscal year 2014.  Defendants admit that there were no other administrative and transfer agency fee waivers for the SEI Funds from fiscal years 2012-2014.  All other allegations in this paragraph are denied.

105.   Denied.  To the extent the allegations in this paragraph call for legal conclusions, no response is required.  To the extent this paragraph is deemed to allege facts, it is denied.

106.   Denied.  Defendants incorporate by reference into this paragraph their responses to each and every allegation above as if set forth fully herein.   All other allegations in this paragraph are denied.

107.   Denied.  Defendants incorporate by reference into this paragraph their responses to each and every allegation above as if set forth fully herein.  To the extent the allegations in this paragraph allege conclusions of law, no response is required.  To the extent this paragraph is deemed to allege facts, it is denied.

108.   Denied.  Defendants incorporate by reference into this paragraph their responses to each and every allegation above as if set forth fully herein.   All other allegations in this paragraph are denied.

109.   Denied.  To the extent this paragraph purports to characterize certain documents, the Court is referred to those documents for an accurate and complete statement of their contents, which speak for themselves.  To the extent the allegations in this paragraph allege conclusions of law, no response is required.  To the extent this paragraph is deemed to allege facts, it is denied.

110.   Admitted in part and denied in part.  Defendants admit that, as of March 31, 2015, the International Equity Fund invested $80,952,000 in the Prime Obligation Fund and $87,518,000 cash collateral in the Liquidity Fund; the High Yield Bond Fund invested $52,094,000 in the Prime Obligation Fund and $6,000 cash collateral in the Liquidity Fund; the

Tax-Managed Large Cap Fund invested $194,470,000 in the Prime Obligation Fund and $49,580,000 cash collateral in the Liquidity Fund; and the Tax-Managed Small/Mid Cap Fund invested $37,845,000 in the Prime Obligation Fund and $53,582 cash collateral in the Liquidity Fund.  Defendants admit that, as of February 28, 2015, the Intermediate-Term Municipal Fund did not invest in the Prime Obligation Fund or the Liquidity Fund.  Defendants admit that the SEI Funds currently pay SIGFS the following administrative and transfer agency fee rates, before fee waivers: 0.45% with respect to the International Equity Fund; 0.30% with respect to the High Yield Bond Fund; 0.30% with respect to the Tax-Managed Large Cap Fund; 0.30% with respect to the Tax-Managed Small/Mid Cap Fund; and 0.24% with respect to the Intermediate Term Municipal Fund.  The remaining allegations call for legal conclusions to which no response is required.  To extent a further response is required, all other allegations in this paragraph are denied.

111.    Admitted in part and denied in part.  Defendants admit that the SEI Funds paid administrative and transfer agency fees to SIMC based on a percentage of their average daily net assets, including assets invested in the Prime Obligation Fund and assets that are loaned in connection with the securities lending program.   To the extent the allegations in this paragraph allege conclusions of law, no response is required.  All other allegations in this paragraph are denied.

112.    Denied.

113.    Defendants incorporate by reference into this paragraph their responses to each and every allegation above as if set forth fully herein.

114.    Denied.   This paragraph alleges conclusions of law to which no response is required.

115.    Denied.  To the extent the allegations in this paragraph allege a conclusion of law, no response is required.  To the extent this paragraph is deemed to allege facts, it is denied.

116.    Admitted in part and denied in part.  It is admitted that Plaintiffs purport to bring a derivative action on behalf of the SEI Funds against SIMC under Section 36(b) of the ICA.  To the extent the remaining allegations in this paragraph allege a conclusion of law, no response is required.  To the extent the remaining allegations in this paragraph are deemed to allege facts, they are denied.

117.    Denied.  To the extent the allegations in this paragraph allege a conclusion of law, no response is required.  To the extent this paragraph is deemed to allege facts, it is denied.

118.    Denied.  To the extent the allegations in this paragraph allege a conclusion of law, no response is required.  To the extent this paragraph is deemed to allege facts, it is denied.

119.    Denied.  To the extent the allegations in this paragraph allege a conclusion of law, no response is required.  To the extent this paragraph is deemed to allege facts, it is denied.

120.    Admitted in part and denied in part.  It is admitted that Plaintiffs purport to seek damages under Section 36(b) of the ICA.  To the extent the remaining allegations in this paragraph allege a conclusion of law, no response is required.  To the extent the remaining allegations in this paragraph are deemed to allege facts, they are denied.

121.    Admitted in part and denied in part.  It is admitted the Plaintiffs purport to seek rescission of the advisory agreements between SIMC and the Trusts.  To the extent the allegations in this paragraph allege a conclusion of law, no response is required.  To the extent this paragraph is deemed to allege facts, it is denied.

122.    Defendants incorporate by reference into this paragraph their responses to each and every allegation above as if set forth fully herein.

035e081242eebe5f

123.    Denied.   This  paragraph  alleges  conclusions  of  law  to  which  no  response  is required.

124.    Denied.  To the extent the allegations in this paragraph allege a conclusion of law, no response is required.  To the extent this paragraph is deemed to allege facts, it is denied.

125.    Admitted in part and denied in part.  It is admitted that Plaintiffs purport to bring a derivative action on behalf of the SEI Funds against SIGFS under Section 36(b) of the ICA. To the extent the remaining allegations in this paragraph allege a conclusion of law, no response is required.  To the extent the remaining allegations in this paragraph are deemed to allege facts, they are denied.

126.    Denied.  To the extent the allegations in this paragraph allege a conclusion of law, no response is required.  To the extent this paragraph is deemed to allege facts, it is denied.

127.    Denied.  To the extent the allegations in this paragraph allege a conclusion of law, no response is required.  To the extent this paragraph is deemed to allege facts, it is denied.

128.    Denied.  To the extent the allegations in this paragraph allege a conclusion of law, no response is required.  To the extent this paragraph is deemed to allege facts, it is denied.

129.    Admitted in part and denied in part.  It is admitted that Plaintiffs purport to seek damages  under  Section  36(b)  of  the  ICA.   To  the  extent  the  remaining  allegations  in  this paragraph  allege  a  conclusion  of  law,  no  response  is  required.   To  the  extent  the  remaining allegations this paragraph are deemed to allege facts, they are denied.

130.    Admitted in part and denied in part.  It is admitted the Plaintiffs purport to seek rescission of the advisory agreements between SIMC and the Trusts.  To the extent the remaining allegations in this paragraph allege a conclusion of law, no response is required.  To the extent the remaining allegations this paragraph are deemed to allege facts, they is denied.

## AFFIRMATIVE DEFENSES

Defendants assert the following Affirmative Defenses to the Complaint, reserving the right to timely raise such additional affirmative defenses as may be appropriate in light of developments in this action:

### FIRST AFFIRMATIVE DEFENSE

(Failure to State a Claim)

The Amended Complaint fails to state a claim upon which relief can be granted against Defendants.

### SECOND AFFIRMATIVE DEFENSE

(Standing)

To the extent either Plaintiff purports to assert a claim on behalf of any Fund other than one in which he or she holds and has continuously held shares throughout the duration of the litigation, Plaintiffs lack standing to assert such a claim.

### THIRD AFFIRMATIVE DEFENSE

(Limitation on Time for Recovery)

Plaintiffs' claims are barred in whole or in part by the limitation on the time for recovery imposed by 151 U.S.C. §80a-35(b).

### FOURTH AFFIRMATIVE DEFENSE

(Rescission Unavailable)

Plaintiffs may not obtain rescission under Section 47(b) of the 1940 Act, 15 U.S.C. § 80a-46(b) because rescission is not a remedy available for purported violations of Section 36(b).

Moreover, the Complaint fails to state the allegations necessary under Rule 23.1 and applicable state law to assert a claim for rescission.

## FIFTH AFFIRMATIVE DEFENSE

(Laches, Waiver, Estoppel, Unclean Hands, Ratification, Disclosure and/or Consent)

Plaintiffs made an affirmative decision to purchase and continue to own shares in the Funds and consequently received information related to the Funds' performance, fee schedules, and total expense ratios as well as Defendants' receipt of compensation paid for the services they provided to the Funds.  Thus, while fully informed, Plaintiffs expressed their satisfaction with their investments by retaining their shares in each Fund.  Plaintiffs' claims therefore are barred, in whole or in part, by the doctrines of laches, waiver, estoppels, unclean hands, ratification, disclosure, and/or consent.

November 17, 2015

Respectfully submitted,

DECHERT LLP

/s/ *Steven B. Feirson*_____
Steven B. Feirson (PA I.D. No. 21357)
   steven.feirson@dechert.com
Michael S. Doluisio (PA I.D. No. 75060)
   michael.doluisio@dechert.com
Charlotte K. Newell (PA I.D. No. 317748)
   charlotte.newell@dechert.com
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
Telephone: (215) 994-4000

Of counsel:

Matthew L. Larrabee
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
Tel: (212) 698-3578
E-mail:  matthew.larrabee@dechert.com

Emily Shea
DECHERT LLP
1900 K Street, NW
Washington, DC 20006
Tel:  (202) 261-3378
E-mail:  emily.shea@dechert.com

*Attorneys for Defendants*

41